2022-1967

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

JOHN S. EDWARDS,
Petitioner

v.

MERIT SYSTEMS PROTECTION BOARD,
Respondent

---

PETITION FOR REVIEW OF THE
MERIT SYSTEMS PROTECTION BOARD IN
NO. DC-1221-16-0227-W-1

---

CORRECTED
BRIEF OF APPELLANT
AND APPENDIX

---

Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201
703-841-1112
peterbroida@gmail.com
Attorney for John Edwards

September 14, 2022

FORM 9. Certificate of Interest

Form 9 (p. 1)
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2022-1967 |
| **Short Case Caption** | Edwards v. Labor |
| **Filing Party/Entity** | John S. Edwards |

---

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/08/2022

Signature:   /s/ Peter Broida

Name:   Peter Broida

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| John S. Edwards | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable        ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑    None/Not Applicable        ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable        ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

I.    STATEMENT OF RELATED CASES  . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  STATEMENT OF THE ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV.   STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.   Proceedings Before the MSPB . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.   MSPB Decision  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.    SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.   ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.   *Spruill* Only Determined that Formal EEO Complaints Were Covered under 5 USC2302(b)(9) and Excluded under 5 USC 2302(b)(8). *Spruill* Did Not Affect Internal Disclosures Involving Matters Related to EEO. . . . . . 15

      B.   Although *Spruill* Precludes IRA Reprisal Appeals Based on Formal EEO Complaints, that Decision Does Not Negate IRA Protection for Reprisal Resulting from Internal Disclosures to Management of EEO-related Matters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      C.   *Smolinski v. MSPB* Recently Confirmed That Disclosures of EEO Violations to Management Are Protected under 5 USC 2302(b)(8). . . . . . 18

      D.   Decisions of this Court and MSPB Are Not Consistent, Post-*Spruill* and Pre-*Smolinski*, as to IRA Coverage of EEO-related Disclosures to Management. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      E.   Decisions of Other Circuits Are Not Persuasive Authority Concerning

the Scope of *Spruill* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

     F.     *Smolinski* Is Consistent with *Spruill* . . . . . . . . . . . . . . . . . . . . . . . . 34

     G.    IRA and EEO Remedies Are Distinct . . . . . . . . . . . . . . . . . . . . . . . 36

     H.    MSPB Should Not Eschew Jurisdiction Vested in it by Statute Through Deferral to the EEOC Complaint Process for Internal Disclosures of Systemic, or Individual, Abuses of Authority Evidenced by Disregard for the Federal EEO Laws. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

VII.   CONCLUSION AND RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . 43

CERTIFICATE OF COMPLIANCE

APPENDIX

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Dept. of Justice*, 107 MSPR 375, 2007 MSPB 280 (2007) ...... 28

*Applewhite v. EEOC*, 94 MSPR 300 (2003) ............................. 32

*Bledsoe v. MSPB*, 659 F.3d 1097 (Fed. Cir. 2011) ....................... 15

*Carr v. SSA*, 185 F.3d 1318 (Fed. Cir. 1999) .......................... 40

*Carrethers v. Esper*, No. 3:16-CV-62-CRS, 2019 WL 2330894 (W.D. Ky. May 31, 2019), *aff'd sub nom. Carrethers v. McCarthy*, 817 F. App'x 88 (6th Cir. 2020) ...................................... 33

*Coulibaly v. MSPB*, 709 F. App'x. 9 (D.C. Cir. 2017) .................... 34

*Ellison v. MSPB*, 7 F.3d 1031 (Fed. Cir. 1993) ........................ 16

*Fleeger v. Principi*, 221 F. App'x 111 (3d Cir. 2007) .................... 34

*Gonzales v. DHUD*, 64 MSPR 314 (1994) ............................. 25

*Gonzalez v. Dep't of Transp.*, 551 F.3d 1372 (Fed. Cir. 2009) ............ 15

*Graves v. VA*, 123 MSPR 434,  2016 MSPB 24 (2016) ................... 29

*Hansen v. MSPB*, 746 Fed. Appx. 976 (Fed. Cir. 2018 NP) ............... 24

*Holloway v. VA*, 56 MSPR 422 (1993) ................................ 42

*Hooker v. VA*, 122 MSPR 551, 2015 MSPB 44 (2015) ................... 42

*Jenkins v. EPA*, DC-0752-11-0348-B-6 (NP 1/5/2016) ................... 42

*Key v. USPS*, 31 MSPR 197 (1986) .................................. 40

*Keys v. DHUD*, ___Fed. Appx.___ (Fed. Cir. 2022 NP) . . . . . . . . . . . . . . . . . . . 24

*Kinan v. DOD*, 87 MSPR 561 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Luna v. VA*, DA-1221-10-0531-W-1 (NP 5/13/2011) . . . . . . . . . . . . . . . . . . . . 29

*Malekpour v. Chao*, 682 F. App'x 471 (7th Cir. 2017) . . . . . . . . . . . . . . . . . . . 33

*McDonnell v. Dept. of Agric.*, 108 MSPR 443 (2008) . . . . . . . . . . . . . . . . . . . . 32

*Miller v. FDIC*, 626 Fed. Appx. 621 (Fed. Cir 2015) (NP) . . . . . . . . . . . . . . . . 24

*Musselman v. Dept. of Army*, DA-1221-14-0499-W-3 (NP 6/17/2016) . . . . . . . . 29

*Nogales v. Dept. of Treasury*, 63 MSPR 460 (1994) . . . . . . . . . . . . . . . . . . . . . 30

*Office of Special Counsel ex rel. Spalding by Dept. of Treasury*,
CB-1208-22-0016-U-1 (NP 7/28/2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Padilla v. Dept. of Air Force*, 58 MSPR 561 (1993) . . . . . . . . . . . . . . . . . . . . . 41

*Pasley v. Dept. of Treasury*, 109 MSPR 105, 2008 MSPB 122 (2008) . . . . . . . . 28

*Parikh v. VA*, 110 MSPR 295, 304, 2008 MSPB 248 (2008) . . . . . . . . . . . . . . . 32

*Ramos v. Dept. of Treasury*, 72 MSPR 235 (1996) . . . . . . . . . . . . . . . . . . . . . . 26

*Redschlag v. Dept. of Army*, 89 MSPR 589 (2001) . . . . . . . . . . . . . . . . . . . . . . 30

*Reitan v. Architectural & Transp. Barriers Bd,* 18 MSPR 585 (1984) . . . . . . . . 42

*Sirgo v. DOJ*, 66 MSPR 261 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Smolinski v. MSPB*, 23 F.4th 1345 (Fed. Cir. 2022) . . . . . . . . . . . . . . . . . . . 19-21

*Spruill v. MSPB*, 978 F.2d 679 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Von Kelsch v. Dept. of Labor*, 59 MSPR 503 (1993) . . . . . . . . . . . . . . . . . . . . . . . 31

*Young v. MSPB*, 961 F.3d 1323 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATUTES

5 USC 1214 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

5 USC 1215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

5 USC 1221 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 36

5 USC 1222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

5 USC 2302(b)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5 USC 2302(b)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 USC 2302(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

5 USC 7121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

42 USC 1981a(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# I.  STATEMENT OF RELATED CASES

There are no related cases.

# II.   JURISDICTIONAL STATEMENT

This is an appeal from a final order of the Merit Systems Protection Board in *Edwards v. Department of Labor*, 2022 MSPB 9 (DC-1221-16-0227-W-1 May 5, 2022), a precedential decision. Because the MSPB dismissed the case for lack of jurisdiction, the respondent here is the MSPB. Jurisdiction is vested in this Court by 28 USC 1295(a)(9) and 5 USC 7703(b)(1). The petition for review in this Court was filed on June 29, 2022, within 60 days from the MSPB's decision of May 5, 2022.

# III.   STATEMENT OF THE ISSUES

The issue is whether MSPB has jurisdiction over an Individual Right of Action appeal under 5 USC 1221(a) based on reprisal resulting from an employee's disclosure to agency managers or executives of discrimination that was systemic or directed toward another employee.

# IV. STATEMENT OF THE CASE

## A.    STATEMENT OF FACTS

John Edwards began his work at the Labor Department in 2013, where he served as deputy director of the Office of Information Systems and Technology, Employment and Training Administration. His career included decades of private sector management experience. Operational staff reported through Edwards to Lisa Lahrman, Acting Administrator and Administrative Officer, and Aung Htein, OIST Director. Edwards reviewed all personnel actions in the office and all actions required his approval. Appx82.

Within months of his arrival at DOL, Edwards concluded that Lahrman and Htein were prejudiced against African-American employees, as to assignments, job opportunities, and promotions. Of particular concern was the treatment of four African-American employees: Howze, Flagg, Palmer, and Davidson. Appx82.

Following an open competition for a GS-14 Supervisory IT Specialist Position, in July 2015 Edwards complained to Htein and Lahrman about their refusal to allow the selection of Darryl McDaniel, an African-American OIST employee who was well qualified for the position. During his discussion with them, Edwards made plain that he believed the reason that Ms. Lahrman was not advancing McDaniel was because of his race. Appx83.

Mr. Htein told Edwards on September 1, 2015, that he needed to "stop making

noise" that Ms. Lahrman did not want to select Mr. McDaniel because he is black. Edwards told Htein that he refused because he believed it was due to Ms. Lahrman's racism and that Mr. Htein should stand up for McDaniel. When Edwards reiterated his belief that Ms. Lahrman's desire not to select McDaniel was motivated by race, Htein said he did not care. Htein told Edwards that if he kept quiet and waited for a few months, there might be organizational changes that would result in some of them becoming members of the Senior Executive Service. Appx83-84.

Edwards met with Ms. Lahrman for an hour or more on September 17, 2015, to discuss his concerns about discrimination, telling her he saw a pattern of discrimination against African-American employees. Edwards told her that he felt he was being retaliated against by Mr. Htein by diminishing the responsibilities of Edwards, and Edwards continued to press for the promotion of McDaniel. Appx84.

Edwards was frustrated with the lack of response by management to his discrimination allegations. Appx84. He contacted an EEO counselor on approximately October 15, 2015. The counselor told Edwards he had a duty to report systemic discrimination. Edwards described to the EEO counselor the basis for his assertions, which included allegations of discriminatory treatment of African-Americans, with specifics that went beyond those that Edwards confronted Htein and Lahrman about. Appx84-85. A written summary of the contact with the EEO

-3-

counselor summarizes the reprisal experienced by Edwards after his earlier verbal complaints to Htein and Lahrman concerning systemic discrimination. Appx34.

DOL had an anti-harassment policy. Appx92. Edwards also submitted through e-mail to the EEO office a separate complaint of harassment under that policy, which was rejected under that policy because, among other reasons, the complaints of Edwards about discriminatory treatment of African-American employees did not constitute harassment of Edwards. Appx60.

Edwards experienced retaliation for his reports to Htein and Lahrman of discriminatory practices when, starting in mid-September 2015, Htein significantly changed his duties, removing key managerial functions, to include decision-making authority. On October 27, 2015, Lahrman told Edwards he was being reassigned to a nonsupervisory job. The reassignment, directed by Ms. Lahrman, occurred on November 1, 2015. Appx48. The reassignment resulted in diminished responsibilities with few duties, none  commensurate with the senior management and supervisory experience and skills of Mr. Edwards, whose former position was posted on November 5, 2015, as a vacancy. Appx86. Lahrman referred to an EEO complaint by Edwards in connection with his reassignment during the October 27 meeting with Edwards.  Appx86.

## B.    PROCEEDINGS BEFORE THE MSPB

On December 17, 2015,  John Edwards filed an Individual Right of Action appeal with the Merit Systems Protection Board. Appx71. The Board appeal was preceded by a complaint of whistleblower reprisal to the Office of Special Counsel. Appx38. That complaint was augmented by further information to OSC by correspondence. Appx63. The OSC complaint was closed out with correspondence from OSC advising Edwards of his right to file the MSPB appeal. Appx66-70.

The appeal was assigned to an administrative judge at the Washington Regional Office. Jurisdictional submissions that included legal argument and a sworn factual statement from Edwards were submitted to the judge in early January 2016. Appx81-91.

On April 20, 2017, the MSPB judge dismissed the appeal for lack of jurisdiction, finding that the allegations—involving reprisal against Edwards through diminution of his duties as a Labor Department Manager and reassignment out of his position resulting from protests by Edwards to higher level managers of EEO issues that were systemic and that related to another employee, a complaint through the Labor Department's harassment policy, and a complaint under EEOC procedures—were properly pursued only through the EEOC process and not through the IRA appeal process. Appx19.

On May 15, 2017, Edwards filed a petition for review from the judge's decision, and that resulted in an MSPB final decision of May 5, 2022 (the Board was without a quorum from January 2017 until March 2022) affirming the jurisdictional dismissal.  Appx1.

On May 16, 2022, Edwards requested reopening of the Board decision based on the decision of this Court in *Smolinski v. MSPB*, 23 F.4th 1345 (Fed. Cir. 2022). Reopening was summarily denied by notice from the MSPB Clerk on June 16, 2022, followed by the timely petition for review in this Court of MSPB's May 5, 2022, final decision.

### 1.    MSPB Decision

The MSPB final decision, affirming the initial decision of the MSPB administrative judge, was based on information in the appeal (with attachments) and jurisdictional pleadings in response to a jurisdictional show cause order from the judge. The appeal did not go to a hearing; there was no discovery. After Edwards filed, and the Labor Department responded to, a petition for review to the Board from the judge's decision, the Board issued its final decision of May 5, 2022, and to that decision we turn.

Overruling precedent argued to MSPB by Edwards supporting IRA jurisdiction over reprisal resulting from his internal protests to executives about discrimination

against African-Americans at the Labor Department, the Board determined in

*Edwards,* Appx5-13:

> Thus, at issue in this appeal is whether the appellant made a nonfrivolous allegation that his disclosures and activity were protected under sections 2302(b)(8), 2302(b)(9)(A), and/or 2302(b)(9)(B). As explained below, while the appellant appears to have been admirably motivated in seeking to remedy perceived discrimination in his agency, we find that he failed to meet his jurisdictional burden, and that the proper forum for his allegation of retaliation for filing an EEO complaint is with the Equal Employment Opportunity Commission (EEOC).

> *The appellant's disclosures are not within the Board's jurisdiction under 5 U.S.C. § 2302(b)(8).*

>> *(1) Board and circuit courts' precedent have generally excluded EEO reprisal from consideration under 5 U.S.C. § 2302(b)(8).*

> Board precedent has long held that reprisal for filing an EEO complaint is a matter relating solely to discrimination and is not protected by 5 U.S.C. § 2302(b)(8). *See Williams v. Department of Defense*, 46 M.S.P.R. 549, 554 (1991). A rationale for the finding in *Williams* was the 1987 Congressional testimony of the Special Counsel regarding a previous, unenacted version of the Whistleblower Protection Act[3] (WPA) expressing concern about granting IRA appeal rights to employees who also had the EEOC as an avenue to seek redress. *Williams*, 46 M.S.P.R. at 553-54; Whistleblower Protection Act of 1987: Hearings Before the Subcomm. on Fed. Services, Post Off., & Civ. Serv. of the Comm. on Governmental Affairs, U.S. Senate, 100th Cong. 138-39, 379-80 (1987).[4]

>> [3] The Whistleblower Protection Act was enacted into law in 1989. Pub. L. No. 101-12, 103 Stat 16 (1989).

>> [4] In *Ganski v. Department of the Interior*, 86 M.S.P.R. 32, ¶ 12 n.2 (2000), the Board held that it may rely on legislative history from the 100th Congress as an aid in interpreting the WPA, when the materials

relate to language of bills that did not change before passage in the 101st Congress. In the instant matter, the materials relate to a principle—excluding title VII-related matters from the whistleblower protection statute—that did not change in the ultimately enacted law.

In *Von Kelsch v. Department of Labor*, 59 M.S.P.R. 503, 505-06 (1993), *overruled on other grounds by Thomas v. Department of the Treasury*, 77 M.S.P.R. 224, 236 n.9 (1998), *overruled by Ganski v. Department of the Interior*, 86 M.S.P.R. 32 (2000), the employee filed a claim for Federal Employees Compensation Act (FECA) benefits in which she alleged the purported use of sexually offensive language directed at her as the cause of her injury and then filed an IRA appeal asserting reprisal for whistleblowing and exercising an appeal right. She also filed an EEO complaint regarding the same incident. *Von Kelsch*, 59 M.S.P.R. at 506.

While the Board found that it did not lack jurisdiction to hear and decide an IRA appeal simply because the disclosure was made in a FECA claim, the nature of Ms. Von Kelsch's disclosure of a purported title VII violation divested the Board of jurisdiction. *Id*. at 508-09. The Board held that the WPA's legislative history and structure indicate Congress' intent not to extend IRA appeal protection under section 2302(b)(8) for employees who allege that their agencies retaliated against them after they challenged practices made unlawful by title VII. *Von Kelsch*, 59 M.S.P.R. at 509. The Board further stated that, in creating an IRA appeal right under section 2302(b)(8), Congress expressed its intent to benefit those employees whose "only route of appeal [under the then-existing statute] is the OSC." *Von Kelsch*, 59 M.S.P.R. at 509 (citing S. Rep. No. 100-413 at 32 (1988)) (brackets in original).

Further, in *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001), the Board held that it would not consider the appellant's purported disclosures that involved alleged discrimination or reprisal for engaging in activities protected by title VII. The Board found that, even if the disclosures were made outside of the grievance or EEO processes, such disclosures did not constitute protected whistleblower activity under 5 U.S.C. § 2302(b)(8) because they pertain to matters of discrimination covered by 5 U.S.C. § 2302(b)(1)(A). *Id*. Thus, Ms. Redschlag's disclosures of title VII-related matters—that she purportedly made to her Congressman, the agency's Criminal

Investigation Division, and while participating in the Secretary of the Army's Focus Panel on Sexual Harassment—were not protected under section 2302(b)(8). *Id*. The decision in *Redschlag* cited the Board's previous decision in *Nogales v. Department of the Treasury*, 63 M.S.P.R. 460, 464 (1994), in which the Board stated that disclosures about discrimination based on sex, race, color, religion, or national origin are excluded from the coverage of section 2302(b)(8) because they are covered by 5 U.S.C. § 2302(b)(1)(A) and that such disclosures are not within the purview of the Board's IRA jurisdiction regardless of the channels through which the employee makes the disclosure.

The Board's decisions are consistent with the decisions of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). In *Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 680-81 (Fed. Cir. 1992), the employee filed an IRA appeal asserting that a 3-day suspension was taken in reprisal for his having filed a discrimination complaint with the EEOC. Like the Board, the court looked to the WPA's legislative history to support its finding that the EEO process was the appropriate forum for an employee alleging reprisal for filing a discrimination complaint. *Id*. at 690-92. The court observed that the division adopted by Congress, among other things, "avoids potentially conflicting procedures or outcomes," and "acknowledges the EEOC role as an expert agency in discrimination matters." *Id*. at 692. In *Serrao v. Merit Systems Protection Board*, 95 F.3d 1569, 1575 (Fed. Cir. 1996), the court restated the holding of its previous decision in *Spruill* that "the filing of a complaint with the [EEOC], in which an employee alleged discriminatory treatment by an agency in violation of title VII of the Civil Rights of 1964, did not constitute a whistleblowing disclosure within the meaning of section 2302(b)(8), but instead, was a nonwhistleblowing disclosure under section 2302(b)(9)(A)" (citing *Spruill*, 978 F.2d at 692). Most recently, in *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1327-28 (Fed. Cir. 2020), the court reiterated that discrimination claims may not be raised in an IRA appeal, because IRA appeals are limited to alleged violations of whistleblower protection statutes.

When confronted with the issue of whether a title VII matter is within the scope of the whistleblower protection statutes, the regional circuits that have addressed the issue have agreed with the Federal Circuit.[footnote omitted]

The U.S. Court of Appeals for the Sixth Circuit affirmed a decision by the U.S. District Court for the Western District of Kentucky which determined that an employee's claims of sexual harassment, race discrimination, and associated retaliation were not appropriately categorized as whistleblower claims, holding that "when dealing with issues of employment discrimination, the WPA/WPEA is displaced and preempted by [t]itle VII." *Carrethers v. Esper*, No. 3:16-CV-62- CRS, 2019 WL 2330894, *1, 5 (W.D. Ky. May 31, 2019), *aff'd sub nom. Carrethers v. McCarthy*, 817 F. App'x 88 (6th Cir. 2020). Similarly, in a case before the U.S. Court of Appeals for the Seventh Circuit, an employee attempted to contest adverse actions based on his religion and national origin within the context of a WPA claim. The court held that "for [F]ederal employees claiming discrimination on the basis of religion and national origin (as well as reprisal for complaining about discrimination), [t]itle VII is the exclusive judicial remedy." *Malekpour v. Chao*, 682 F. App'x 471, 475-76 (7th Cir. 2017). The U.S. Court of Appeals for the District of Columbia Circuit also has agreed with the "Federal Circuit's longstanding precedent, which Congress has been aware of but has never overturned," that "employees who specifically complain about discrimination against them (or retaliation against them for having filed a discrimination claim) are not covered by the general whistleblower provisions and thus fall outside the Board's whistleblower jurisdiction." *Coulibaly v. Merit Systems Protection Board*, 709 F. App'x 9, 10 (D.C. Cir. 2017). Further, prior to the passage of all circuit review, the U.S. Court of Appeals for the Third Circuit concluded that, while reprisal for EEO activity can form the basis of a title VII claim, it "generally does not encompass whistleblowing activity, which usually involves disclosures outside established procedures." *Fleeger v. Principi*, 221 F. App'x 111, 117 (3d Cir. 2007) (citing *Spruill v. Merit Systems Protection Board*, 978 F.2d 679 (Fed. Cir. 1992)) [footnotes omitted]

In addition to finding that allegations of discrimination in violation of title VII cannot be brought under the whistleblower protection statutes, courts have also found that the reverse is true; allegations of reprisal for whistleblowing cannot be brought under title VII. *See Davis v. James*, 597 F. App'x 983, 987 (10th Cir. 2015) (finding that the plaintiff failed to establish that she opposed conduct prohibited by title VII because she alleged in her EEO complaint that she was actually retaliated against for whistleblowing about timecard fraud); *see also Jamil v. Department of Defense*, 910 F.2d 1203, 1207 (4th Cir. 1990)

(explaining that title VII is not a general "bad acts" statute, and "only addresses discrimination on the basis of race, sex, religion, and national origin, not discrimination for whistleblowing"). Indeed, courts have long adopted the proposition that claims of discrimination in Federal employment are to be addressed solely through title VII. *See Brown v. General Services Administration*, 425 U.S. 820, 835 (1976) (stating that title VII "provides the exclusive judicial remedy for claims of discrimination in [F]ederal employment"); *see also Pretlow v. Garrison*, 420 F. App'x 798, 801 (10th Cir. 2011) (explaining that "[i]nsofar as [a Federal employee] complains of discrimination and associated retaliatory conduct, his exclusive remedy is provided by [t]itle VII"); *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006) (referring to title VII as the "exclusive judicial remedy for claims of discrimination in [F]ederal employment"). Thus, it is clear that separate remedies exist for redress of claims of discrimination and claims of reprisal for whistleblowing, and that claims must be brought under the appropriate statutory scheme. This further supports the conclusion that allegations of discrimination may not be brought under the whistleblower protection statutes.

(2) *The Board's decisions in Armstrong and Kinan are overruled.*

In *Armstrong*, 107 M.S.P.R. 375, ¶ 17, the case referenced by the appellant in his petition for review, the employee, among other things, disclosed to an Office of Inspector General investigator that none of the African American employees in the office had been afforded the opportunity to work on an assignment that was often an avenue to promotion. Thus, his disclosure related to purported violations of title VII. The Board agreed with the administrative judge that Mr. Armstrong's disclosure evidenced a violation of law, rule, or regulation or an abuse of authority. *Id*. The decision failed to discuss or even acknowledge the Board and court precedent set forth above regarding the scope of the coverage of 5 U.S.C. § 2302(b)(8), and provided no rationale for its departure from established precedent. *Armstrong*, 107 M.S.P.R. 375, ¶ 17.

In *Kinan*, 87 M.S.P.R. 561, ¶¶ 3-7, which the appellant also cited in his petition for review, the employee alleged that his employing agency first detailed and then reassigned him in reprisal for his disclosures that agency officials refused to hire African Americans, failed to take corrective action in a sexual harassment case, and retaliated against him for opposing his supervisor's

discriminatory practices. The Board agreed with the administrative judge that corrective action was not warranted in the Board appeal because the agency established by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosures, but the Board specifically addressed whether Mr. Kinan's disclosures were protected and whether he established that one or more of the disclosures was a contributing factor to the personnel action. *Id.*, ¶¶ 9-10. In addressing whether the disclosures were protected, the Board explained that it found without merit the agency's argument that the disclosures were not protected under 5 U.S.C. § 2302(b)(8) because they related to EEO and grievance matters under 5 U.S.C. § 2302(b)(9). *Id.*, ¶ 13 n.2. The Board reasoned that Mr. Kinan did not file an EEO complaint on his own behalf, but complained to agency management about broader concerns, and thus, his disclosures fell under 5 U.S.C. § 2302(b)(8). *Id.* As in *Armstrong*, however, the *Kinan* decision failed to discuss or even acknowledge the Board and court precedent set forth above regarding the scope of the coverage of 5 U.S.C. § 2302(b)(8), and the reasoning the Board offered was inconsistent with established precedent.[7]

> [7] In support of the holding, the Board in *Kinan* cited the Federal Circuit's decision in *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1035 (Fed. Cir. 1993), for the proposition that matters that could have been asserted in a 5 U.S.C. § 2302(b)(9) proceeding do not lose 5 U.S.C. § 2302(b)(8) protection as long as they are raised outside of it as well. *Kinan*, 87 M.S.P.R. 561, ¶ 13 n.2. The decision in *Ellison* is inapposite to the issue at hand as the appellant in that case did not file an EEO complaint or engage in activity that could fall within the purview of title VII. *Ellison*, 7 F.3d at 1033-36.

We cannot reconcile the decisions in *Armstrong* and *Kinan* with the weight and reasoning of the Board and court precedent discussed above. Accordingly, we overrule *Armstrong* and *Kinan* to the extent that they found that alleged reprisal for opposition to practices made unlawful by title VII constitutes a protected disclosure under section 2302(b)(8).

> (3) *The WPEA does not extend the coverage of the whistleblower protection statutes to title VII-related matters.*

-12-

The appellant argues on review that, under the WPEA, the scope of the whistleblower protection statutes was expanded to include allegations of wrongdoing that fall within the purview of title VII. PFR File, Tab 1 at 15-20. To bolster this argument, the appellant cites the WPEA's legislative history, which generally supports broadly interpreting the statutory scheme's protections. *Id.*

We agree that Congress intended the coverage of the whistleblower protection statutes to be broad. Nevertheless, the coverage is not boundless. Nothing in the statute or legislative history of the WPEA addresses *Williams*, *Spruill*, or their progeny. Thus, despite expanding the scope of whistleblower protection in other ways, nothing suggests that the WPEA altered the long-standing administrative and judicial interpretation that title VII-related claims are excluded from protection under the whistleblower protection statutes. Moreover, following the enactment of the WPEA, the circuit courts have reaffirmed that this interpretation is still controlling.[8]  *See Young*, 961 F.3d at 1327-28; *Coulibaly*, 709 F. App'x at 10; *Malekpour*, 682 F. App'x at 475-75.

> [8] We have considered whether other statutes enacted since the WPEA became law cast doubt on the interpretation and find that none do. See, e.g., National Defense Authorization Act of 2018, Pub. L. No. 115-91, 131 Stat. 1283 (2017); Dr. Chris Kirkpatrick Whistleblower Protection Act of 2017, Pub. L. No. 115-73, 131 Stat. 1235 (2017).

To be clear, we strongly condemn managers taking personnel actions in reprisal for engaging in any protected activity, including alleging violations of title VII. Congress has not left such employees without recourse. Rather, they may seek redress under title VII, which is enforced by the EEOC. Courts have interpreted the anti-retaliation provision of title VII as providing broad protection to those who raise title VII violations. *See*, *e.g.*, *Ray v. Ropes & Gray*, LLP, 799 F.3d 99, 107-08 (1st Cir. 2015); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997); *see also Crawford v. Metropolitan Government of Nashville & Davidson County*, *Tennessee*, 555 U.S. 271, 276 (2009).

## V. SUMMARY OF ARGUMENT

The whistleblower statutes distinguish IRA coverage of whistleblower disclosures and formal EEOC or like complaints. This Court's decision in *Spruill v. MSPB*, 978 F.2d 679 (Fed. Cir. 1992), made clear that IRA coverage does not extend to a complaint filed under EEOC administrative procedures outlined at 29 CFR Part 1614.103-110. *Spruill* did not address what IRA protection is afforded, or not allowed, for protests within management circles of EEO policy violations—systemic or individual—and resultant reprisal. Decisions of this Court and the MSPB after *Spruill* have reached differing results: there are some decisions determining that internal protests on EEO-related matters are protected disclosures for IRA jurisdiction; other decisions reach the contrary result.

The Board's decision in *Edwards* attempted to reconcile the competing lines of authority by developing a broad rule that EEO-related disclosures within management circles are not protected by the Whistleblower Protection Act, as amended. Shortly before the Board's *Edwards* decision, this Court issued its decision in *Smolinski v. MSPB*, 23 F.4th 1345 (Fed. Cir. 2022), which appeared to favor IRA protection of internal protests to management executives of EEO-related violations. The Board's *Edwards* decision did not reference *Smolinski*, although Edwards brought the case to the Board's attention through a reopening petition (summarily dismissed by the Board's Clerk). *Smolinski* dictates reversal of the Board's

jurisdictional dismissal of the IRA appeal of Mr. Edwards. Irrespective of *Smolinski*, the Board's reversal of precedent favoring jurisdiction of the Edwards IRA appeal was without foundation through change in the law or in any policy developed by the Board.

## VI.  ARGUMENT

## STANDARD OF REVIEW

Whether the Board has jurisdiction over an appeal is a question of law this Court reviews without deference to the Board. *Gonzalez v. Dep't of Transp.*, 551 F.3d 1372, 1374 (Fed. Cir. 2009). Findings of fact underlying the Board's jurisdictional decision are reviewed for substantial evidence. *Bledsoe v. MSPB*, 659 F.3d 1097, 1101 (Fed. Cir. 2011).

**A.    *SPRUILL* ONLY DETERMINED THAT FORMAL EEO COMPLAINTS WERE COVERED UNDER 5 USC 2302(b)(9) AND EXCLUDED UNDER 5 USC 2302(b)(8). *SPRUILL* DID NOT AFFECT INTERNAL DISCLOSURES INVOLVING MATTERS RELATED TO EEO.**

Significant in the analysis of this appeal is *Spruill v. MSPB*, 978 F.2d 679 (Fed. Cir. 1992). After he received a brief suspension, Mr. Spruill initiated a whistleblower (Individual Right of Action) MSPB appeal. He asserted the suspension was a reprisal

for filing an EEO complaint—activity Spruill argued was protected under 5 USC 2302(b)(8)(A)(1), embracing a report or disclosure of "any violation of any law, rule, or regulation."

The Court determined that since 5 USC 2302(b)(9) encompassed complaints, but that section was not incorporated into 5 USC 1221, defining the Individual Right of Action appeal, the Board had no jurisdiction over an IRA appeal asserting that the filing of a complaint led to reprisal. Section 2302(b)(9) concerned the right to complain. Section 2302(b)(8) concerned whistleblowing disclosures. *Ellison v. MSPB*, 7 F.3d 1031, 1034 (Fed. Cir. 1993), explained:

> In *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679 (Fed.Cir.1992), we confirmed that in the absence of a protected disclosure, the Board is without jurisdiction to entertain an IRA appeal under the WPA. There we held that the filing of a complaint with the Equal Employment Opportunity Commission (EEOC), in which an employee alleges discriminatory treatment by an employer in violation of Title VII of the Civil Rights Act of 1964, does not constitute a whistleblowing disclosure within the terms of section 2302(b)(8), but instead, is a nonwhistleblowing disclosure under section 2302(b)(9).

**B.    ALTHOUGH *SPRUILL* PRECLUDES IRA REPRISAL APPEALS BASED ON FORMAL EEO COMPLAINTS, THAT DECISION DOES NOT NEGATE IRA PROTECTION FOR REPRISAL RESULTING FROM INTERNAL DISCLOSURES TO MANAGEMENT OF EEO-RELATED MATTERS.**

5 USC 2302(b)(8) defines protected disclosures:

(A)    any disclosure of information by an employee or applicant which the

employee or applicant reasonably believes evidences—

> (I)    any violation of any law, rule, or regulation, or

> (ii)    gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs; . . .

5 USC 2302(b)(9), defines protected complaints:

> (A)    the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—

> > (I)    with regard to remedying a violation of paragraph (8); or

> > (ii)    other than with regard to remedying a violation of paragraph (8); . . .

Under the 1989 Whistleblower Protection Act, the Individual Right of Action became available under 5 USC 1221 for covered disclosures under 5 USC 2302(b)(8):

> §1221. *Individual right of action in certain reprisal cases*

> (a)    Subject to the provisions of subsection (b) of this section and subsection 1214(a)(3), an employee, former employee, or applicant for employment may, with respect to any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited personnel practice described in section 2302(b)(8), seek corrective action from the Merit Systems Protection Board.

*Spruill* established a rule distinguishing IRA coverage of disclosures under 5 USC 2302(b)(8) and coverage of complaints (or similar formal protests) under 5 USC

-17-

2302(b)(9): that an EEO complaint covered by the latter section cannot be characterized as a disclosure under the former section. Not at issue in *Spruill* was whether a disclosure to management, outside the EEO complaint process, was devoid of IRA protection.

### C. *SMOLINSKI V. MSPB* RECENTLY CONFIRMED THAT DISCLOSURES OF EEO VIOLATIONS TO MANAGEMENT ARE PROTECTED UNDER 5 USC 2302(b)(8).

An employee may inform higher management of EEO violations or concerns, or the employee may avoid protests to higher management and instead file complaints under the EEOC process, or perhaps initiate a complaint with the agency inspector general about the management practices involving EEO that the employee believes to be unlawful, unfair, abusive, or gross mismanagement. The employee could write to a congressional oversight committee, to his congressman or senator, or to the White House. A complaint could be made to a civil rights organization, news media could be informed. A formal EEO complaint could be generated in combination with one or more related disclosures in one or more fora outside the EEOC process.

In 1992, *Spruill* addressed only the use of the EEO complaint process and determined the complaint fell under a section of the Whistleblower Protection Act that afforded no protection for the employee under 5 USC 2302(b)(8) and that

-18-

provided no related IRA appeal for resulting reprisal: "The question is whether the filing of an EEOC complaint which alleged discriminatory treatment by the employer in violation of Title VII constitutes `whistleblowing' within the scope of § 2302(b)(8)." 978 F.2d at 689. The Court's answer was that the EEO complaint was not within the scope of that statutory provision.

As to disclosures to higher management of EEO issues impacting the workplace, thirty years after *Spruill*, *Smolinski v. MSPB*, 23 F.4th 1345 (Fed. Cir. 2022), considered the whistleblower protection for disclosures to management of EEO infractions.

Dr. Smolinski was an Army officer at a military hospital in Germany. In December 2017, Smolinski's wife received treatment there. She submitted a patient complaint that made its way to the hospital commander, Col. Hudson. Days later, the Smolinskis attended a holiday party. They encountered Hudson, described as intoxicated, who allegedly attempted to intimidate Dr. Smolinksi, made inappropriate remarks to Mrs. Smolinski, and touched her in a way that led Dr. Smolinski to file a protest with higher-level Army authority. That led to an Army inquiry; Hudson was temporarily relieved of his duties. Mrs. Smolinski testified during that inquiry about the encounter with Hudson, who was reinstated as hospital commander in June 2018 after the internal inquiry concluded.

Meanwhile, Dr. Smolinski sought and in July 2018 was offered a civilian medical position at the hospital. The offer was put on hold in August, withdrawn in November, and reposted that same month, followed by Smolinski's re-application, which was soon rejected. The job was reposted in August 2019, offered to Smolinksi in November 2019, followed by several months of inactivity and then a reduction in the amount of the salary offered to Smolinksi, who was appointed to the supervisory physician job in February 2020. By then Hudson was no longer hospital commander.

After his initial unsuccessful efforts to obtain the civilian appointment, in May 2019, Dr. Smolinksi filed a reprisal complaint with the Office of Special Counsel, alleging that the withdrawal of the tentative job offer and his earlier nonselection were retaliation for the patient complaint of Mrs. Smolinski and the testimony of Dr. and Mrs. Smolinski against Hudson during the internal Army inquiry concerning the holiday party events. In June 2020, OSC closed out the complaint. Dr. Smolinksi filed an MSPB IRA appeal under 5 USC 1221, leading to an appeal to this Court after MSPB dismissed his appeal for lack of jurisdiction.

Jurisdictionally significant to this appeal is this Court's treatment of the testimony by Dr. Smolinksi against Hudson in the internal Army inquiry—testimony found to be within the scope of both 5 USC 2302(b)(8) and 2302(b)(9)© [cooperating with or disclosing information in designation investigations], *Smolinski*, 23 F.4th at 1351:

In pertinent part, § 2302(b)(8) protects an employee for "any disclosure of information [he] reasonably believes evidences (i) any violation of any law, rule, or regulation, or (ii) . . . an abuse of authority." Id. § 2302(b)(8)(A). As mentioned, a belief is reasonable if a disinterested observer with knowledge of the essential facts could reach the same conclusion. *Lachance*, 174 F.3d at 1381. The Board defines abuse of authority as, for example, "an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons." *Wheeler v. Dep't of Veterans Affs.*, 88 M.S.P.R. 236, 241 (2001) (internal quotation marks omitted) (citing *Ramos v. Dep't of Treasury*, 72 M.S.P.R. 235, 241 (1996)).

Dr. Smolinski alleged sufficient factual matter to state a plausible claim under § 2302(b)(8). He averred that his April 2018 testimony disclosed how Col. Hudson's alleged conduct at the Military Ball was an abuse of authority and violated laws, rules, or regulations. J.A. 41; J.A. 59–60. Indeed, Dr. Smolinski testified that Col. Hudson was visibly intoxicated and repeatedly declared his hatred for Dr. Smolinski. J.A. 211. He also testified that Col. Hudson walked up behind Mrs. Smolinski, whispered in her ear, made her feel "very uncomfortable," and led her to "believe[] that if she and COL Hudson had been alone he would have crossed a line." *Id*. Dr. Smolinski further testified that Col. Hudson's position as commander of the hospital put him "in a difficult situation" because he was "uncertain what to do given the power dynamics." *Id*. Accepting those allegations as true, a disinterested observer could believe that Col. Hudson bullied Dr. Smolinski and sexually harassed Mrs. Smolinski. This amounts to a non-frivolous allegation that Dr. Smolinski made a protected disclosure. Both sexual harassment and bullying by a superior officer under the circumstances alleged would be abuses of authority. It was therefore error for the Board to dismiss this claim.

Whether the availability of an EEO complaint remedy for Dr. Smolinski could or should have deflected his IRA appeal under *Spruill*, to the extent it was based on his involvement in protesting and testifying during an Army inquiry about sexual harassment of his wife by an Army officer during, and then seeking a remedy for reprisal following rejection of his application for employment, was not addressed in

*Smolinski*, although *Spruill* was discussed in the Board's response brief in *Smolinski* of August 4, 2021, at page 21 (also referencing *Young v. MSPB*, 961 F.3d 1323 (Fed. Cir. 2020)). The *Smolinski* oral argument recording does not reveal a reference to *Spruill*, although MSPB counsel appeared to agree with the Court that sexual harassment would qualify as an "abuse of authority" for purposes of 5 USC 2302(b)(8). [Oral argument recording at approximately 24:10 and 30:10].

The 1992 *Spruill* decision addressed IRA coverage of an EEO complaint. The 2022 *Smolinski* decision considered IRA coverage of information disclosed to management about sexual harassment or like behavior violating the EEO laws. Earlier decisions of this Court from 1992 onward, and decisions of the MSPB, have not consistently treated the jurisdictional distinction between an EEO complaint and EEO-related disclosures.

### D. DECISIONS OF THIS COURT AND MSPB ARE NOT CONSISTENT, POST-*SPRUILL* AND PRE-*SMOLINSKI,* AS TO IRA COVERAGE OF EEO-RELATED DISCLOSURES TO MANAGEMENT.

We review treatment by this Court and MSPB before *Smolinski* of the distinction between protected disclosures and unprotected complaints.

#### 1. Federal Circuit

#### a. Not Covered: Precedential

In *Young v. MSPB*, 961 F.3d 1323, 1326-1329 (Fed. Cir. 2020), the appellant claimed she was retaliated against when she complained to her supervisors concerning the agency's failure to accommodate her disability. That assertion, this Court concluded, was, not a form of whistleblower retaliation within the Board's IRA jurisdiction:

As for Ms. Young's claims that the agency had retaliated against her for

requesting a reasonable accommodation for her disability or for filing EEO complaints, the administrative judge ruled that the type of EEO activity she described "cannot serve to confer Board jurisdiction over her IRA appeal."

. . .

Ms. Young also contends that she was retaliated against and subjected to a hostile work environment for filing EEO complaints. Allegations of retaliation for exercising a Title VII right, however, do not fall within the scope of section 2302(b)(8) of the Whistleblower Protection Act and are therefore not proper subjects for inclusion in an IRA appeal on that ground. *See Serrao v. Merit Sys. Prot. Bd.*, 95 F.3d 1569, 1575–76 (Fed. Cir. 1996); *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 689 (Fed. Cir. 1992). Nor do such allegations fall within the list of other prohibited personnel practices for which the Board can grant corrective action in an IRA appeal.

. . .

Section 2302(b)(9)(A)(ii), which is not included in the list of prohibited personnel practices for which the Board can issue corrective action, covers retaliation for exercising any appeal, complaint, or grievance right other than one seeking to remedy a violation of section 2302(b)(8). Retaliation for filing those other types of complaints is remediable through different mechanisms, and not by an IRA appeal to the Board. *See Hansen v. Merit Sys. Prot. Bd.*, 746 F. App'x 976, 981 n.6 (Fed. Cir. 2018) (reporting allegations of sexual harassment does not constitute a whistleblowing disclosure); *Garvin v. Merit Sys. Prot. Bd.*, 737 F. App'x 999, 1004 (Fed. Cir. 2018) (filing union grievances and EEO complaint do not fall within the WPEA); *Nuri v. Merit Sys. Prot. Bd.*, 695 F. App'x 550, 553 (Fed. Cir. 2017) (filing EEO complaint, unfair labor practice complaint, or grievance is not within Board's IRA jurisdiction because they did not seek to remedy an act of whistleblower reprisal); *Coulibaly v. Merit Sys. Prot. Bd.*, 709 F. App'x 9 (D.C. Cir. 2017) (filing a race discrimination complaint is not a whistleblower disclosure); *Daniels v. Merit Sys. Prot. Bd.*, 832 F.3d 1049, 1055 & n.13 (9th Cir. 2016) (in enacting the WPEA, Congress intended to protect only disclosures of the kind of misconduct listed in section 2302(b)(8)); *Mudd v. Dep't of Veterans Affairs*, 120 M.S.P.R 365, 369– 70 (2013) (reprisals for filing grievances, which fall

within section 2302(b)(9)(A)(ii), are not within the scope of IRA proceedings). For that reason, Ms. Young's contention that she was removed in part in retaliation for making EEO complaints about the agency's failure to accommodate her disability does not present an issue over which the Board has jurisdiction under 5 U.S.C. § 1221(a).

### b.    Not Covered: Nonprecedential

*Hansen v. MSPB*, 746 Fed. Appx. 976 (Fed. Cir. 2018 NP), involved several disclosures, including an internal complaint that Mr. Hansen's supervisor sexually harassed him. Although the jurisdictional dismissal by the Board resulted in a remand on some of Hansen's disclosures, at n. 6 of the decision, the Court hearkened to *Spruill*:

> . . . Disclosure 3's allegations relating to sexual harassment are covered exclusively by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) (2012), with "investigative and remedial measures available . . . through the E[qual] E[mployment] O[pportunity] C[ommission]," and are therefore not considered protected whistleblowing activity under § 2302(b)(8), *Spruill v. Merit Sys. Prot. Bd.*, 978 F.2d 679, 691-92 (Fed. Cir. 1992).

*Keys v. DHUD*, ___Fed. Appx.___ (Fed. Cir. 2022 NP), involving a reprisal claims based on management's reaction to a statement made by Keys in district court, favorably referenced *Hansen.*

### c.    Covered: Nonprecedential

*Miller v. FDIC*, 626 Fed. Appx. 621 (Fed. Cir 2015) (NP), noted that disclosures outside a complaint process (that could have been included in the complaint process) may be covered in an IRA appeal:

> . . . In *Ellison*, we explained that an employee can make separate disclosures based on the "same operative facts," with some made under § 2302(b)(8), and others under § 2302(b)(9)(A), such that filing a grievance itself does not disqualify an employee from pursuing corrective action through an IRA. 7 F.3d at 1035.

-24-

We explained this statutory distinction in detail in *Serrao*. In *Serrao*, the employee claimed that "even assuming his OSC complaint was based upon alleged section 2302(b)(9)(A) reprisal, he nevertheless presented section 2302(b)(8) reprisal claims." 95 F.3d at 1575. We clarified that the issue before the court was "whether the Board has jurisdiction ... when disclosures allegedly protected under 5 U.S.C. § 2302(b)(8) are made solely in the course of exercising agency grievance rights and are never presented outside that context." *Id.* at 1576. We agreed with the Board's conclusion that "only disclosures made outside grievance procedures or discrimination complaint procedures could serve as the basis for Board jurisdiction over an IRA appeal." *Id.*; *see also Smart v. Merit Sys. Prot. Bd.*, 211 F. App'x 969, 971 (Fed. Cir. 2007) ("Our cases have squarely held that disclosures made solely during grievance proceedings, and not separately disclosed to the agency, cannot form the basis for a whistleblowing claim."). We concluded that allowing an employee to meet the jurisdictional requirements for an IRA by placing § 2302(b)(8) allegations into a grievance proceeding would "undercut *Spruill*" and "blur" the distinction made by Congress between the types of disclosures covered in these subsections of § 2302. *Serrao*, 95 F.3d at 1576.

### 2.    MSPB

#### a.    Covered: Precedential

Some post-*Spruill* MSPB decisions suggest IRA coverage of internal management disclosures of EEO problems. *E.g.*, *Gonzales v. DHUD*, 64 MSPR 314, 317-19 (1994) (disclosures alleging agency denigrated rights of Spanish-speaking persons denied equal opportunity to file housing discrimination claims were protected, as was disclosure that official was insensitive towards disabled). Under *Sirgo v. DOJ*, 66 MSPR 261, 264–67 (1995):

> . . . He asserted that he had discussed with his co-workers during his probationary period the alleged preferential treatment that a superior (Mr. Tennant) had shown another Physician's Assistant (Ms. Prieto) with whom Mr. Tennant purportedly was having an intimate relationship. He contended that Mr. Tennant learned of these discussions and had retaliated against him because of those discussions and because the appellant intended to report the

alleged preferential treatment to higher-level agency officials after the end of his probationary period. . . .

. . .

Regarding the content of those disclosures, the administrative judge found that the alleged intimate relationship between Mr. Tennant and Ms. Prieto did not appear to constitute an abuse of authority and that the appellant's disclosure thus was not protected. *See* I.D. at 10. As an initial matter, we note that the appellant argued that an abuse of authority had been committed not simply because Mr. Tennant was allegedly having an intimate relationship with Ms. Prieto, but because he also purportedly granted her preferential treatment based on that alleged relationship. The Board has defined "abuse of authority" as an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons; the definition does not contain a *de minimi*s threshold. *See D'Elia v. Department of the Treasury*, 60 M.S.P.R. 226, 232-33 (1993). The appellant's allegation of preferential treatment, based not on Ms. Prieto's merit but on Mr. Tennant's purported relationship with her, appears to fall within the bounds of that definition. We therefore find, after review of the content of the appellant's disclosures, that he raised a nonfrivolous allegation that he made disclosures protected under the WPA. *See Geyer*, 63 M.S.P.R. at 16; *Garrett*, 62 M.S.P.R. at 671.

*Ramos v. Dept. of Treasury*, 72 MSPR 235, 242–43 (1996), summarized decisions concerning IRA jurisdiction when the appellant is involved in multiple disclosures and complaints in multiple forums:

[I]n some circumstances, the same factual situation and issues raised in a filing protected by section 2302(b)(9) may also serve as the basis for a section 2302(b)(8) disclosure if they establish the type of fraud, waste, or abuse that the WPA was intended to reach. *See Ellison*, 7 F.3d at 1035; *Bump v. Department of the Interior*, 64 MSPR 326, 332 (1994). Hence, we find that the fact that the appellant's letter to the Attorney General disclosing allegations of agency attacks upon IRS Hispanic employees in violation of the Civil Rights Act of 1991 also formed a basis for his EEO complaint with the agency concerning his suspension and reassignment does not necessarily preclude IRA

jurisdiction over this disclosure. The appellant's filing of an EEO complaint concerning the agency's actions does not, in itself, disqualify him from pursuing corrective action under the WPA based on the same operative facts, provided that such underlying and intertwining facts also constitute violations of 5 USC § 2302(b)(8). *See Ellison*, 7 F.3d at 1035; *Bump*, 64 MSPR at 332.

*Kinan v. DOD*, 87 MSPR 561, 563-64 (2001), determined as to an allegedly retaliatory detail and reassignment:

> The appellant was an Equal Employment Opportunity Specialist at the Defense Logistics Agency's Defense Contract Management District East (DCMDE), Office of Equal Employment Opportunity (EEO office) in Boston, Massachusetts. . . . In August 1997, the appellant sent separate letters to Clairborne Douglass Haughton, Jr., Director Equal Employment Opportunity, and William E. Leftwich, III, Deputy Assistant Secretary of Defense, Equal Opportunity, alleging, among other things, that agency officials in the EEO office refused to hire African Americans, failed to take corrective action in a sexual harassment case, and retaliated against him for opposing his supervisor's discriminatory practices. . . .

At note 2 of *Kinan*, MSPB explained:

> [2] Prior to issuance of *White* [*Lachance v. White*, 174 F.3d 1378 (Fed. Cir. 1999)], in fact, the agency's only objection to the finding that the appellant made protected disclosures was the claim that what he raised were EEO and grievance matters that fall under 5 U.S.C. § 2302(b)(9), not whistleblowing under (b)(8). . . . We note that the agency's objection in this regard has no merit. The appellant did not file EEO complaints on his own behalf, but complained to management about what he viewed as the agency's failures to remedy under-representation in the EEO Office, to fail to enforce the sexual harassment policy in light of the treatment of a female employee, and to countenance nepotism. Thus, what he alleged, even if they could have been (b)(9) matters, fall within (b)(8) here. *See, e.g.*, *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1035 (Fed. Cir. 1993) (matters that could have been asserted in a (b)(9) proceeding do not lose (b)(8) protection as long as they are raised outside of it as well).

-27-

*Armstrong v. Dept. of Justice*, 107 MSPR 375, 384 ¶ 17, 2007 MSPB 280 (2007), identified as protected the internal disclosure under 5 USC 202(b)(8):

> (8) I told the investigators that none of the African-American employees in the office had ever been given the opportunity to serve as a coordinator for U.S. Trustee audits, a coordinator for COPS audits, or a coordinator for external audits. It is common knowledge that an employee will be promoted to the GS-13 grade level after successfully serving in one of these coordinator positions.

In *Pasley v. Dept. of Treasury*, 109 MSPR 105, 114, 2008 MSPB 122 (2008):

> [T]he appellant alleged that the first-level supervisor abused his authority by arranging for the appellant's female peer, an employee with whom he appeared to have a close personal or romantic relationship, in effect, to take over his role in cases he was supposed to be supervising and thus to diminish his responsibilities to a significant degree. . . . He further alleged that, when the first-level supervisor found out that he had disclosed the situation to Stipano in the fall of 2003, this supervisor confronted him and told him that he had made a serious mistake by complaining to Stipano and that he would regret it, i.e., that this supervisor "verbally threatened" him with implied adverse job consequences. . . . In a sworn statement, the appellant averred that Stipano agreed with him that the relationship between the first-level supervisor and the appellant's female peer could be romantic.. . . .
>
> An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons. There is no de minimis standard for abuse of authority as a basis of a protected disclosure under the WPA. Harassment or intimidation of other employees may constitute an abuse of authority. A supervisor's use of his influence to denigrate other staff members in an abusive manner and to threaten the careers of staff members with whom he disagrees constitutes abuse of authority. *Pedeleose v. Department of Defense*, 107 M.S.P.R. 191, ¶ 37 (2007); *see Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 8 (2007). We therefore find that the appellant made a non-frivolous allegation that he made a protected disclosure because a disinterested observer could reasonably conclude that the first-level supervisor's actions constituted an

abuse of authority. *See*, *e.g.*, *Swinford*, 107 M.S.P.R. 433, ¶ 8; *Kinsey*, 107 M.S.P.R. 426, ¶ 17.

*Cf. Graves v. VA*, 123 MSPR 434, 439–40 ¶ 10, 2016 MSPB 24 (2016) ("The appellant, however, identified these assertions as having been made only in the course of his grievances. . . . [S]uch disclosures are not protected under 5 U.S.C. § 2302(b)(8) and do not serve as a basis for Board jurisdiction over this IRA appeal. *See*, *e.g.*, *Miller v. Merit Systems Protection Board*, 626 Fed. Appx. 261, 269 (Fed. Cir. 2015) (finding that the Board does not have jurisdiction over an IRA appeal arising out of disclosures made solely during grievance proceedings and not separately disclosed to the agency). . .").

### b.    Covered: Nonprecedential

*Musselman v. Dept. of Army*, DA-1221-14-0499-W-3 (NP 6/17/2016), apparently determined to be protected the employee's internal disclosure:

> (c) on April 5, 2011, he reported an employee's sexual harassment complaint to his Program Manager; (d) on July 18, 2011, he reported that his Program Manager was engaged in time fraud; and (e) on October 24, 2011, he prepared a memorandum in relation to an equal employment opportunity (EEO) complaint filed by another individual.
>
> . . .
>
> Although we find that (c) and (e) were protected activities, the appellant failed to prove that either was a contributing factor in the removal of his "acting" duties or the denial of his temporary promotion. . . .

*Luna v. VA*, DA-1221-10-0531-W-1 (NP 5/13/2011), implicitly determined that disclosures outside the complaint process were appropriate for IRA appeals:

> [W]hile the fact that an individual has engaged in activity protected under 5 U.S.C. § 2302(b)(9) does not, in and of itself, disqualify the individual from seeking corrective action under 5 U.S.C. section 2302(b)(8) if she also made

disclosures to the agency based on the same operative facts outside of her section 2302(b)(9) activity, in this case the appellant failed to assert that she made any disclosures of information outside of her testimony which could qualify as a protected disclosure under section 2302(b)(8). Therefore, the administrative judge correctly dismissed this appeal for lack of jurisdiction.

### c.     Not Covered: Precedential

*Redschlag v. Dept. of Army*, 89 MSPR 589, 634 (2001) (*review dismissed*, 32 F. App'x 543 (Fed. Cir March 1, 2002)), eschewed IRA coverage of disclosures of EEO issues outside the formal complaint process (to a congressman, to a focus panel on sexual harassment):

> We have not considered the appellant's purported disclosures that involved alleged discrimination or reprisal for engaging in activities protected by Title VII. The Board has held that even if these disclosures are made outside of the grievance or EEO processes, such disclosures do not constitute protected whistleblower activity under 5 U.S.C. § 2302(b)(8) because they pertain to matters of discrimination covered by 5 U.S.C. § 2302(b)(1)(A). *See Nogales v. Department of the Treasury*, 63 M.S.P.R. 460, 464 (1994); *Parnell v. Department of the Army*, 58 M.S.P.R. 128, 131 (1993) (a claim of reprisal for filing a discrimination complaint is cognizable under 5 U.S.C. § 2302(b)(1)).
> . . .

*Nogales v. Dept. of Treasury*, 63 MSPR 460, 464 (1994), cited in *Redschlag*, determined that as to disclosures made in grievance proceedings (that the appellant contended were made outside those proceedings):

> At the time the administrative judge issued the initial decision, the Board had not squarely addressed the issue of whether disclosures about discrimination, made outside of 5 U.S.C. § 2302(b)(9) channels, were covered by 5 U.S.C. § 2302(b)(8). The Board has since addressed this issue in *Kelsch v. Department of Labor*, 59 M.S.P.R. 503 (1993). In *Kelsch*, the Board held that disclosures about discrimination based on sex (or based on race, color, religion, or national origin) are excluded from coverage under 5 U.S.C. § 2302(b)(8) because they are covered by 5 U.S.C. § 2302(b)(1)(A) and that, therefore, such disclosures

are not within the purview of the Board's IRA jurisdiction. *See* 59 M.S.P.R. at 509-10. Thus, regardless of the channels through which the appellant made these alleged disclosures, such disclosures do not constitute protected whistleblowing activity under 5 U.S.C. § 2302(b)(8) because they pertain to matters of discrimination covered by 5 U.S.C. § 2302(b)(1)(A).

Cited in *Redschlag* and *Nogales* was *Von Kelsch v. Dept. of Labor*, 59 MSPR 503, 509-10 (1993), involving an appellant whose IRA reprisal claim was founded on a statement in a workers' compensation injury notice that she was the victim of what amounted to a sex-based hostile environment:

> The history and structure of the WPA indicates Congress' intent not to extend IRA appeal protection under section 2302(b)(8) to employees who allege reprisal for opposition to practices made unlawful by Title VII. *See Spruill*, 978 F.2d at 691-92. In creating an IRA appeal right under section 2302(b)(8), Congress expressed its intent to , benefit those employees whose "only route of appeal [under the then-existing statute] is the OSC." S.Rep. No. 413, 100th Cong., 2d. Sess. 32. At the time Congress enacted the WPA, however, employees who alleged reprisal for opposition to sexual harassment had a right of appeal to the EEOC under Title VII in addition to any complaint they elected to file with the Office of Special Counsel. See 42 U.S.C. § 2000e-16 (protection of Title VII extended to Federal employees under section 717 of the Civil Rights Act of 1964 by virtue Equal Employment Opportunity Act of 1972); *In re Frazier*, 1 M.S.P.R. 163, 191 n. 36 (1979), *aff'd sub nom. Frazier v. Merit Systems Protection Board*, 672 F.2d 150 (D.C. Cir.1982).

Concerning the reference to the Senate Report 100-413 in *Von Kelsch*, the language of the Report, at p. 32, was indicative of the expansive, not restrictive nature, of what would become the 1989 WPA and Individual Right of Action created by that Statute:

> Section (a) allows employees, former employees, and applicants for employment to seek corrective action before the MSPB subject to subsection (b) and 12l4(a)(3). Employees, former employees and applicants for employment may appeal directly to the MSPB if they allege a prohibited personnel practice as defined under 2303(b)(8) USC 5 (reprisal for whistleblowing), if they appeal first to the OSC, and if the OSC subsequently

terminates the investigation of their or if they have not been notified within 90 days of filing an allegation that the OSC shall seek corrective action on their behalf. Under current law, there are a number of situations for which an alleged whistleblower's only route of appeal is the OSC; this provision is intended to allow whistleblowers who suffer reprisal the further right of appeal to the MSPB once the OSC route is exhausted.

As to disclosure to managers of racial discrimination, harassment, and creation of a hostile work environment when African-American employees were not being promoted, under *Applewhite v. EEOC*, 94 MSPR 300, 307 ¶13 (2003):

> Further, the law is settled that disclosures that are limited to EEO matters covered under 5 U.S.C. § 2302(b)(1) and (b)(9) are excluded from coverage under section 2302(b)(8). *See*, *e.g.*, *Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 690 (Fed. Cir. 1992) (filing an EEO complaint is covered by section 2302(b)(9) and thus not covered by section 2302(b)(8)). . ."). . . .

*See Parikh v. VA*, 110 MSPR 295, 304 ¶ 24, 2008 MSPB 248 (2008) (*overruled on other grounds*, *Hau v. DHS*, 123 MSPR 620, 625–26 ¶¶ 13–15, 2016 MSPB 33 (2016)) ("[W]e agree with the administrative judge's finding that the appellant has not presented a nonfrivolous allegation that disclosures 5 and 6 are protected under the WPA. Those disclosures reported an inappropriate comment by an agency physician that the appellant claimed below evidenced a violation of EEO policies. . . . Disclosures that an agency engaged in discrimination and violated discrimination law are covered under 5 U.S.C. § 2302(b)(1) and (b)(9), and are excluded from coverage under section 2302(b)(8).").

*McDonnell v. Dept. of Agric.*, 108 MSPR 443, 451 (2008), implicitly suggested protection for internal complaints of discrimination but not formal complaints, although the distinction—really a qualification—was not crisp:

> Alleged disclosures that an agency engaged in discrimination and created a hostile work environment in violation of title VII are covered under 5 U.S.C.

-32-

§ 2302(b)(1) and (b)(9), and are excluded from coverage under § 2302(b)(8). *McCorcle*, 98 M.S.P.R. 363, ¶ 21; *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001), *review dismissed*, 32 F. App'x 543 (Fed. Cir. 2002). Moreover, the appellant did not assert in her OSC complaint that she disclosed this series of events to anyone within the agency. . . .

### E.   DECISIONS OF OTHER CIRCUITS ARE NOT PERSUASIVE AUTHORITY CONCERNING THE SCOPE OF *SPRUILL*.

In *Edwards* the Board referred to decisions from other circuits. *Carrethers v. Esper*, No. 3:16-CV-62-CRS, 2019 WL 2330894, *1, 5 (W.D. Ky. May 31, 2019), *aff'd sub nom. Carrethers v. McCarthy*, 817 F. App'x 88 (6th Cir. 2020), involved a Title VII case based on reprisals for an employee's informal and formal EEO complaints. The plaintiff added a whistleblowing claim, and the district court determined that it was preempted by Title VII remedies, relying on a pre-Reform Act decision, *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976), affirming dismissal of a federal employee's untimely EEO complaint and rejecting, as preempted by the availability of Title VII and procedures then administered by the Civil Service Commission, jurisdiction under the 1866 Civil Rights Act, 42 USC 1981. *Spruill* did not cite *Brown*, perhaps because two years after the Supreme Court's decision, the Reform Act was passed, including the section of that statute codified to 5 USC 2302(b)(1), making several types of discrimination, including those covered by Title VII, prohibited personnel practices. The Sixth Circuit's decision in *Carrethers* said nothing about whistleblowing.

Referenced in *Edwards* was *Malekpour v. Chao*, 682 F. App'x. 471 (7th Cir. 2017), in which the plaintiff complained of reprisal for filing an EEO complaint dismissed by the district court through summary judgment. The court noted that

-33-

Malekpour did not allege protected disclosures that, if made, should be presented to OSC and then to MSPB. The decision had no relevance to the issues presented by *Edwards*.

Cited in *Edwards* was *Coulibaly v. MSPB*, 709 F. App'x. 9 (D.C. Cir. 2017), involving the appellant's IRA case asserting that he was fired because of his earlier filing of a discrimination complaint. The D.C. Circuit affirmed the Board based on *Spruill*. There was no claim of a disclosure outside the EEO complaint process.

The Board relied on *Fleeger v. Principi*, 221 F. App'x 111 (3d Cir. 2007), a decision that considered a reprisal case based on an EEO complaint, mixed in with a whistleblowing claim as to which the court appeared to determine the plaintiff had not exhausted administrative remedies; but the court remarked, citing *Spruill*: 'Reprisal "for EEO activity,' which can form the basis for a cause of action under Title VII and other statutes, involves employee disclosures within the framework of established procedures, and generally does not encompass whistleblowing activity, which usually involves disclosures outside established procedures." The comment seems to favor the position of Mr. Edwards rather than that of the MSPB, but the decision is nonprecedential and a whistleblowing analysis was not central to its disposition.

We return to analysis of the intersection of *Smolinski* and *Spruill*.

### F.    *SMOLINSKI* IS CONSISTENT WITH *SPRUILL*.

*Spruill* is consistent (or not inconsistent) with *Smolinski* if *Spruill* is recognized as a determination only that a formal EEO complaint is not provided WPA protection.

The direction of the MSPB *Edwards* decision is to divert any reprisal from any EEO-related disclosure to the formal EEOC complaint process. Although Congress

has not expressed through legislative history a desire to overrule *Spruill* through the various statutory amendments to the whistleblower provisions of the Reform Act, Congress has not endorsed, not mentioned, *Spruill* in legislative history discussing some decisions of the MSPB and this Court viewed by legislators as limiting whistleblower protections. Congress has made no effort to establish a clear election of remedies for whistleblowers; 5 USC 7121(g) preserves an employee's choice to pursue prohibited personnel allegations through MSPB appeals, under negotiated grievance procedures, or through statutory IRA procedures, although under 5 USC 7121(d), an EEO matter proceeds through a statutory or negotiated procedure, but not both. That said, 5 USC 7121 ("Grievance Procedures") is not clear enough to control the outcome in this appeal.

As to legislative history, Edwards referenced *Williams v. DOD*, 46 MSPR 549, 554 (1991), in turn referencing 1987 Congressional testimony of a Special Counsel who expressed concerns about granting IRA appeal rights to employees who had EEOC redress. The purpose of the WPA was to enhance, not diminish, whistleblower protections and the role of OSC, which was criticized as ineffectual. The then Special Counsel may have desired to restrict whistleblower coverage. That was not the intent of Congress; no statutory election of remedies or exclusion was included in the WPA.

But Congress has established statutory protections for processes available to employees outside the whistleblower protections established by the 1978 Reform Act and its several amendments.

The 1978 Reform Act codified to 5 USC 2302(d):

(d)     This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under—

(1)    section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin; . . .

From the WPEA of 2012, Pub. L. 112-199:

Sec. 201. SAVINGS CLAUSE.

Nothing in this Act shall be construed to imply any limitation on any protections afforded by any other provision of law to employees and applicants.

And from 5 USC 1222–*Availability of other remedies*

Except as provided in section 1221(I) [referring to a direct appeal to MSPB from an adverse action under 5 USC 7513(d)], nothing in this chapter or chapter 23 shall be construed to limit any right or remedy available under a provision of statute which is outside of both this chapter and chapter 23.

The sum of it is that Congress has not specifically endorsed, or commented on, *Spruill*, but Congress has made no attempt to expand the reach of *Spruill* through a statutory election of remedies. Congress has sought to preserve remedies in addition to those found in the whistleblower statutes.

## G.    IRA AND EEO REMEDIES ARE DISTINCT

The distinction drawn in *Spruill*, between complaints, and *Smolinski*, involving disclosures, is significant. EEO and IRA routes offer different remedies, and there's nothing in statute or regulation that suggest one route or the other must be chosen when an employee makes a disclosure of abuse of authority of violation of law, rule, or regulation and then suffers reprisal. The distinctions are several; the several distinctions are material.

### 1.    Stays of Personnel Actions or Threatened Personnel Actions

Under 5 USC 1214(b)(1)(A)(I), the Office of Special Counsel may proactively request a stay through MSPB to temporarily halt (even retroactively) an action threatened or taken against an employee who complains to OSC as part of the IRA process. If the employee gets no relief at the instance of OSC, the employee can apply for a stay to an MSPB administrative judge when her case is filed with the Board's regional office. 5 USC 1221(c).

As a matter of practice, OSC infrequently requests stays from MSPB, the reason being that agencies usually agree to stay an action pending OSC's inquiry and no formal request is needed to MSPB. OSC's 2020 *Annual Report to Congress*, p. 18, shows for 2016 (when MSPB had a quorum, with at least one member to approve initial stay requests), that seven stays were obtained from MSPB; forty stays were negotiated with agencies.

Whatever the current state of the caselaw, OSC may request a stay to protect an employee from reprisal for an internal disclosure of EEO issues. An example of OSC stay authority involving internal disclosures of EEO violations is taken from a recent case involving a threatened termination. In *OSC ex rel. Spalding by Dept. of Treasury*, CB-1208-22-0016-U-1 (NP 7/28/2022), although the Board member who granted the stay did not provide detailed jurisdictional discussion, there was nothing to suggest that the relator's EEO reprisal could not have been addressed through the EEO process, a point implicitly recognized but not further addressed by the decision granting the initial stay:

> Under 5 U.S.C. § 2302(b)(1)(A), it is a prohibited personnel practice for any employee who "has authority to take, direct others to take, recommend, or approve any personnel action," to discriminate against any employee or applicant for employment on the basis of race, color, religion, sex, or national origin in violation of title VII. Illegal discrimination under title VII includes

retaliation against an employee based on her opposition to discrimination. 42 U.S.C. § 2000e-16(a); *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 36-37 (2015). OSC states that Ms. Spalding sent the anonymous email in an effort to identify and oppose discrimination and favoritism based on race that was unlawful under title VII. SRF, Tab 1 at 9-11. OSC further asserts that within 1 month of a report identifying Ms. Spalding as the author of this email, the agency proposed her removal and there is a causal link between her email opposing unlawful discrimination and her proposed removal. *Id*. at 11-12. Given the deference that should be afforded to OSC and the assertions made in its stay request, I find that there are reasonable grounds to believe that the agency's proposal to remove Ms. Spalding is the result of a prohibited personnel practice under 5 U.S.C. § 2302(b)(1)(A). [2]

> [2] OSC also contends that, even though the disclosures contained in Ms. Spalding's anonymous email alleged racial discrimination that might be protected under title VII, the email also independently alleged wrongdoing within the categories of 5 U.S.C. § 2302(b)(8), and thus the email is protected regardless of whether it also evidenced activity remediable under title VII. SRF, Tab 1 at 16. Because I am granting the stay based on an alleged prohibited personnel practice under 5 U.S.C. § 2302(b)(1)(A) in connection with Ms. Spalding's proposed removal, I need not consider whether to grant the stay based on 5 U.S.C. § 2302(b)(8). *See, e.g.*, *Special Counsel v. Department of Transportation*, 70 M.S.P.R. 520, 522 n.* (1996) (finding it unnecessary to consider an alleged prohibited personnel practice claim under 5 U.S.C. § 2302(b)(11) because there was sufficient support for granting the stay based on the 5 U.S.C. § 2302(b)(8) claim).

There is no stay available when an individual suffering reprisal starts the EEO process through contact with an EEO counselor, then files a formal complaint that is investigated, and then eventually reaches adjudication through an EEOC administrative judge—the whole process can take years (*see* Figure 1, "The EEO Administrative Complaint Process with Related Time Frames," Table 1, *Average Case Processing Times*, GAO Report GAO-09-712, "Equal Employment Opportunity

Pilot Projects Could Help Test Solutions to Long-standing Concerns with the EEO Complaint Process")—a continuing problem, recently highlighted by the congressional request to GAO for further study of the EEO complaint process, characterized as "convoluted, slow, costly, and unjust." Sept. 22, 2021, letter to Comptroller General from Congresswomen Maloney and Speier. https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-09-22. CBM%20Speier%20to%20Dodaro-GAO%20re%20EEO%20Process%20for%20F ederal%20Workers.pdf. The MSPB IRA process, though not as speedy as some might wish, is subject to a statutory requirement of expedition. 5 USC 1221(f)(1).

### 2.    OSC Corrective Action

After OSC receives a whistleblower's complaint, OSC may take up the cause and use its good offices to settle the matter with the agency or, significantly, OSC may file a corrective action complaint with MSPB, where OSC acts on behalf of the complainant—essentially, OSC becomes the complainant's attorney. 5 USC 1214(b)(2). Through the corrective action case, the same remedies are available to the complainant as would be available to the individual in his or her own IRA appeal, e.g., damages, counsel fees, job-related relief. OSC may refer its findings as to whistleblowing reprisal to the agency-employer, to OPM, and to DOJ for further corrective (or disciplinary) action. This type of advocacy by one federal agency (OSC), before another agency (MSPB), and against a third agency (the employer), is unknown in EEOC practice. In the EEO process, the employee is on her own. Availability of OSC advocacy is important for employees who otherwise have to navigate the considerable complexity of whistleblower law and who lack the resources to employ counsel—a fact of life in this work, as shown, for example, by the high percentage of *pro se* civil service cases brought to this Court.

-39-

### 3.     Disciplinary Action

When OSC determines that a prohibited personnel practice has occurred, e.g., whistleblowing reprisal, 5 USC 1215 authorizes OSC to initiate a disciplinary action complaint with MSPB directly against the errant employee, supervisor, manager or executive.  EEOC judges cannot impose discipline against those who discriminate or retaliate, although those judges (or EEOC on appeal) can recommend agencies consider initiating disciplinary actions. An EEOC finding of discrimination could be referred by the prevailing employee to OSC, but the likelihood of obtaining that finding soon after the occurrence of discrimination or reprisal is vanishingly small given the sluggish EEO process.

### 4.     Damages

As to compensatory damages for reprisal, a significant feature of IRA and EEO cases, for the EEO case, the amount varies on the size of the agency, ranging from $50,000 tp $300,000. 42 USC 1981a(b)(3). For the whistleblower IRA case, there is no limit on the amount of compensatory damages. 5 USC 1221(g).  (For EEO and IRA cases, there would be, additionally, availability of back and front pay, counsel fees, medical and other pecuniary damages, and litigation costs.)

### 5.     Burdens of Proof

The WPA offers a unique burden shifting and a high burden of proof on the employer: establishing clear and convincing evidence to rebut reprisal (5 USC 1221(e)(2)), augmented by a factor analysis for evaluation of comparators. *Carr v. SSA*, 185 F.3d 1318 (Fed. Cir. 1999).

### 6.     Subpoena Authority

Subpoenas are available in MSPB IRA litigation. 5 USC 1221(d)(1). EEOC does not issue subpoenas in federal sector employment cases.

### 7.  Bottom Line

As a matter of policy, there will be whistleblower cases that involve multiple disclosures, some relating to EEO matters, some disclosures having nothing to do with EEO. To require splitting these actions wastes resources of litigants administrative tribunals, the courts. If MSPB is to be the designated reviewer of whistleblower cases, it make sense to achieve that purpose by allowing the Board to review all claims falling within the ambit of 5 USC 2302(b)(8), allowing the Board and this and other circuit courts to continue the development of a single body of law involving whistleblowers. The limited exception of *Spruill*, requiring claims of reprisal for the filing or prosecution of a formal EEO complaint to be directed to the EEO process, is settled law, but the result need not and should not be expanded to deprive whistleblowers of a unified forum.

As a matter of practice, there is a question of what should the Board do if an individual makes internal protests of EEO matters, leading to an IRA case, and also files an EEO case.

The Board has ways and means of case management. It occasionally encounters a situation where there's an adverse action appeal and a concurrent court EEO case. *E.g.*, *Padilla v. Dept. of Air Force*, 58 MSPR 561, 567 (1993) ("…Board law…permits simultaneous adjudication of a mixed case appeal before the Board and a United States District Court."). Or the Board may decide to defer to the eventual decision from the district court. *E.g.*, *Key v. USPS*, 31 MSPR 197, 200 (1986) ("litigation of the identical issues before both the District Court and the Board would needlessly complicate and encumber the process of both bodies. We shall, therefore, abstain and defer to the District Court's ruling on the issue of the Postal Service's accommodation of appellant's handicap"). Elements of *res judicata* (or collateral

estoppel) would apply. *E.g.*, *Hooker v. VA*, 122 MSPR 551, 555–56 ¶¶ 9–12, 2015 MSPB 44 (2015). It occurs that an appellant files one appeal while an earlier, related appeal has been decided and is on petition for review with the Board. Then the Board dismisses the second appeal without prejudice, pending decision of the earlier appeal, for reasons of "adjudicatory efficiency." *E.g.*, *Holloway v. VA*, 56 MSPR 422, 425 (1993) ("The doctrine of *res judicata* cannot be applied, though, where the action is not yet final, such as where a petition for review is pending before the Board…. Rather, such appeals should be dismissed in the interest of adjudicatory efficiency where an identity of issues exists and the controlling issues in the appeal will be determined by a prior appeal. *Kinler v. GSA*, 44 MSPR 262, 263 (1990)."). MSPB also frequently uses a dismissal of an appeal without prejudice to refile (DWOP) for all sorts of reasons, and those reasons include the pendency of related litigation elsewhere). *See Reitan v. Architectural & Transp. Barriers Bd,* 18 MSPR 585, 586 (1984) (appeal put on hold until a related EEOC case was decided); *Jenkins v. EPA*, DC-0752-11-0348-B-6 (NP 1/5/2016) (DWOP entered to permit completion of litigation of related reprisal allegations in another forum, the Department of Labor). There are other approaches that could be followed to avoid possible duplication of IRA and EEO processes, but MSPB can best decide what approach is best for it and its litigants.

**H.    MSPB SHOULD NOT ESCHEW JURISDICTION VESTED IN IT BY STATUTE THROUGH DEFERRAL TO THE EEOC COMPLAINT PROCESS FOR INTERNAL DISCLOSURES OF SYSTEMIC, OR INDIVIDUAL, ABUSES OF AUTHORITY EVIDENCED BY DISREGARD FOR THE FEDERAL EEO LAWS.**

*Spruill* is settled law, and that analysis has not been specifically overcome by statute. MSPB's extension of *Spruill*—overturning Board precedent and expanding the WPA exclusion for reprisals involving the filing of EEO complaints to any disclosures in any form involving matters pertaining to equal employment laws embodied in Title VII of the 1964 Civil Rights Act, as amended, and by the 1978 Civil Service Reform Act, as amended, and by 5 USC 7201(b) (Pub. L. 89-554 (1966) ("Antidiscrimination policy; Minority Recruitment Program), is not warranted by precedent of this Court, by consistent decisional authority by MSPB, or by statute.

The expansive remedial scope of the whistleblowing laws reflects the desire of Congress to keep open channels of communication concerning governmental error and misconduct, including avenues of communication to Congress, *e.g.*, 5 USC 7211, MSPB has procedures, developed over time, to avoid undue duplication of effort in related appeals, administrative petitions for review, and cases in district courts. MSPB should exercise, not deny, the jurisdiction that Congress vested in the Board.

## VII.  CONCLUSION AND RELIEF SOUGHT

This Court should remand the appeal to the Board with directions to process it as an IRA appeal.

Respectfully submitted,

/s/ Peter Broida

_____

Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201

703-841-1112
peterbroida@gmail.com

Attorney for John Edwards

CERTIFICATE OF COMPLIANCE

I certify that through use of the WordPerfect word-counting feature, that there are 13,624 words in this brief. This complies with the word limits of this Court's rules.

/s/ Peter Broida
Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201
703-841-1112
peterbroida@gmail.com

Attorney for John Edwards

September 8, 2022

# APPENDIX

# TABLE OF CONTENTS

MSPB Final Decision (May 5, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MSPB Initial Decision of Administrative Judge (April 20, 2017) . . . . . . . . . . . 19

Certified Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Informal Labor Department EEO Complaint (Oct. 15, 2015) . . . . . . . . . . . . . . 34

Complaint to Office of Special Counsel (Nov. 1, 2015) . . . . . . . . . . . . . . . . . . . 38

Rejection of Harassment Policy complaint of Edwards (Nov. 17, 2015) . . . . . . . 60

Correspondence to Office of Special Counsel (Nov. 12, 2015) . . . . . . . . . . . . . . 63

OSC Closeout Letter (Nov. 13, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

OSC Notice of Right to File IRA Appeal (Nov. 20, 2015) . . . . . . . . . . . . . . . . . 69

MSPB Individual Right of Action Appeal (Dec. 17, 2015) . . . . . . . . . . . . . . . . 71

IRA Narrative Sworn Statement of Edwards to MSPB  (Jan. 3, 2016) . . . . . . . . 81

Jurisdictional Discussion Submitted to MSPB (Jan. 4, 2016) . . . . . . . . . . . . . . 87

Labor Department Harassment Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

**2022 MSPB 9**

Docket No. DC-1221-16-0227-W-1

**John S. Edwards,**

**Appellant,**

**v.**

**Department of Labor,**

**Agency.**

May 5, 2022

Peter Broida, Esquire, Arlington, Virginia, for the appellant.

Elizabeth L. Beason, Esquire and Rolando Valdez, Esquire, Washington, D.C., for the agency.

**BEFORE**

Raymond A. Limon, Vice Chair
Tristan L. Leavitt, Member

**OPINION AND ORDER**

¶1        The appellant has filed a petition for review of an initial decision that dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons set forth below, we DENY the petition for review and DISMISS the appeal for lack of jurisdiction, finding that the appellant did not make a protected disclosure under 5 U.S.C. § 2302(b)(8), or engage in protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) or 5 U.S.C. § 2302(b)(9)(B).

## BACKGROUND

¶2      The essential facts, as set forth in the initial decision and not contested on review, are that the appellant was a GS-15 Deputy Director of the agency's Employment and Training Administration, Office of Information Systems and Technology, when he verbally "disclosed and protested" to his supervisors their alleged failure to provide opportunities and assignments to African American employees because of their race.    Initial Appeal File (IAF), Tab 14, Initial Decision (ID) at 1-2; IAF, Tab 5 at 5.   He also disclosed to his supervisors their alleged discrimination when they refused to promote one of the appellant's subordinates to a vacant supervisory position for which he had competed, allegedly because of the subordinate's race (African American).   ID at 2; IAF, Tab 5 at 6.   At about the same time, the appellant filed complaints of systemic race discrimination against African American employees under the agency's Harassing Conduct Policy and with the agency's Equal Employment Opportunity (EEO) Office.   ID at 2; IAF, Tab 5 at 5-6.   Within a few months after these actions, the agency reassigned the appellant to a nonsupervisory GS-15 position and posted his former position for recruitment.   ID at 2; IAF, Tab 5 at 6, Tab 11 at 5.

¶3      The appellant filed a complaint with the Office of Special Counsel (OSC) alleging that his reassignment was in reprisal for his disclosures.   IAF, Tab 1 at 20-49.   After OSC closed its investigation, the appellant filed a timely IRA appeal alleging, among other things, that the Board had jurisdiction over his appeal pursuant to 5 U.S.C. §§ 2302(b)(8) and 2302(b)(9).   IAF, Tab 1 at 8-12, 16-17.

¶4      After acknowledging receipt of the appeal, IAF, Tab 2, the administrative judge issued an order noting that there was a question regarding whether the Board had jurisdiction over the appeal, setting forth the jurisdictional burdens of proof, and ordering the appellant to respond.   IAF, Tab 3.   In response, the appellant argued that his statements and complaints regarding race discrimination

constituted disclosures of an abuse of authority protected under 5 U.S.C. § 2302(b)(8) and lawful assistance to African American employees protected under 5 U.S.C. § 2302(b)(9)(B). IAF, Tab 5 at 25-26.

¶5    In her initial decision, the administrative judge found that the appellant exhausted his remedies before OSC. ID at 6. She then found that the appellant failed to make a nonfrivolous allegation that his statements or complaints were protected under either 5 U.S.C. § 2302(b)(8) or § 2302(b)(9)(B). ID at 7-11. Specifically, the administrative judge found that the appellant's allegations of discrimination did not constitute disclosures of an abuse of authority protected under 5 U.S.C. § 2302(b)(8) because the allegations related solely to discrimination matters covered by 5 U.S.C. § 2302(b)(1),[1] and such matters are not covered by section 2302(b)(8). ID at 8-9. The administrative judge noted that one Board decision, *Armstrong v. Department of Justice*, 107 M.S.P.R. 375, ¶ 17 (2007), held that the Board has IRA jurisdiction under section 2308(b)(8) over a disclosure regarding an EEO violation, but she found that it was inconsistent with the weight of Board authority, and she did not follow it. ID at 10 n.2. She found further that the appellant's EEO complaint regarding discrimination against other agency employees was covered by 5 U.S.C. § 2302(b)(9)(A)(ii) and did not fall within the Board's jurisdiction. ID at 9-10.

¶6    The administrative judge also found that the appellant's support for African American employees did not constitute the giving of lawful assistance in their exercising any right regarding any appeal, complaint, or grievance and, therefore, the appellant failed to make a nonfrivolous allegation that his actions were protected under 5 U.S.C. § 2302(b)(9)(B). ID at 10-11. The administrative judge

---

[1] Section 2302(b)(1) provides, in relevant part, that "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority . . . discriminate for or against any employee or applicant for employment" on the basis of race, as prohibited under section 717 of the Civil Rights Act of 1964.

observed that the appellant did not allege that his coworkers engaged in protected activity. ID at 11.

¶7          In his petition for review, the appellant argues that the administrative judge erred in failing to follow the precedent set forth in *Armstrong*, 107 M.S.P.R. 375, and *Kinan v. Department of Defense*, 87 M.S.P.R. 561 (2001). Petition for Review (PFR) File, Tab 1 at 12-13. The appellant also argues that under the Whistleblower Protection Enhancement Act (WPEA), Pub. L. No. 112-199, 126 Stat. 1465 (2012), his disclosures of violations of title VII of the Civil Rights Act of 1964 and his support for his colleagues are protected. PFR File, Tab 1 at 15-20. The agency has responded in opposition to the petition for review. PFR File, Tab 5.

## ANALYSIS

¶8          The Board has jurisdiction over an IRA appeal if the appellant exhausts his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).[2] *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014); *see*

---

[2] As argued by the appellant on review, the administrative judge stated in her initial decision that the appellant bears the burden of establishing by preponderant evidence that the Board has jurisdiction over his appeal. PFR File, Tab 1 at 14; ID at 4. However, in the next paragraph of the decision, the administrative judge set forth the correct jurisdictional standard for an IRA appeal in which an appellant alleges a violation of 5 U.S.C. § 2302(b)(8). ID at 4. Moreover, the administrative judge applied the correct jurisdictional standard in her analysis of the evidence. To the extent that the administrative judge erred in misstating at one point in the initial decision that the appellant must establish jurisdiction by preponderant evidence, her error did not prejudice the appellant's substantive rights and provides no basis to reverse the initial decision. *Doe v. Department of Justice*, 118 M.S.P.R. 434, ¶ 41 (2012) (stating that an error that did not prejudice the appellant's substantive rights provides no basis to

5 U.S.C. §§ 1214(a)(3), 1221(e)(1).    Here, the appellant exhausted his administrative remedies before OSC regarding his allegations that:    (1) in violation of section 2302(b)(8), the agency retaliated against him for his alleged protected disclosures regarding his supervisors' purported failure to provide opportunities and assignments to African American employees, and the alleged refusal to promote his subordinate to a vacant supervisory position because of the subordinate's race;    (2) in violation of section 2302(b)(9)(A)(i), the agency retaliated against him for his protected activity of filing a complaint of the agency's systemic race discrimination against African American employees under the agency's Harassing Conduct Policy and with the agency's EEO Office; and (3) in violation of section 2302(b)(9)(B), the agency retaliated against him for the protected activity of assisting another employee to exercise a right protected by section 2302(b)(9)(A).  IAF, Tab 1 at 10-12, 24-49, Tab 5 at 29.

¶9        Thus, at issue in this appeal is whether the appellant made a nonfrivolous allegation    that    his    disclosures    and    activity    were    protected    under sections 2302(b)(8), 2302(b)(9)(A), and/or 2302(b)(9)(B).    As explained below, while the appellant appears to have been admirably motivated in seeking to remedy perceived discrimination in his agency, we find that he failed to meet his jurisdictional burden, and that the proper forum for his allegation of retaliation for filing an EEO complaint is with the Equal Employment Opportunity Commission (EEOC).

---

reverse the initial decision); *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (same).

<u>The appellant's disclosures are not within the Board's jurisdiction under 5 U.S.C. § 2302(b)(8).</u>

> *(1) Board and circuit courts' precedent have generally excluded EEO reprisal from consideration under <u>5 U.S.C. § 2302(b)(8)</u>.*

¶10    Board precedent has long held that reprisal for filing an EEO complaint is a matter relating solely to discrimination and is not protected by <u>5 U.S.C. § 2302</u>(b)(8). *See Williams v. Department of Defense*, <u>46 M.S.P.R. 549</u>, 554 (1991). A rationale for the finding in *Williams* was the 1987 Congressional testimony of the Special Counsel regarding a previous, unenacted version of the Whistleblower Protection Act[3] (WPA) expressing concern about granting IRA appeal rights to employees who also had the EEOC as an avenue to seek redress. *Williams*, 46 M.S.P.R. at 553-54; *Whistleblower Protection Act of 1987: Hearings Before the Subcomm. on Fed. Services, Post Off., & Civ. Serv. of the Comm. on Governmental Affairs, U.S. Senate*, 100th Cong. 138-39, 379-80 (1987).[4]

¶11    In *Von Kelsch v. Department of Labor*, <u>59 M.S.P.R. 503</u>, 505-06 (1993), *overruled on other grounds by Thomas v. Department of the Treasury*, <u>77 M.S.P.R. 224</u>, 236 n.9 (1998), *overruled by Ganski v. Department of the Interior*, <u>86 M.S.P.R. 32</u> (2000), the employee filed a claim for Federal Employees Compensation Act (FECA) benefits in which she alleged the purported use of sexually offensive language directed at her as the cause of her injury and then filed an IRA appeal asserting reprisal for whistleblowing and

---

[3] The Whistleblower Protection Act was enacted into law in 1989. Pub. L. No. 101-12, 103 Stat 16 (1989).

[4] In *Ganski v. Department of the Interior*, <u>86 M.S.P.R. 32</u>, ¶ 12 n.2 (2000), the Board held that it may rely on legislative history from the 100th Congress as an aid in interpreting the WPA, when the materials relate to language of bills that did not change before passage in the 101st Congress. In the instant matter, the materials relate to a principle—excluding title VII-related matters from the whistleblower protection statute—that did not change in the ultimately enacted law.

exercising an appeal right. She also filed an EEO complaint regarding the same incident. *Von Kelsch*, 59 M.S.P.R. at 506.

¶12      While the Board found that it did not lack jurisdiction to hear and decide an IRA appeal simply because the disclosure was made in a FECA claim, the nature of Ms. Von Kelsch's disclosure of a purported title VII violation divested the Board of jurisdiction. *Id.* at 508-09. The Board held that the WPA's legislative history and structure indicate Congress' intent not to extend IRA appeal protection under section 2302(b)(8) for employees who allege that their agencies retaliated against them after they challenged practices made unlawful by title VII. *Von Kelsch*, 59 M.S.P.R. at 509. The Board further stated that, in creating an IRA appeal right under section 2302(b)(8), Congress expressed its intent to benefit those employees whose "only route of appeal [under the then-existing statute] is the OSC." *Von Kelsch*, 59 M.S.P.R. at 509 (citing S. Rep. No. 100-413 at 32 (1988)) (brackets in original).

¶13      Further, in *Redschlag v. Department of the Army*, <u>89 M.S.P.R. 589</u>, ¶ 84 (2001), the Board held that it would not consider the appellant's purported disclosures that involved alleged discrimination or reprisal for engaging in activities protected by title VII. The Board found that, even if the disclosures were made outside of the grievance or EEO processes, such disclosures did not constitute protected whistleblower activity under <u>5 U.S.C. § 2302</u>(b)(8) because they pertain to matters of discrimination covered by <u>5 U.S.C. § 2302</u>(b)(1)(A). *Id.* Thus, Ms. Redschlag's disclosures of title VII-related matters—that she purportedly made to her Congressman, the agency's Criminal Investigation Division, and while participating in the Secretary of the Army's Focus Panel on Sexual Harassment—were not protected under section 2302(b)(8). *Id.* The decision in *Redschlag* cited the Board's previous decision in *Nogales v. Department of the Treasury*, <u>63 M.S.P.R. 460</u>, 464 (1994), in which the Board stated that disclosures about discrimination based on sex, race, color, religion, or national origin are excluded from the coverage of section 2302(b)(8) because they

are covered by 5 U.S.C. § 2302(b)(1)(A) and that such disclosures are not within the purview of the Board's IRA jurisdiction regardless of the channels through which the employee makes the disclosure.

¶14        The Board's decisions are consistent with the decisions of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). In *Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 680-81 (Fed. Cir. 1992), the employee filed an IRA appeal asserting that a 3-day suspension was taken in reprisal for his having filed a discrimination complaint with the EEOC. Like the Board, the court looked to the WPA's legislative history to support its finding that the EEO process was the appropriate forum for an employee alleging reprisal for filing a discrimination complaint. *Id.* at 690-92. The court observed that the division adopted by Congress, among other things, "avoids potentially conflicting procedures or outcomes," and "acknowledges the EEOC role as an expert agency in discrimination matters." *Id.* at 692. In *Serrao v. Merit Systems Protection Board*, 95 F.3d 1569, 1575 (Fed. Cir. 1996), the court restated the holding of its previous decision in *Spruill* that "the filing of a complaint with the [EEOC], in which an employee alleged discriminatory treatment by an agency in violation of title VII of the Civil Rights of 1964, did not constitute a whistleblowing disclosure within the meaning of section 2302(b)(8), but instead, was a nonwhistleblowing disclosure under section 2302(b)(9)(A)" (citing *Spruill*, 978 F.2d at 692). Most recently, in *Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1327-28 (Fed. Cir. 2020), the court reiterated that discrimination claims may not be raised in an IRA appeal, because IRA appeals are limited to alleged violations of whistleblower protection statutes.

¶15    When confronted with the issue of whether a title VII matter is within the scope of the whistleblower protection statutes, the regional circuits that have addressed the issue have agreed with the Federal Circuit.[5]

¶16    The U.S. Court of Appeals for the Sixth Circuit affirmed a decision by the U.S. District Court for the Western District of Kentucky which determined that an employee's claims of sexual harassment, race discrimination, and associated retaliation were not appropriately categorized as whistleblower claims, holding that "when dealing with issues of employment discrimination, the WPA/WPEA is displaced and preempted by [t]itle VII." *Carrethers v. Esper*, No. 3:16-CV-62-CRS, 2019 WL 2330894, *1, 5 (W.D. Ky. May 31, 2019), *aff'd sub nom. Carrethers v. McCarthy*, 817 F. App'x 88 (6th Cir. 2020).[6] Similarly, in a case before the U.S. Court of Appeals for the Seventh Circuit, an employee attempted to contest adverse actions based on his religion and national origin within the context of a WPA claim. The court held that "for [F]ederal employees claiming discrimination on the basis of religion and national origin (as well as reprisal for complaining about discrimination), [t]itle VII is the exclusive judicial remedy." *Malekpour v. Chao*, 682 F. App'x 471, 475-76 (7th Cir. 2017). The U.S. Court of Appeals for the District of Columbia Circuit also has agreed with the "Federal Circuit's longstanding precedent, which Congress has been aware of but has never overturned," that "employees who specifically complain about

---

[5] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on this issue. However, as a result of changes initiated by the Whistleblower Protection Enhancement Act of 2012 (Pub. L. No. 112-199, § 108, 126 Stat. 1465, 1469 (2012)), extended for 3 years (All Circuit Review Extension Act, Pub. L. No. 113-170, § 2, 128 Stat. 1894 (2014)), and eventually made permanent (All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510 (2018)), we must consider this issue with the view that the appellant may seek review of this decision before any appropriate court of appeal. *See* 5 U.S.C. § 7703(b)(1)(B).

[6] The Board may follow a nonprecedential decision of a court when it finds its reasoning persuasive, as we do here. *Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016).

discrimination against them (or retaliation against them for having filed a discrimination claim) are not covered by the general whistleblower provisions and thus fall outside the Board's whistleblower jurisdiction." *Coulibaly v. Merit Systems Protection Board*, 709 F. App'x 9, 10 (D.C. Cir. 2017). Further, prior to the passage of all circuit review, the U.S. Court of Appeals for the Third Circuit concluded that, while reprisal for EEO activity can form the basis of a title VII claim, it "generally does not encompass whistleblowing activity, which usually involves disclosures *outside* established procedures." *Fleeger v. Principi*, 221 F. App'x 111, 117 (3d Cir. 2007) (citing *Spruill v. Merit Systems Protection Board*, 978 F.2d 679 (Fed. Cir. 1992)).

¶17     In addition to finding that allegations of discrimination in violation of title VII cannot be brought under the whistleblower protection statutes, courts have also found that the reverse is true; allegations of reprisal for whistleblowing cannot be brought under title VII. *See Davis v. James*, 597 F. App'x 983, 987 (10th Cir. 2015) (finding that the plaintiff failed to establish that she opposed conduct prohibited by title VII because she alleged in her EEO complaint that she was actually retaliated against for whistleblowing about timecard fraud); *see also Jamil v. Department of Defense*, 910 F.2d 1203, 1207 (4th Cir. 1990) (explaining that title VII is not a general "bad acts" statute, and "only addresses discrimination on the basis of race, sex, religion, and national origin, not discrimination for whistleblowing"). Indeed, courts have long adopted the proposition that claims of discrimination in Federal employment are to be addressed solely through title VII. *See Brown v. General Services Administration*, 425 U.S. 820, 835 (1976) (stating that title VII "provides the exclusive judicial remedy for claims of discrimination in [F]ederal employment"); *see also Pretlow v. Garrison*, 420 F. App'x 798, 801 (10th Cir. 2011) (explaining that "[i]nsofar as [a Federal employee] complains of discrimination and associated retaliatory conduct, his exclusive remedy is provided by [t]itle VII"); *Mlynczak v. Bodman*, 442 F.3d 1050, 1057 (7th Cir. 2006) (referring to title VII

as the "exclusive judicial remedy for claims of discrimination in [F]ederal employment"). Thus, it is clear that separate remedies exist for redress of claims of discrimination and claims of reprisal for whistleblowing, and that claims must be brought under the appropriate statutory scheme. This further supports the conclusion that allegations of discrimination may not be brought under the whistleblower protection statutes.

*(2) The Board's decisions in Armstrong and Kinan are overruled.*

¶18    In *Armstrong*, 107 M.S.P.R. 375, ¶ 17, the case referenced by the appellant in his petition for review, the employee, among other things, disclosed to an Office of Inspector General investigator that none of the African American employees in the office had been afforded the opportunity to work on an assignment that was often an avenue to promotion. Thus, his disclosure related to purported violations of title VII. The Board agreed with the administrative judge that Mr. Armstrong's disclosure evidenced a violation of law, rule, or regulation or an abuse of authority. *Id.* The decision failed to discuss or even acknowledge the Board and court precedent set forth above regarding the scope of the coverage of 5 U.S.C. § 2302(b)(8), and provided no rationale for its departure from established precedent. *Armstrong*, 107 M.S.P.R. 375, ¶ 17.

¶19    In *Kinan*, 87 M.S.P.R. 561, ¶¶ 3-7, which the appellant also cited in his petition for review, the employee alleged that his employing agency first detailed and then reassigned him in reprisal for his disclosures that agency officials refused to hire African Americans, failed to take corrective action in a sexual harassment case, and retaliated against him for opposing his supervisor's discriminatory practices. The Board agreed with the administrative judge that corrective action was not warranted in the Board appeal because the agency established by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosures, but the Board specifically addressed whether Mr. Kinan's disclosures were protected and whether he established that one or more of the disclosures was a contributing factor to the

personnel action. *Id.*, ¶¶ 9-10. In addressing whether the disclosures were protected, the Board explained that it found without merit the agency's argument that the disclosures were not protected under 5 U.S.C. § 2302(b)(8) because they related to EEO and grievance matters under 5 U.S.C. § 2302(b)(9). *Id.*, ¶ 13 n.2. The Board reasoned that Mr. Kinan did not file an EEO complaint on his own behalf, but complained to agency management about broader concerns, and thus, his disclosures fell under 5 U.S.C. § 2302(b)(8). *Id.* As in *Armstrong*, however, the *Kinan* decision failed to discuss or even acknowledge the Board and court precedent set forth above regarding the scope of the coverage of 5 U.S.C. § 2302(b)(8), and the reasoning the Board offered was inconsistent with established precedent.[7]

¶20        We cannot reconcile the decisions in *Armstrong* and *Kinan* with the weight and reasoning of the Board and court precedent discussed above. Accordingly, we overrule *Armstrong* and *Kinan* to the extent that they found that alleged reprisal for opposition to practices made unlawful by title VII constitutes a protected disclosure under section 2302(b)(8).

> *(3) The WPEA does not extend the coverage of the whistleblower protection statutes to title VII-related matters.*

¶21        The appellant argues on review that, under the WPEA, the scope of the whistleblower protection statutes was expanded to include allegations of wrongdoing that fall within the purview of title VII. PFR File, Tab 1 at 15-20. To bolster this argument, the appellant cites the WPEA's legislative history,

---

[7] In support of the holding, the Board in *Kinan* cited the Federal Circuit's decision in *Ellison v. Merit Systems Protection Board*, 7 F.3d 1031, 1035 (Fed. Cir. 1993), for the proposition that matters that could have been asserted in a 5 U.S.C. § 2302(b)(9) proceeding do not lose 5 U.S.C. § 2302(b)(8) protection as long as they are raised outside of it as well. *Kinan*, 87 M.S.P.R. 561, ¶ 13 n.2. The decision in *Ellison* is inapposite to the issue at hand as the appellant in that case did not file an EEO complaint or engage in activity that could fall within the purview of title VII. *Ellison*, 7 F.3d at 1033-36.

which generally supports broadly interpreting the statutory scheme's protections. *Id.*

¶22    We agree that Congress intended the coverage of the whistleblower protection statutes to be broad. Nevertheless, the coverage is not boundless. Nothing in the statute or legislative history of the WPEA addresses *Williams*, *Spruill*, or their progeny. Thus, despite expanding the scope of whistleblower protection in other ways, nothing suggests that the WPEA altered the long-standing administrative and judicial interpretation that title VII-related claims are excluded from protection under the whistleblower protection statutes. Moreover, following the enactment of the WPEA, the circuit courts have reaffirmed that this interpretation is still controlling.[8] *See Young,* 961 F.3d at 1327-28; *Coulibaly*, 709 F. App'x at 10; *Malekpour*, 682 F. App'x at 475-75.

¶23    To be clear, we strongly condemn managers taking personnel actions in reprisal for engaging in any protected activity, including alleging violations of title VII. Congress has not left such employees without recourse. Rather, they may seek redress under title VII, which is enforced by the EEOC. Courts have interpreted the anti-retaliation provision of title VII as providing broad protection to those who raise title VII violations. *See, e.g., Ray v. Ropes & Gray, LLP*, 799 F.3d 99, 107-08 (1st Cir. 2015); *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997); *see also Crawford v. Metropolitan Government of Nashville & Davidson County, Tennessee*, 555 U.S. 271, 276 (2009).

---

[8] We have considered whether other statutes enacted since the WPEA became law cast doubt on the interpretation and find that none do. *See, e.g.,* National Defense Authorization Act of 2018, Pub. L. No. 115-91, 131 Stat. 1283 (2017); Dr. Chris Kirkpatrick Whistleblower Protection Act of 2017, Pub. L. No. 115-73, 131 Stat. 1235 (2017).

The appellant failed to show that his complaints to the EEO Office or under the agency's Harassing Conduct Policy of systemic race discrimination against African American employees is protected activity under 5 U.S.C. § 2302(b)(9)(A)(i).

¶24    Under 5 U.S.C. § 2302(b)(9)(A), it is a protected activity to exercise "any appeal, complaint, or grievance right granted by any law, rule, or regulation— (i) with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]; or (ii) other than with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)]." However, of the two provisions, an employee or applicant for employment may seek corrective action from the Board only for protected activity under 5 U.S.C. § 2302(b)(9)(A)(i). 5 U.S.C. § 1221(a); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013).

¶25    As explained above, the substance of the appellant's complaints to the agency's EEO Office and under its Harassing Conduct Policy did not concern remedying an alleged violation of section 2302(b)(8). Rather, he was seeking to remedy purported reprisal for matters covered by title VII. Therefore, his complaints to the EEO Office and under the agency's Harassing Conduct Policy regarding race discrimination are not within the purview of section 2302(b)(9)(A)(i), and the Board lacks jurisdiction to consider such allegations in the context of this IRA appeal. *Mudd*, 120 M.S.P.R. 365, ¶ 7; *see* 5 U.S.C. § 1221(a).

The appellant failed to show that the Board has jurisdiction over his IRA appeal under 5 U.S.C. § 2302(b)(9)(B).

¶26    The WPEA expanded the scope of 5 U.S.C. § 2302(b)(9)(B) to afford the Board jurisdiction in IRA appeals over allegations of reprisal for "testifying for or otherwise lawfully assisting any individual in the exercise of any" "appeal, complaint, or grievance right granted by any law, rule, or regulation." WPEA § 101(b)(1)(A); 5 U.S.C. § 2302(b)(9)(A)-(B). On review, the appellant argues that his disclosures and protests about racial discrimination constituted "lawful assistance" because "it is a regulatory requirement that employees

disclose abuse to appropriate authorities," and "discrimination, whether against oneself or others in the workplace, is a form of abuse which, when reported, deserves all available protection against reprisal." PFR File, Tab 1 at 11; *see* 5 C.F.R. § 2635.101(b)(11) (stating that Federal employees "shall disclose waste, fraud, abuse, and corruption to appropriate authorities"). The appellant also argues that the right to oppose discriminatory practices "is a fundamental component of the civil rights laws, and lawful assistance is embodied in the opposition clause" of the civil rights statutes. PFR File, Tab 1 at 11; *see* 42 U.S.C. § 2000e-3(a). Finally, he argues that the First Amendment to the Constitution guarantees the right to petition the Government for redress of grievances. PFR File, Tab 1 at 12.

¶27      We are not persuaded by these arguments. The statute provides that the Board has jurisdiction under section 2302(b)(9)(B) only when the individual for whom the appellant is testifying or is otherwise lawfully assisting in exercising "any appeal, complaint, or grievance right granted by any law, rule, or regulation." Accordingly, the Board has held that neither testifying on behalf of a coworker as part of an administrative investigation, nor filing a motion to dismiss a criminal indictment, were protected under section 2302(b)(9)(B) because these activities were not the exercise of an appeal, complaint, or grievance right by another employee, as they did not constitute initial steps toward taking legal action against the agency for perceived violations of employment rights.[9] *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 18 (2016); *Linder*, 122 M.S.P.R. 14, ¶¶ 7-11.

---

[9] As discussed below, Congress has since explicitly protected under 5 U.S.C. § 2302(b)(9)(C) cooperating with or disclosing information to "any . . . component responsible for internal investigation or review." National Defense Authorization Act of 2018 § 1097(c)(1)(A).

¶28     Here, there is no indication in the record that the appellant's subordinate, who purportedly was denied a promotion based on his race, or any of the employees who allegedly were not afforded opportunities and assignments based on race, filed any appeal, complaint, or grievance. Accordingly, we find that, given the scope of the statutory language, there is no basis to conclude that the appellant's activities were protected by 5 U.S.C. § 2302(b)(9)(B), and we agree with the administrative judge that the appellant failed to make a nonfrivolous allegation regarding this statutory provision.

**The amendment to 5 U.S.C. § 2302(b)(9)(C) contained in the National Defense Authorization Act of 2018 (2018 NDAA) is not retroactive and does not apply to this appeal.**

¶29     Prior to December 12, 2017, the whistleblower protection statutory scheme provided that "cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law," is protected. 5 U.S.C. § 2302(b)(9)(C). Section 1097(c)(1) of the 2018 NDAA, Pub. L. No. 115-91, 131 Stat. 1283 (2017), amended section 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" is also protected.

¶30     Here, as noted above, the appellant made purported disclosures to his supervisors, the EEO Office, and under the agency's Harassing Conduct Policy. ID at 1-2; IAF, Tab 5 at 5-6. All of the events relevant to this appeal occurred prior to the 2018 NDAA's enactment. Accordingly, we need not decide whether the appellant's disclosures fall within the coverage of the amended section 2302(b)(9)(C) because, as discussed below, the statutory provision is not retroactive and thus does not apply to this appeal.

¶31     The proper analytical framework for determining whether a new statute should be given retroactive effect was set forth by the Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994):

When a case implicates a [F]ederal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it· does not govern absent clear congressional intent favoring such a result.

¶32    When Congress intends for statutory language to apply retroactively, it is capable of doing so very clearly. *King v. Department of the Air Force*, 119 M.S.P.R. 663, ¶ 9 (2013) (citing *Presidio Components, Inc. v. American Technical Ceramics Corporation*, 702 F.3d 1351, 1364-65 (Fed. Cir. 2012) (giving retroactive effect to amendments enacted in 2011 in light of express statutory language applying the amendments to "all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act")). Here, the 2018 NDAA as enacted is silent regarding the retroactivity of this amendment to the whistleblower protection statute. Thus, applying the first part of the *Landgraf* test, we find that Congress has not expressly prescribed the statute's proper reach.

¶33    Turning to the second part of the *Landgraf* test, we find that the 2018 NDAA would increase the agency's liability for past conduct. As noted above, when this appeal was filed, it was not a prohibited personnel practice under 5 U.S.C. § 2302(b)(9)(C) to take a personnel action against an employee for making a disclosure to "any other component responsible for internal investigation or review."[10] Thus, to now hold that such conduct, if it occurred

---

[10] Such a disclosure could have been protected if it fell within the coverage of 5 U.S.C. § 2302(b)(8).

under the facts of this appeal, constituted a prohibited personnel practice, would increase the agency's liability.[11]    Accordingly, considering the test set forth in *Landgraf*, we find no basis for finding that the 2018 NDAA amendment to 5 U.S.C. § 2302(b)(9)(C) is retroactive.

¶34        In sum, while we reiterate that the appellant appears to have been admirably motivated in seeking to remedy perceived discrimination in his agency, in this appeal he has failed to meet his burden to make a nonfrivolous allegation that he engaged in activity protected by sections 2302(b)(8), 2302(b)(9)(A), or 2302(b)(9)(B).    Therefore, we conclude that the administrative judge properly dismissed this IRA appeal for lack of jurisdiction, and that this complaint more properly belongs before the EEOC under title VII itself.

## ORDER

¶35        This is the final decision of the Merit Systems Protection Board in this appeal.    Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

## NOTICE OF APPEAL RIGHTS[12]

You may obtain review of this final decision.    5 U.S.C. § 7703(a)(1).    By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.    5 U.S.C. § 7703(b).    Although we offer the following summary of available appeal rights, the Merit

---

[11] Although this provision was requested by OSC following the Board's decision in *Graves*, 123 M.S.P.R. 434, nothing in the 2018 NDAA, the standalone Office of Special Counsel Reauthorization Act of 2017 in which the provision first appeared, S. 582, 115th Cong. (2017), or the latter's bill report indicated that it was intended to clarify an existing law. *Cf. Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶¶ 10-26 (2013).

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.    As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

JOHN S. EDWARDS,                           DOCKET NUMBER
              Appellant,            DC-1221-16-0227-W-1

    v.

DEPARTMENT OF LABOR,                        DATE: April 20, 2017
              Agency.

Peter Broida, Esquire, Arlington, Virginia, for the appellant.

Elizabeth L. Beason, Esquire, and Rolando Valdez, Esquire, Washington,
    D.C., for the agency.

**BEFORE**
Sherry A. Zamora
Administrative Judge

### INITIAL DECISION

    The appellant timely filed an Individual Right of Action (IRA) appeal with
the Merit Systems Protection Board (Board) alleging that agency reassigned him
in retaliation for protected whistleblower activity. Appeal File (AF), Tab 1. For
the following reasons, the appeal is DISMISSED for lack of Board jurisdiction.

### BACKGROUND

    The appellant served as the Deputy Director, GS-15, of the agency's
Employment and Training Administration (ETA), Office of Information Systems
and Technology (OIST), at the U.S. Department of Labor (agency). *Id.* In or
around September and October 2015, the appellant verbally "disclosed and
protested" to his supervisors, Lisa Lahrman (OIST Acting Administrator and

Administrative Officer) and Aung Htein (OIST Director), regarding their alleged failure to provide opportunities and assignments to African-American employees in OIST because of their race. AF, Tab 5 at 5. He further accused Larhman and Htein of discriminating against his subordinate, Darryl McDaniel, because of his race (African-American) when they refused to promote McDaniel to a vacant Supervisory Information Technology Specialist position for which McDaniel competed. *Id.* at 6. In October 2015, the appellant also filed "parallel" complaints of systemic race discrimination against African-American employees under the agency's Harassing Conduct Policy and also with the Agency's EEO office. *Id.* at 5-6.

On November 1, 2015, Lahrman reassigned the appellant from his supervisory position as Deputy Director to that of Special Assistant, GS-15, within OIST, a non-supervisory position. *Id.* at 9. On November 5, 2015, the agency posted the appellant's former Deputy Director position on USAJobs for recruitment. *Id.*

The appellant timely filed the instant IRA appeal alleging that the agency retaliated against him for whistleblowing activity when it reassigned him and posted his prior position on USAJobs. AF, Tab 1. The appellant asserts that his statements regarding race discrimination in OIST constitute protected disclosures of abuse of authority under 5 U.S.C. § 2302(b)(8), and protected lawful assistance under 5 U.S.C. § 2302(b)(9)(B). AF, Tab 1, Pages 4-5. Because it appeared that the Board may lack jurisdiction over this appeal, I issued an On December 21, 2015, after reviewing the appellant's allegations, I issued an Order to Show Cause setting forth the applicable law and affording the appellant an opportunity to submit evidence and argument to show cause why the appeal should not be dismissed. AF, Tab 3.

In his response to my jurisdictional order, the appellant provided details regarding his statements and complaints regarding race discrimination and his complaint of retaliation to the Office of Special Counsel (OSC). *See* AF, Tab 5.

The appellant argued that these activities constitute both protected disclosures of abuse of authority under § 2302(b)(8) and also protected activity under § 2302(b)(9)(B) as "lawful assistance" to the African-American coworkers he believed were discriminated against.[1]  *Id.*  In the agency's response to my jurisdictional order, it argued that the appellant did not have a reasonable belief that his allegations constituted disclosures of abuse of authority under §2302(b)(8) because the complainant was aware of the agency's legitimate reason for not promoting McDaniel.  AF, Tab 11, Pages 8-10.  The agency further asserted that the appellant's activities could not be considered protected "lawful assistance" under § 2302(b)(9)(B) because the affected employees had not exercised any right to file a complaint and had not requested the appellant's assistance in exercising that right.  *Id.* at 11-12.  Finally, the agency argued that the appellant failed to make a nonfrivolous showing that his disclosures contributed to the personnel actions at issue.  *Id.* at 12-14.  All submissions from both parties have been fully considered herein.

## JURISDICTION

Burden of Proof

The Board does not have jurisdiction to address all matters that are alleged to be incorrect or unfair.  *Miller v. Department of Homeland Security*, 111 M.S.P.R. 325, 332-33 (2009), *aff'd*, 361 F. App'x 134 (Fed. Cir. 2010). Rather, the Board adjudicates only those actions for which a right of appeal is granted by law, rule, or regulation.  *See* 5 U.S.C.A. § 7701(a); 5 C.F.R. § 1201.3(a); *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir.

---

[1] The appellant states that his complaints of discrimination are protected by the lawful assistance "and other" provisions of § 2302(b)(9).  AF, Tab 5 at 25-26.  However, the appellant discusses only the lawful assistance clause set forth in § 2302(b)(9)(B).  The appellant has provided no support for his allegation that his activities are protected by any other provision of § 2302(b)(9) and I find that these provisions are inapplicable to the circumstances of this appeal.

1985).  The appellant bears the burden of establishing by preponderant evidence that the Board has jurisdiction over his appeal.  *See* 5 C.F.R. § 1201.56(a)(2).  Preponderance of the evidence is defined by regulation as the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  *See* 5 C.F.R. § 1201.56(c)(2).

To establish jurisdiction over an IRA appeal, an appellant must show that he exhausted his administrative remedies before the OSC and made the following non-frivolous allegations:  (1) that he engaged in whistleblowing activity by making a protected disclosure; and (2) that the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action.  *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 6 (2011).  I may consider only the particular disclosures and personnel actions that Appellant raised before the OSC.  *See Willis v. Department of Agriculture*, 141 F.3d 1139, 1144 (Fed. Cir. 1998); *Lewis v. Department of the Army*, 58 M.S.P.R. 325, 332 (1993).

Whistleblowing for these purposes is the disclosure of information that an appellant reasonably believed evidenced gross mismanagement, a gross waste of funds, an abuse of authority, a substantial and specific danger to public health or safety, or a violation of a law, rule, or regulation.  5 U.S.C. § 2302(b)(8)(A).  The disclosure must have been specific and detailed, not a broad-brush accusation that amounted only to a vague allegation of wrongdoing.  *Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 3 (2006); *Gryder v. Department of Transportation*, 100 M.S.P.R. 564, ¶ 13 (2005).

The Whistleblower Protection Enhancement Act (WPEA) of 2012 expanded the categories of protected disclosures.  *See Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014); *see also* WPEA § 101(b)(1)(A).  Prior to the enactment of the WPEA, an appellant only could file an IRA appeal with the Board based on allegations of whistleblower reprisal under 5 U.S.C. § 2302(b)(8).

*See Wooten v. Department of Health & Human Services*, 54 M.S.P.R. 143, 146 (1992), *superseded by statute as stated in Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 5 (2014). Following the WPEA's enactment, however, an appellant also may file an IRA appeal with the Board concerning alleged reprisal based on certain other classes of protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D). 5 U.S.C. § 1221(a); *Hooker*, 120 M.S.P.R. 629, ¶ 9. As relevant here, § 2302(b)(9)(A)(i) bars reprisal for an appellant's personal exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation concerning an alleged violation of § 2302(b)(8) (whistleblower reprisal). *See Carney,* 121 M.S.P.R. 446, ¶ 6, n. 3. Reprisal for filing a prior EEO complaint, however, is not included among prohibited personnel practices which can form the basis of an IRA appeal; rather, this prohibition is contained within 5 U.S.C. § 2302(b)(9)(A)(ii), and it does not provide a basis for establishing the Board's jurisdiction over an IRA appeal. *See Mudd v. Department of Veterans Affairs,* 120 M.S.P.R. 365, ¶ 7 (2013).

An appellant is entitled to a jurisdictional hearing only where he makes a non-frivolous allegation that the Board has jurisdiction over his appeal. *See Smirne v. Department of the Army*, 115 M.S.P.R. 51, ¶ 8 (2010); *Lara v. Department of Homeland Security*, 101 M.S.P.R. 190, ¶ 7 (2006); *Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994). Nonfrivolous allegations of Board jurisdiction are allegations of fact that, if proven, could establish that the Board has jurisdiction over the appeal; mere *pro forma* allegations are insufficient to satisfy this non-frivolous standard. *Weed v. Social Security Administration*, 113 M.S.P.R. 221, ¶ 18 (2010). *See also Smirne*, 115 M.S.P.R. 51, ¶ 8; *Lara*, 101 M.S.P.R. 190, ¶ 7; *Ferdon*, 60 M.S.P.R. at 329. In determining whether the appellant has made a nonfrivolous allegation of jurisdiction entitling him to a hearing, the administrative judge may consider the agency's documentary submissions; however, to the extent that the agency's evidence constitutes mere factual contradiction of the appellant's otherwise adequate prima facie showing of

jurisdiction, the administrative judge may not weigh evidence and resolve conflicting assertions of the parties, and the agency's evidence may not be dispositive. *Weed*, 113 M.S.P.R. 221, ¶ 19; *Ferdon*, 60 M.S.P.R. at 329.

Exhaustion

The first element to Board jurisdiction over an IRA appeal is exhaustion by the appellant of his administrative remedies before OSC. 5 U.S.C. § 1214(a)(3); *Mudd*, 120 M.S.P.R. 365, ¶ 4; *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). I find the appellant has satisfied this requirement. The appellant contacted OSC on November 1, 2015 and alleged that he was reassigned to the position of Special Assistant in retaliation for making claims of systemic race discrimination to the agency's EEO office and also to his supervisors directly when his supervisors reassigned him to the position of Special Assistant. AF, Tab 1 at 20-48 (OSC Complaint). On November 20, 2015, OSC closed its inquiry into the appellant's allegations. AF, Tab 1 at 7.

Protected Activity

The next requirement is for the appellant to nonfrivolously allege that he engaged in protected activity within the meaning of the Whistleblower Protection Act of 1989 (WPA). *Mudd*, 120 M.S.P.R. 365, ¶ 4. Under the WPA, as amended by the WPEA, the Board has jurisdiction over an IRA appeal if the appellant made a disclosure protected under 5 U.S.C. § 2302(b)(8) or engaged in activity protected by § 2302(b)(9)(A)(i), (B), (C), or (D). *See* 5 U.S.C. 1221(a). A protected disclosure under § 2302(b)(8) is one which the appellant reasonably believed evidenced a violation of law, rule, or regulation, gross mismanagement, gross waste of funds, abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8). Protected activity under § 2302(b)(9)(B) is "testifying for or otherwise lawfully assisting any individual in the exercise of" any "appeal, complaint, or grievance right granted by any law, rule, or regulation." 5 U.S.C. § 2302(b)(9)(B). *See also Hooker v. Department of*

*Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014). Thus, as relevant to this case, the Board has jurisdiction over claims of retaliation for providing testimony for or otherwise lawfully assisting a coworker in exercising their right to complain of race discrimination. *Id.* (discussing the scope of the WPEA amendments to Title 5). The WPEA did not extended Board jurisdiction to claims of retaliation for an employee's own EEO-related protected activity. It is long settled before the Board that statements or complaints of an EEO nature are covered under § 2302(b)(1) and are excluded from coverage under § 2302(b)(8). *See, e.g., Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001). *See* 5 U.S.C. § 2302(b)(9)(A)(ii).

I find, for the reasons set forth below, that the appellant fails to make a nonfrivolous allegation that his statements or complaints are protected under either § 2302(b)(8) or § 2302(b)(9)(B) and the Board lacks jurisdiction over the appellant's claims as an IRA.

Abuse of Authority

An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or to preferred other persons. *See Linder v. Department of Justice,* 122 M.S.P.R. 14, ¶ 15 (2014); *Chavez v. Department of Veterans Affairs,* 120 M.S.P.R. 285, ¶ 22 (2013). To establish that he held a reasonable belief that his disclosure evidenced an abuse of authority, the appellant need not prove that the condition disclosed actually established an abuse of authority, but he must show that the matter disclosed was one which a reasonable person in his position would believe evidenced an abuse of authority. *See Huffman v. Office of Personnel Management*, 92 M.S.P.R. 429, ¶ 9 (2002). The test to determine whether the appellant had a reasonable belief that his disclosures evidenced an abuse of authority is whether a "disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably

conclude that the actions of the government evidence" an abuse of authority under 5 U.S.C. § 2302(b)(8). *See Lachance v. White*, 174 F.3d 1378, 1381 (Fed.Cir.1999), cert. denied, 528 U.S. 1153, 120 S.Ct. 1157, 145 L.Ed.2d 1069 (2000); *Huffman*, 92 M.S.P.R. 429, ¶ 9; *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 19 (2002).

As noted above, the Board has long held that claims of race discrimination alone are more appropriately within the jurisdiction of the EEOC and, therefore, are not considered protected disclosures under § 2302(b)(8). *See, e.g., Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001) (purported disclosures that involve alleged discrimination or reprisal for engaging in activities protected by Title VII, even if made outside of the grievance or EEO processes, do not constitute protected whistleblower activity under section 2302(b)(8) because they pertain to matters of discrimination covered by section 2302(b)(1)(A)), review dismissed, 32 Fed. Appx. 543 (Fed. Cir. 2002); *Peterson v. Department of Transportation*, 54 M.S.P.R. 178, 183 (1992) (the employee's allegations of reprisal for allegedly providing information to an EEO investigator regarding sex and racial discrimination did not constitute "whistleblowing" disclosures under Section 2302(b)(8)). As discussed above, this remained true even after the WPEA as it also excluded from IRA jurisdiction coverage for disclosures made in the exercise of any appeal, complaint, or grievance other than those with regard to remedying a violation of 5 U.S.C. § 2302(b)(8).

In similar circumstances as those present in this appeal, the Board has held that allegations of discrimination alone do not constitute disclosures of abuse of authority under § 2302(b)(8). *See Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300 (2003). In *Applewhite*, the appellant made disclosures of, *inter alia,* racial discrimination, harassment, and creation of a hostile work environment due to management's failure to promote African-American employees. *See Applewhite*, 94 M.S.P.R. 300, ¶ 15-18. The

Board found that the appellant's statements and complaints to management solely related to discrimination matters, *id.* at ¶ 17, and noted:

> [w]hen the appellant did not get satisfaction from [her supervisors] or anyone else at the agency, she filed a formal discrimination complaint, which included the same allegations of harassment and hostile work environment due to the purposed discrimination.

*Id.* at ¶ 22. The Board held that the appellant's complaints to her supervisors were the same as her complaint of discrimination and harassment in violation of Title VII and, as such, the appellant did not have a reasonable belief that such complaints were protected by § 2302(b)(8). *Id.* at ¶ 23, citing *Spruill, Redschlag, Peterson.*

Similarly, in this appeal, it is readily apparent that the appellant's allegations are solely regarding perceived race discrimination as covered by Title VII. The appellant made allegations directly to his supervisors that McDaniel and other African-American employees were not promoted or given employment opportunities because of their race. *See* AF, Tab 5 at 4; *see also* AF, Tab 1, Pages 12-17. Within approximately one month, he filed a complaint under both the agency's Harassing Conduct Policy and also with the agency's EEO office regarding these issues of systemic and individual race discrimination. *Id.* The appellant also copied the agency's EEO personnel on his email to his supervisors detailing his claims of discrimination and retaliation following his reassignment to the Special Assistant position. *Id.* at 30-31. Finally, the appellant's OSC complaint explained that the agency retaliated against him for making race discrimination complaints. *Id.* at 27. It is clear from the appellant's OSC complaint and jurisdictional response that his allegations were related solely to his belief that his supervisors discriminated against African-American employees, i.e. that his disclosures were purely of an EEO nature protected by Title VII.

The underlying allegations in Appellant's EEO complaints do not establish that he made a disclosure under the WPA but, rather, his alleged disclosures

focus on claims of race and EEO-based retaliation under Title VII-§ 2302(b)(9). Accordingly, I find that the appellant did not establish IRA jurisdiction over his claims. As such, I find that the appellant's statements to his supervisors and complaints to the agency are appropriately covered by § 2302(b)(9)(A)(ii) and are excluded from coverage by § 2302(b)(8).[2] *See Applewhite*, 94 M.S.P.R. 300, ¶ 23; *Redschlag*, 89 M.S.P.R. 589, ¶ 84.

<u>Claims of Lawful Assistance</u>

An employee's act of "testifying for or otherwise lawfully assisting any individual in the exercise of any right" regarding their exercise of any appeal, complaint, or grievance is within the Board's jurisdiction in an IRA. 5 U.S.C. § 2302(b)(9)(B). *See Hooker, supra.* The appellant asserts that he was assisting African-American employees when he engaged in the Title VII activity discussed above. A plain reading of § 2302(b)(9)(B) requires that another employee be exercising a right protected by § 2302(b)(9)(A) with which the appellant is assisting. The appellant fails to make a nonfrivolous allegation that he was

---

[2] The appellant cites to *Armstrong v. Department of Justice,* 107 M.S.P.R. 375 (2007), for the proposition that a disclosure regarding a potential EEO violation constitutes a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8). *See* AF, Tab 5 at 25. In *Armstrong*, the Board upheld an administrative judge's finding that that the appellant reasonably believed his disclosure that African-American employees had not been given the opportunity to serve in positions typically required in order to qualify for a promotion evidenced a nonfrivolous allegation of a violation of law, rule, or regulation, or an abuse of authority. 107 M.S.P.R. 375, ¶17. However, the Board did not engage in any substantive analysis when it upheld the administrative judge's finding, instead determining that the appellant had failed to prove the disclosures were contributing factors in the employment actions at issue. *Id.* at ¶ 24. As such, I find that this case is an aberration that does not invalidate consistent and well-reasoned Board precedent that disclosures of an EEO nature do not constitute protected disclosures under 5 U.S.C. § 2302(b)(8). *See, e.g., Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 690 (Fed. Cir. 1992); *Mudd*, 120 M.S.P.R. 365, ¶ 7; *Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300 (2003); *Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 84 (2001); *Peterson v. Department of Transportation*, 54 M.S.P.R. 178, 183 (1992). The remainder of the cases cited by the appellant involve disclosures that contain both EEO and non-EEO factors and, therefore, are inapplicable to this appeal. *See* AF, Tab 5 at 25.

11

providing assistance to coworkers who themselves raised claims of discrimination or were otherwise engaged activity covered by § 2302(b)(9)(A). In fact, the appellant does not allege that his coworkers were engaged in protected activity at all. *See generally*, AF, Tabs 1 and 5. Thus, the appellant has not engaged in activity protected under § 2302(b)(9)(B). To find otherwise would controvert Congress' clear intention to exclude from Board jurisdiction claims of retaliation for an employee's own EEO-related activity. *See* 5 C.F.R. § 1221(a) (specifically excluding from coverage retaliation for disclosures or complaints unrelated to § 2302(b)(8) subjects).

In sum, the appellant's underlying allegations do not establish that he made a disclosure under the WPA or the WPEA. The appellant clearly objects to an alleged agency practice whereby the agency fails to promote African-American employees and, to that end, he has filed formal EEO complaints. However, he cannot appeal his reassignment as an IRA appeal under these facts. The appellant has an avenue of recourse for these complaints, which he has taken in filing a discrimination complaint. The WPEA did not change the law that opposition to discrimination, without a b(8) component, does not qualify for protection under the WPA. *See Mudd*, 120 M.S.P.R. 365, ¶¶ 6-7. The appellant's attempt to cast his discrimination claims as whistleblower complaints fails as neither § 2302(b)(8) nor § 2302(b)(9) establishes IRA jurisdiction over the appellant's alleged disclosures. Moreover, the appellant's claims of jurisdiction based on his assertions that he was assisting other employees in the exercise of their complaint rights must also fail. For these reasons, the appeal is dismissed without a hearing because Appellant's allegations, even if proved, would not establish jurisdiction.

## DECISION

The appeal is DISMISSED.

FOR THE BOARD:                    _____/S/_____

Sherry A. Zamora
Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **May 25, 2017**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. However, if you prove that you received this initial decision more than 5 days after the date of issuance, you may file a petition for review within 30 days after the date you actually receive the initial decision. If you are represented, the 30-day period begins to run upon either your receipt of the initial decision or its receipt by your representative, whichever comes first. You must establish the date on which you or your representative received it. The date on which the initial decision becomes final also controls when you can file a petition for review with the Court of Appeals. The paragraphs that follow tell you how and when to file with the Board or the federal court. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

If the other party has already filed a timely petition for review, you may file a cross petition for review. Your petition or cross petition for review must state your objections to the initial decision, supported by references to applicable laws, regulations, and the record. You must file it with:

 **U.S. MERIT SYSTEMS PROTECTION BOARD**

**Office of the Clerk of the Board**
1615 M Street, N.W.
Washington, D.C. 20419-0002

Phone: 202-653-7200; Fax: 202-653-7130; E-Mail: mspb@mspb.gov

2022-1967

# ATTESTATION

I HEREBY ATTEST that the attached index represents a list of the documents comprising the administrative record of the Merit Systems Protection Board in the appeal of John S. Edwards *v.* Department of Labor, MSPB Docket No. DC-1221-16-0227-W-1, and that the administrative record is under my official custody and control on this date

on file in this Board

| July 21, 2022 | /s/ for |
|---|---|
| Date | Jennifer Everling |
| | Acting Clerk of the Board |

INDEX

JOHN S. EDWARDS

v.

DEPARTMENT OF LABOR

MSPB Docket No.  DC-1221-16-0227-W-1

INDIVIDUAL RIGHT OF ACTION (IRA)

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Initial Appeal | December 17, 2015 |
| 2 | 1 | MSPB - Acknowledgment Order | December 21, 2015 |
| 3 | 1 | MSPB - Order to Show Cause | December 21, 2015 |
| 4 | 1 | Appellant - Joint Motion for Extension of Time to Respond to Jurisdictional Order | December 23, 2015 |
| 5 | 1 | Appellant - Appellant's Response to Jurisdictional Order | January 04, 2016 |
| 6 | 1 | Agency - Agency Representative Addition | January 05, 2016 |
| 7 | 1 | MSPB - Order Granting Joint Motion for Extension of Time | January 05, 2016 |
| 8 | 1 | Agency - Agency's Unopposed Motion for Extension of Time | January 28, 2016 |
| 9 | 1 | Agency - Notice of Intent to File Jurisdicitonal Response | February 01, 2016 |
| 10 | 1 | MSPB - Order Granting Extension of Time | February 01, 2016 |
| 11 | 1 | Agency - Agency Response to Show Cause Order | February 11, 2016 |
| 12 | 1 | Appellant - Appellant's Reply to Agency Response to Show Cause Order | February 12, 2016 |
| 13 | 1 | Appellant - Appellant's Consented Motion for Phone Status Conference | February 12, 2016 |
| 14 | 1 | Agency - Agency Representative Addition | September 26, 2016 |
| 15 | 1 | MSPB - Initial Decision | April 20, 2017 |
| 16 | 1 | MSPB - Certificate of Service | April 20, 2017 |

Appx32

INDEX

JOHN S. EDWARDS

v.

DEPARTMENT OF LABOR

MSPB Docket No.  DC-1221-16-0227-W-1

INDIVIDUAL RIGHT OF ACTION (IRA) - PETITION FOR REVIEW

| TAB | VOLUME | DESCRIPTION OF DOCUMENT | DATE OF RECEIPT OR ISSUANCE |
|---|---|---|---|
| 1 | 1 | Appellant - Petition for Review | May 05, 2017 |
| 2 | 1 | MSPB - Petition For Review Acknowledgment Letter | May 05, 2017 |
| 3 | 1 | Agency - Request for Extension of Time | May 22, 2017 |
| 4 | 1 | MSPB - Extension of Time Order | May 22, 2017 |
| 5 | 1 | Agency - Response to Appellant's Petition for Review dated 5/5/2017 | June 15, 2017 |
| 6 | 1 | MSPB - Opinion and Order | May 05, 2022 |
| 7 | 1 | MSPB - Certificate of Service | May 05, 2022 |

Appx33

 **U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

**Informal**
Complaint of Discrimination

*Note: Complete, sign, date and return this form to the National Coordinator of EEO Counselors, Civil Rights Center*
*See additional pages for additional information or for help in completing this form*

| 1a. Name: John Edwardes | 2. Agency: ETA |
|---|---|
| | Position Title/Grade: Supervisory IT Specialist / GS15 |

1b. Anonymity  X *I would like to remain anonymous*  □ *I do not care to remain anonymous*

| 3a. Home Address: ███████████████ | 3b. Office Address (if DOL employee): 200 Constitution Ave NW, Washington D.C. |
|---|---|
| 4a. Telephone (including area code, extension): Home: ████   Office: ████ | 4b. Email Address (CRC may contact you via email): Home: ████   Office: ████ |

5. Bases (check as appropriate and specify where a blank is provided):

| □ Race: | □ Religion: | □ Sex: |
|---|---|---|
| □ Color: | □ Age: | □ National Origin: |
| □ Sexual Orientation:* | □ Parental Status:** | □ Genetic Information/ Services: |
| □ Disability: | X Reprisal (Please specify the prior EEO activity and date): Complaint filed with Vanessa Hall - ASAM on Tuesday, October 13, 2015 @ 12:46 PM | |

*Protected by Executive Order 13087, not by Federal statute. Claims on this basis may request a final agency decision but have no hearing or appeal rights with the E.E.O.C.
**Protected by Executive Order 13152, not by Federal statute. Claims on this basis may request a final agency decision but have no hearing or appeal rights with the E.E.O.C.

6. Specify the action(s) that gave rise to this complaint *(use the second page if needed)*:

*Date(s)*                                 *Specific action(s)*

On Tuesday, September 15, 2015 @ 2:38 PM my supervisor Aung Htein took affirmative steps in writing to remove my supervisory and job responsibilities and diminish my reputation after I complained to him, Lisa Lahrman and Byron Zuidema about systemic discrimination of some African American employees in the Department of Labor, Employment and Training Administration, Office of Information Systems and Technology, specifically that GS13 – Darryl McDaniel – is being discriminated against because he is being denied a merit promotion solely due to his race. Darryl applied for advertised GS14 position to perform the work he is already performing at that level – and when Darryl was found to be the only eligible qualified candidate and placed on the cert for the hiring official - Aung Htein, Lisa Lahrman and Byron Zuidema placed an indefinite delay on hiring Darryl for the position but have allowed the hiring of other vacant positions in OIST despite strong recommendations from the hiring officials including Darryl's supervisor Thomas Flagg (also African American), reviewing officer Peter Le, and John Edwards the Deputy Director of OIST who is Peter's supervisor. To date, there is no indication that Darryl will ever have the opportunity to fill the position. After the retaliation, Aung Htein has also taken other steps to impact two other African American employee's rights which are described in my complaint that I filed with Vanessa Hall - ASAM on Tuesday, October 13, 2015 @ 12:46 PM.

7. Please specify remedy(ies) you believe will resolve your complaint:
Promote Darryl McDaniel to the GS14 position he was denied and demand a stop to the other injustices to African Americans described in my complaint filed with Vanessa Hall - ASAM on Tuesday, October 13, 2015 @ 12:46 PM.

| 8. Person initially contacted on this matter: X EEO Counselor x Civil Rights Center staff member □ Other (specify title): | 9. Individual's Name: Vanessa Hall James Anderson III | 10. Individual's Telephone Number and Email Address: (202) 693-4064 Hall.Vanessa.H@dol.gov (202) 693-6547 anderson.james.3@dol.gov |
|---|---|---|
| 11. Have you filed a complaint on this same matter with: | □ Administrative grievance system? □ A union (specify name and date )? □ Merit Systems Protection Board (MSPB)? | If yes, date(s) of other filing(s): |

Appx34

| 12a. Representative's Name: | 12b. Representative's Address: | 12c. Representative's Telephone and Email Address: |
|---|---|---|

Date October 16, 2015          Signature

CRC Use Only    Date Received by CRC:          Issue:          Case Number:

N

CRC–1, Revised 03/12

 **U.S. Department of Labor**
Office of the Assistant Secretary for Administration and Management
Civil Rights Center

# Informal
#### Complaint of Discrimination

**When can you file a formal complaint?**

When your EEO Counselor notifies you that your informal complaint cannot be resolved and provides you notice of your right to file a formal complaint, you have 15 calendar days from receiving that notice to complete, sign, and submit this form to the Director, Civil Rights Center (CRC) or to the Secretary of Labor. Please note that the Secretary's office will forward the formal complaint to CRC, which may delay processing of your complaint.

**What happens next?**

Only allegations presented for EEO counseling will be considered for investigation at the formal stage. *However, if you wish to amend your formal complaint* during processing with allegations "like or related to" issues you raised in your informal complaint, *you must* request an amendment by letter to the Director, Civil Rights Center.

6. Continued. Use this space to continue #6 from the face of this form.

*Date(s)*                    *Specific action(s)*

# Informal
#### Complaint of Discrimination

CRC–1, Revised 03/12

Appx35

<u>Informal Complaint/Counseling Initial Questions</u>

1. Please provide the agency for which you work or to which you applied.
   N/A

2. Please provide the title, series, and grade level of your position or the position you applied. If you applied for a position, please include the Vacancy Announcement number. N/A

3. What is the adverse action or conduct about which you are complaining?
   Reprisal

The following questions are answered in the complaint and the form.

4. When did this action or conduct occur? Please provide the dates for all the occurrences you referenced in Question #3.
   Tuesday, September 15, 2015 @ 2:38 PM

5. Who is/are the responsible supervisor(s) or manager(s) involved in your complaint? If more than one supervisor or manager is involved, please indicate in what way(s) each was involved. Aung Htein

6. What was the harm you suffered as a result of the action(s) you described in Question #3? Aung Htein took affirmative steps in writing to remove my supervisory and job responsibilities and diminish my reputation after I complained to him, Lisa Lahrman and Byron Zuidema about systemic discrimination of some African American employees in the Department of Labor, Employment and Training Administration, Office of Information Systems and Technology.

7. On what protected basis(es) are you alleging discrimination (e.g. race, color, age, etc.)? Please include how you identify with each basis(es) against which you are alleging you have been discriminated (for age, your date of birth; for other bases, please look to the last page of the Informal complaint form for explanation).

   That GS13 – Darryl McDaniel – is being discriminated against because he is being denied a merit promotion solely due to his race. Darryl applied for advertised GS14 position to perform the work he is already performing at that level – and when Darryl was found to be the only eligible qualified candidate and placed on the cert for the hiring official - Aung Htein, Lisa Lahrman and Byron Zuidema placed an indefinite delay on hiring Darryl for the position but have allowed the hiring of other vacant positions in OIST despite strong recommendations from the hiring officials including Darryl's supervisor Thomas Flagg (also African American), reviewing officer Peter Le, and John Edwards the Deputy Director of OIST who is Peter's supervisor. To date, there is no indication that Darryl will ever have the opportunity to fill the position. After the retaliation, Aung Htein has also taken other steps to impact two other African American

Appx36

employee's rights which are described in my complaint that I filed with Vanessa Hall - ASAM on Tuesday, October 13, 2015 @ 12:46 PM.

8. Why do you believe you were discriminated against on the basis(es) you allege?

Retaliation for not tolerating any discrimination. Also, based on the arduous process I have had to endure to file this complaint I can only assume that most people give up or don't file and Aung, Lisa and Byron know that.

9. Please state how, by taking the actions described in Question #3, the responsible supervisor(s) or manager(s) discriminated against you on the basis(es) you selected in Question #7.

10. What remedies are you seeking as a result of the filing of your informal complaint? If you are requesting to resolve your complaint through Alternative Dispute Resolution you must provide a listing of what actions would resolve your complaint.

Promote Darryl McDaniel to the GS14 position he was denied and demand a stop to the other injustices to African Americans described in my complaint filed with Vanessa Hall - ASAM on Tuesday, October 13, 2015 @ 12:46 PM.

Appx37

Form11 11/1/2015
Case Number: MA-16-0528
Created: Nov 1 2015 7:06AM
Last Modified: Nov 2 2015 12:06PM

E-Filing form printed on 11/5/2015 12:51 PM
Form11 11/1/2015

Status               Processed
Original Entry Date 11/1/2015 7:06 AM
Last Modified       11/2/2015 12:06 PM
Case Number         MA-16-0528

User Information
John Edwards
███████████████

Agency: Department of Labor

A summary of the data you entered:

Did the incident occur while federally employed?
Yes

Were you employed by any of the following Federal agencies?
a Federal agency not listed above

Your name: prefix
Mr.

Your name: First name
John

Your name: Middle name
Stuart

Your name: Last name
Edwards

Your name: Suffix

Your home address: Street

██████████████

Your home address: Apt No

Your home address: City

████████████

Your home address: State

████████

Your home address: Zipcode

███████

Your home address: country
UNITED STATES

Your phone numbers: International Number
False

Your phone numbers: Country Code
00000

Your phone numbers: Home

███████████

Your phone numbers: Home Ext

Your phone numbers: Work

███████████

Your phone numbers: Work Ext

Your phone numbers: Cell

███████████

Your phone numbers: Cell Ext

Your phone numbers: Fax

Your phone numbers: Fax Ext

Your phone numbers: Other

Your phone numbers: Other Ext

Your phone numbers: Email
edwards.john.s@dol.gov

Outreach Info: How did you first become aware that you could file a complaint
with OSC?
Co-Worker

Outreach Info: For Other, please describe:

Outreach Info: Date (approximate):
11/1/2015

Do You Have a Representative?
No

Agency Address: Agency Name
Department of Labor

Agency Address: Component Name
Employment and Training Administration

Agency Address: Street
200 Constitution Avenue NW

Agency Address: Apt No

Agency Address: City
Washington

Agency Address: State
District of Columbia

Agency Address: Zipcode
20210

Agency Address: Country
UNITED STATES

Job Info: Title
Deputy Director

Job Info: Series
GS-2210

Job Info: Grade
GS-15

Are you covered by a collective bargaining agreement (or union contract)?
No

Enter Your Employment Status: Applicant for federal employment (not current employee)
False

Enter Your Employment Status: Excepted Service (For Other, please specify)

Enter Your Employment Status: Other (For Other, please specify)

Enter Your Employment Status: Competitive Service
Career or career-conditional appointment

Actions Taken: Filed appeal with Merit Systems Protection Board (MSPB)

Actions Taken: Filed petition for reconsideration of initial MSPB decision

Actions Taken: Initial MSPB decision No.

Actions Taken: Filed USERRA claim with VETS in Department of Labor

Actions Taken: Filed grievance under agency grievance procedure

Actions Taken: Filed grievance under negotiated grievance procedure

Actions Taken: Matter heard by arbitrator under grievance procedure

Actions Taken: Matter is pending in arbitration

Actions Taken: Filed discrimination complaint with agency
10/13/2015

Actions Taken: Appealed discrimination complaint decision to Equal
Employment Opportunity Commission

Actions Taken: Filed appeal with Office of Personnel Management (OPM)

Actions Taken: Filed unfair labor practice (ULP) complaint with Federal Labor
Relations Authority (FLRA)

Actions Taken: Filed lawsuit in federal court

Actions Taken: Court name

Actions Taken: Reported matter to agency Inspector General
10/30/2015

Actions Taken: Reported matter to one or more members of Congress
10/30/2015

Actions Taken: Names of senators or representatives
Dave Brat

Actions Taken: Other (specify)

Actions Taken: For Other, please specify

Actions Taken: None
False

Please describe your complaint in detail.
Must be able to supply attachments. Here is a summary:

Systemic Discrimination of some African American Employees in the Department of
Labor, Employment and Training Administration, Office of Information Systems and
Technology and active retaliation and reprisals against employees who report EEO
violations by using prohibited personnel practices (5 USC § 2302(b)) by the Secretary
of Labor.

The Secretary of Labor and senior officials in the U.S. Department of Labor with responsibility for receiving reports of Whistleblower Retaliation and providing EEO protections for an employee making multiple protected disclosures are not protecting employee rights by allowing retaliation through prohibited personnel practices.

The Secretary of Labor intentionally commits prohibited personnel practices that are frequently repeated at the Department of Labor by senior officials against employees who make EEO complaints.

The U.S. Department of Labor Office of Equal Opportunity does not protect the rights of employees who report discrimination of African American Employees and permit active retaliation by turning a blind eye to prohibited personnel practices being performed by the Secretary of Labor and senior officials in the U.S. Department of Labor.

The U.S. Department of Labor, Civil Rights Center Office of Internal Enforcement does not protect the rights of employees who report discrimination of African American Employees and permit active retaliation by turning a blind eye to prohibited personnel practices being performed by the Secretary of Labor and senior officials in the U.S. Department of Labor.

The Secretary of Labor provides senior officials in the U.S. Department of Labor who commit discrimination of African American Employees unlimited access to federal legal resources at the Department of Labor that are funded by taxpayers for their own personal use to shield them from liability for their illegal actions, to protect them from disciplinary actions, and to assist them with carrying out a long standing tradition of discrimination against African Americans, and to retaliate against anyone who reports EEO violations, without any fear of being caught or held accountable under the law.

---

**What corrective action or remedy are you requesting if you prevail in your complaint?**
I request that all the Federal Officials with responsibility for receiving reports of Whistleblower Retaliation against an employee for making a protected disclosure immediately take all steps necessary today to halt this prohibited personnel action and help me protect my good reputation until such time as a full investigation into my complaints of discrimination and retaliation by Lisa Lahrman, Byron Zuidema, Aung Htein, Crystal Kelly and Sabrina Lewis is completed. Further, I request that these individuals be ordered in writing immediately to stop retaliating against me and others; that they be removed immediately from the management chain of the people they are oppressing; that they be officially denied the continued unlimited use of

taxpayer funded legal services that I am not being allowed; and that these individuals be required, if they choose to, obtain private legal counsel like I must do at great personal expense. Finally, I request that these employees receive substantial disciplinary action when they are found guilty of violating federal law up to and including termination from federal employment or even prison for such egregious and heinous acts to the maximum extent allowed under the law. .

---

Choose ONE complaint category that applies to your complaint.
10. Reprisal for whistleblowing.

---

Whistleblower Reprisal Victim: Were you the victim of the reprisal?
Yes

---

Whistleblower Reprisal Victim: First Name

---

Whistleblower Reprisal Victim: Last Name

---

Whistleblower Reprisal Victim: Job Title

---

Whistleblower Reprisal Victim: Phone

---

Whistleblower Reprisal Victim: Phone Ext

---

Whistleblower/Personnel Actions Taken: an appointment

---

Whistleblower/Personnel Actions Taken: a promotion or selection for a position

---

Whistleblower/Personnel Actions Taken: a reprimand, suspension, removal or other disciplinary or corrective action;

---

Whistleblower/Personnel Actions Taken: a detail, transfer, reassignment, or change in duty station
"promotes the efficiency of the service"

---

Whistleblower/Personnel Actions Taken: a reinstatement, restoration or reemployment

---

Whistleblower/Personnel Actions Taken: a decision about pay, benefits, or awards

---

Whistleblower/Personnel Actions Taken: a decision about education or training

Whistleblower/Personnel Actions Taken: an annual performance evaluation

Whistleblower/Personnel Actions Taken: a decision to order psychiatric testing or examination

Whistleblower/Personnel Actions Taken: any other significant change in duties, responsibilities, or working conditions.

Whistleblower/Personnel Actions Taken: Details

From: Edwards, John S - ETA
Sent: Friday, October 30, 2015 2:01 PM
To: Lahrman, Lisa L. - ETA; Zuidema, Byron - ETA; Htein, Aung - ETA; Kelly, Crystal L - ETA; Lewis, Sabrina M - ETA
Cc: Zachary.williams@mail.house.gov; Dahl, Scott - OIG; Wu, Portia - ETA; Kerr, Michael - ASAM; Colangelo, Matthew - OSEC; Lu, Christopher P - OSEC; Anderson, James - OASAM CRC; Hall, Vanessa H - ASAM
Subject: URGENT: EEO DISCRIMINATION AT ETA AND REQUEST FOR IMMEDIATE PROTECTION FROM REPRISAL

TO: Lisa Lahrman, Byron Zuidema, Aung Htein, Crystal Kelly and Sabrina Lewis:

CC: Federal Officials with responsibility for receiving reports of Whistleblower Retaliation and providing EEO protections for an employee making multiple protected disclosures – please see my request below for your immediate assistance.

As a senior management official in the U.S. government and Supervisory IT Specialist GS-15-2210 / Step 10 at the Department of Labor with only 3.5 years total federal employee service in two agencies and a strong reputation for exceptional performance and expertise in technology management, I am officially notifying each of you that you have intentionally committed prohibited personnel practices that are frequently repeated at the Department of Labor by egregiously retaliating against me for filing EEO complaints with Vanessa Hall at the U.S. Department of Labor, OASAM/Office of Equal Opportunity and James Anderson at the U.S. Department of Labor, Civil Rights Center / Office of Internal Enforcement.

I have provided substantial evidence to you and Vanessa Hall and James Anderson in writing through the prescribed complaint processes and in person that proves Lisa Lahrman, Byron Zuidema, and Aung Htein have actively participated together in a

conspiracy to systematically discriminate against some African Americans that work for me in violation of federal laws, rules, and regulations, and that all of you have prior knowledge prior to executing this action of reprisal to reassign me laterally to the position of Special Assistant, GS-2210-15 effective Sunday, November 1, 2015. Your action intentionally strips me of my supervisory and management position for which I am critically needed to implement WIOA legislation with the specific intent to remove me from being able to protect the civil rights of my employees so that you can continue to intimidate and discriminate against them with me out of the way as you have for many years. Like school yard bullies, you want to show everyone by this action that you are not to be messed with and if anyone stands up to you they will be destroyed.

I also have proof that you are utilizing and have been provided unlimited access to federal legal resources at the Department of Labor that are funded by taxpayers for your own personal use to include the services and advice of James Blair in the Solicitor's Office and his staff with the intent to shield you from liability for your illegal actions, to protect you from disciplinary actions, and to assist you with carrying out your conspiracy to discriminate against African Americans and retaliate against me without any fear of being caught or held accountable under the law.

The attachments are further evidence that you have knowledge of these reports and have discussed them with me, and the below email correspondence is evidence of your egregious actions and denial of my request for due process by disallowing me any reasonable opportunity to consult with an attorney to protect my rights and to protect my reputation.

If you are permitted by the Secretary of Labor to carry out this prohibited personnel action on Sunday, November 1, 2015, then my good reputation will be damaged by you and this agency, and my prospects for future employment at or above my current level in the Department of Labor and the federal government will be severely crippled - or destroyed. I have not held a non-supervisory and non-management position in an organization for 35 years and I do not intend to start now just because I work for a corrupt federal agency that discriminates and retaliates with impunity and at-will against employees while its leaders turn a blind eye.

In accordance with 5 USC § 2302(b), any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority take or threaten to take a personnel action because of any disclosure of information by an employee which the employee reasonably believes evidences a violation of any law, rule, or regulation.

Lisa Lahrman's email @ Thursday, October 29, 2015 3:32 PM below is evidence that you all have exercised that authority.

Further, I have learned today that Lisa Lahrman is notorious in the Washington EEO legal circles for being permitted by her supervisors to boldly violate federal law using taxpayer funded federal legal resources to obfuscate her discriminatory actions and retaliate at-will against employees who make protected disclosures she wishes to conceal.

Pursuant to 5 U.S.C. § 1215(a)(3), disciplinary action consisting of removal, reduction in grade, debarment from Federal employment for a period not to exceed 5 years, suspension, reprimand, or an assessment of a civil penalty not to exceed $1,000 can be taken against any employee for having committed a prohibited personnel practice.

You have intentionally committed prohibited personnel practices that are frequently repeated at the Department of Labor by egregiously retaliating against me for filing EEO complaints.

I request that all the Federal Officials on this email with responsibility for receiving reports of Whistleblower Retaliation against an employee for making a protected disclosure immediately take all steps necessary today to halt this prohibited personnel action and help me protect my good reputation until such time as a full investigation into my complaints of discrimination and retaliation by Lisa Lahrman, Byron Zuidema, Aung Htein, Crystal Kelly and Sabrina Lewis is completed. Further, I request that these individuals be ordered in writing immediately to stop retaliating against me and others; that they be removed immediately from the management chain of the people they are oppressing; that they be officially denied the continued unlimited use of taxpayer funded legal services that I am not being allowed; and that these individuals be required, if they choose to, obtain private legal counsel like I must do at great personal expense. Finally, I request that these employees receive substantial disciplinary action when they are found guilty of violating federal law up to and including termination from federal employment or even prison for such egregious and heinous acts to the maximum extent allowed under the law.

Equal employment opportunity is about fairness to me and it is the law. I am a white man who had the courage to stand up for the civil rights of African Americans that I supervise who are being discriminated against, and I believe it is time the American people and senior leaders in government wake up and take back their government – a government that has been corrupted and overrun by career federal bureaucrats like you who only care about personal power and care nothing about the services and products that hard working federal workers like me and my employees were hired to

provide. Your cavalier attitudes and unfettered willingness to treat people so unfairly and without any respect is tantamount to cruel and unusual punishment for the emotional stress and anxiety you cause in your subordinates and the people you were hired to serve.

This information has been shared with third parties.

With all hope for God's Intervention and Grace,

John Stuart Edwards
Deputy Director
Office of Information Systems and Technology
Employment and Training Administration
U.S. Department of Labor
(202) 693-3816

From: Lahrman, Lisa L. - ETA
Sent: Thursday, October 29, 2015 3:32 PM
To: Edwards, John S - ETA
Cc: Zuidema, Byron - ETA; Htein, Aung - ETA; Kelly, Crystal L - ETA; Lewis, Sabrina M - ETA
Subject: RE: Follow Up Meeting

John,
Management has decided to reassign you laterally to the position of Special Assistant, GS-2210-15, in the Office of Information Systems and Technology, ETA at your current grade and step (GS-15 Step 10). The PD for your new position is attached. This position is telework eligible and therefore your current telework schedule will continue. This reassignment will be effective Sunday, November 1, 2015. We have thoroughly reviewed your situation and have determined that this reassignment promotes the efficiency of the service.

You will retain your current office and report directly to Aung Htein. As you are scheduled to telework on Monday, Aung will e-mail you your first assignment and you can arrange a telephone conference with him on Monday to discuss it if needed.

Sincerely,
Lisa

Lisa L. Lahrman, Esq.

Appx48

Acting Administrator and Administrative Officer
Office of Management and Administrative Services
Employment and Training Administration
U.S. Department of Labor
200 Constitution Avenue, NW Rm. N-4653
Washington, DC 20210
202-693-3295

-----Original Appointment-----
From: Edwards, John S - ETA
Sent: Thursday, October 29, 2015 12:06 PM
To: Lahrman, Lisa L. - ETA; Htein, Aung - ETA; Kelly, Crystal L - ETA
Cc: Zuidema, Byron - ETA; sunnye214@gmail.com
Subject: Tentative: Follow Up Meeting
When: Thursday, October 29, 2015 4:00 PM-4:30 PM (UTC-05:00) Eastern Time
(US & Canada).
Where: Lisa's Office

Lisa, if the purpose of this meeting is to fire me from my current position as Deputy
Director of OIST as you stated in our meeting earlier this week or reassign me to any
other duties than I am currently assigned, then it needs to be rescheduled so that I
have reasonable time to consult with my attorney and to have my attorney present.
This could take a few days.

I would also like to notify you officially that I intend to remain a federal employee in
my current position for an indefinite period of time and will let you and Aung know if
that decision changes.

Please let me know. If the purpose of the meeting is to discuss the job I am currently
performing without changing it and how we can work more closely together then I
will be happy to attend.

Please let me know the specific purpose of this meeting. If I do not receive a response
then I will not attend until I have an opportunity to ensure my rights are protected.

Thank you,

John Stuart Edwards
Deputy Director
Office of Information Systems and Technology
Employment and Training Administration

U.S. Department of Labor
(202) 693-3816

Whistleblower Reprisal Involved: Made Decision First Name
Aung

Whistleblower Reprisal Involved: Made Decision Last Name
Htein

Whistleblower Reprisal Involved: Made Decision Job Title
Director

Whistleblower Reprisal Involved: Made Decision Phone

Whistleblower Reprisal Involved: Made Decision Phone Ext

Whistleblower Reprisal Involved: Made Recommendation First Name
Lisa

Whistleblower Reprisal Involved: Made Recommendation Last Name
Lahrman

Whistleblower Reprisal Involved: Made Recommendation Job Title
Administrator

Whistleblower Reprisal Involved: Made Recommendation Phone

Whistleblower Reprisal Involved: Made Recommendation Phone Ext

Whistleblower Reprisal Involved: Approved Decision First Name
Byron

Whistleblower Reprisal Involved: Approved Decision Last Name
Zuidema

Whistleblower Reprisal Involved: Approved Decision Job Title
Deputy Assistant Secretary

Whistleblower Reprisal Involved: Approved Decision Phone

Whistleblower Reprisal Involved: Approved Decision Phone Ext

Whistleblower Reprisal Involved: How did the persons you just identified know about the victim's disclosure?

From: Edwards, John S - ETA
Sent: Tuesday, October 27, 2015 5:51 PM
To: Zuidema, Byron - ETA
Subject: RE: QUICK CHAT: I.T.

Byron, I recorded the following summary of this meeting. At approximately 4pm today in a meeting you scheduled in your office with me on 27 October 2015, you and Lisa Larhman told me that as a result of the written complaint I made to Aung Htein, Lisa and to you in August 2015 and again to Lisa in September 2015 in person, you both decided to permanently remove me from my deputy director position and advertise and fill my current position while I work in a lessor job at the same grade and rate of pay at DOL ETA reporting to Aung. Lisa said in the meeting 3 times that she is "fully aware" of the investigation that is being conducted by the civil rights center and that she had knowledge of my retaliation claim that is currently being investigated. You said that you only see the reports after an investigation is completed. I told you both that this latest act of retaliation was not acceptable and Lisa said that did not matter. Lisa also informed me that I would be notified by Aung about my new job this week and it will be effective this Sunday to coincide with the start of the new pay period. She also thanked me for my service, implying that I am being terminated. I reasonably believe that I was fired from my job by you today without cause or due process and that you took willful actions to intentionally damage my professional reputation by advertising the position I am currently performing in retaliation for filing an EEO complaint already under investigation on you, Lisa and Aung.

This meeting summary has been shared with third parties.
John Stuart Edwards

From: Zuidema, Byron - ETA
Sent: Tuesday, October 27, 2015 7:58 AM .
Required: Zuidema, Byron - ETA; Lahrman, Lisa L. - ETA; Edwards, John S - ETA
Subject: QUICK CHAT: I.T.
When: Tuesday, October 27, 2015 4:00 PM-4:30 PM.
Where: Byron's Office; S-2321

Whistleblower Reprisal More Details: What specific information do you have to support your belief that the agency took or failed to take the action(s) about which you complain because of the victim's disclosure?
EEO Complaints

Whistleblower Reprisal More Details: What specific information do you have to support your belief that the personnel action was not justified?
Prohibited Personnel practices

Whistleblower Reprisal Complaints Filed: Union
no

Whistleblower Reprisal Complaints Filed: Date Union Grievance Filed

Whistleblower Reprisal Complaints Filed: Union Grievance Outcome

Whistleblower Reprisal Complaints Filed: agency
no

Whistleblower Reprisal Complaints Filed: Date agency Grievance Filed

Whistleblower Reprisal Complaints Filed: agency Grievance Outcome

Whistleblower Reprisal Complaints Filed: EEO
no

Whistleblower Reprisal Complaints Filed: Date EEO Grievance Filed

Whistleblower Reprisal Complaints Filed: EEO Grievance Outcome

Whistleblower Reprisal Complaints Filed: MSPB
no

Whistleblower Reprisal Complaints Filed: Date MSPB Grievance Filed

Whistleblower Reprisal Complaints Filed: MSPB Grievance Outcome

Please use this page to describe additional incidents related to the PPP Category you have chosen.
As a senior management official in the U.S. government and Supervisory IT Specialist GS-15-2210 / Step 10 at the Department of Labor with only 3.5 years total federal employee service in two agencies and a strong reputation for exceptional performance and expertise in technology management, I am officially notifying each of you that you have intentionally committed prohibited personnel practices that are frequently repeated at the Department of Labor by egregiously retaliating against me for filing

EEO complaints with Vanessa Hall at the U.S. Department of Labor, OASAM/Office of Equal Opportunity and James Anderson at the U.S. Department of Labor, Civil Rights Center / Office of Internal Enforcement.

I have provided substantial evidence to you and Vanessa Hall and James Anderson in writing through the prescribed complaint processes and in person that proves Lisa Lahrman, Byron Zuidema, and Aung Htein have actively participated together in a conspiracy to systematically discriminate against some African Americans that work for me in violation of federal laws, rules, and regulations, and that all of you have prior knowledge prior to executing this action of reprisal to reassign me laterally to the position of Special Assistant, GS-2210-15 effective Sunday, November 1, 2015. Your action intentionally strips me of my supervisory and management position for which I am critically needed to implement WIOA legislation with the specific intent to remove me from being able to protect the civil rights of my employees so that you can continue to intimidate and discriminate against them with me out of the way as you have for many years. Like school yard bullies, you want to show everyone by this action that you are not to be messed with and if anyone stands up to you they will be destroyed.

I also have proof that you are utilizing and have been provided unlimited access to federal legal resources at the Department of Labor that are funded by taxpayers for your own personal use to include the services and advice of James Blair in the Solicitor's Office and his staff with the intent to shield you from liability for your illegal actions, to protect you from disciplinary actions, and to assist you with carrying out your conspiracy to discriminate against African Americans and retaliate against me without any fear of being caught or held accountable under the law.

The attachments are further evidence that you have knowledge of these reports and have discussed them with me, and the below email correspondence is evidence of your egregious actions and denial of my request for due process by disallowing me any reasonable opportunity to consult with an attorney to protect my rights and to protect my reputation.

If you are permitted by the Secretary of Labor to carry out this prohibited personnel action on Sunday, November 1, 2015, then my good reputation will be damaged by you and this agency, and my prospects for future employment at or above my current level in the Department of Labor and the federal government will be severely crippled - or destroyed. I have not held a non-supervisory and non-management position in an organization for 35 years and I do not intend to start now just because I work for a corrupt federal agency that discriminates and retaliates with impunity and at-will against employees while its leaders turn a blind eye.

In accordance with 5 USC § 2302(b), any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority take or threaten to take a personnel action because of any disclosure of information by an employee which the employee reasonably believes evidences a violation of any law, rule, or regulation.

Lisa Lahrman's email @ Thursday, October 29, 2015 3:32 PM below is evidence that you all have exercised that authority.

Further, I have learned today that Lisa Lahrman is notorious in the Washington EEO legal circles for being permitted by her supervisors to boldly violate federal law using taxpayer funded federal legal resources to obfuscate her discriminatory actions and retaliate at-will against employees who make protected disclosures she wishes to conceal.

Pursuant to 5 U.S.C. § 1215(a)(3), disciplinary action consisting of removal, reduction in grade, debarment from Federal employment for a period not to exceed 5 years, suspension, reprimand, or an assessment of a civil penalty not to exceed $1,000 can be taken against any employee for having committed a prohibited personnel practice.

You have intentionally committed prohibited personnel practices that are frequently repeated at the Department of Labor by egregiously retaliating against me for filing EEO complaints.

I request that all the Federal Officials on this email with responsibility for receiving reports of Whistleblower Retaliation against an employee for making a protected disclosure immediately take all steps necessary today to halt this prohibited personnel action and help me protect my good reputation until such time as a full investigation into my complaints of discrimination and retaliation by Lisa Lahrman, Byron Zuidema, Aung Htein, Crystal Kelly and Sabrina Lewis is completed. Further, I request that these individuals be ordered in writing immediately to stop retaliating against me and others; that they be removed immediately from the management chain of the people they are oppressing; that they be officially denied the continued unlimited use of taxpayer funded legal services that I am not being allowed; and that these individuals be required, if they choose to, obtain private legal counsel like I must do at great personal expense. Finally, I request that these employees receive substantial disciplinary action when they are found guilty of violating federal law up to and including termination from federal employment or even prison for such egregious and heinous acts to the maximum extent allowed under the law.

Appx54

Equal employment opportunity is about fairness to me and it is the law. I am a white man who had the courage to stand up for the civil rights of African Americans that I supervise who are being discriminated against, and I believe it is time the American people and senior leaders in government wake up and take back their government – a government that has been corrupted and overrun by career federal bureaucrats like you who only care about personal power and care nothing about the services and products that hard working federal workers like me and my employees were hired to provide. Your cavalier attitudes and unfettered willingness to treat people so unfairly and without any respect is tantamount to cruel and unusual punishment for the emotional stress and anxiety you cause in your subordinates and the people you were hired to serve.

This information has been shared with third parties.

With all hope for God's Intervention and Grace,

John Stuart Edwards
Deputy Director
Office of Information Systems and Technology
Employment and Training Administration
U.S. Department of Labor
(202) 693-3816

---

Required Signature
JohnStuartEdwards

---

Consent Statement

Consent Statement 1
*I consent* to OSC's communication with the agency involved in my complaint. I agree to allow OSC to disclose my identity as the complainant, and information from or about me, to the agency if OSC decides that such disclosure is needed to investigate the allegation(s) in my complaint (for example, to request information from the agency, or seek a possible resolution through mediation or corrective action). I understand that regardless of the Consent Statement I choose, OSC may disclose information from my complaint file when permitted by the Privacy Act (including circumstances summarized in Part 5, below).

---

Consent Statement Signature
JohnStuartEdwards

Attorney Email: Email
_____

Other sources(s) (please explain):
_____

Please identify the U.S. government department or agency involved in your
disclosure
Department of Labor
_____

Please identify the organizational unit of the department or agency involved
Employment and Training Administration
_____

Address of the organizational unit
200 Constitution Avenue, Washington D.C.
_____

Please identify the type of agency wrong doing that you are alleging
Violation of law, rule or regulation
_____

Violation of law, rule or regulation (please specify):
5 USC § 2302(b))
_____

Please identify the type of agency wrong doing that you are alleging
Gross mismanagement
_____

Please identify the type of agency wrong doing that you are alleging
_____

Please identify the type of agency wrong doing that you are alleging
Abuse of authority
_____

Please identify the type of agency wrong doing that you are alleging
_____

Please identify the type of agency wrong doing that you are alleging
_____

Please describe the agency wrong doing that you are disclosing
Systemic Discrimination of some African American Employees in the Department of
Labor, Employment and Training Administration, Office of Information Systems and
Technology and active retaliation and reprisals against employees who report EEO
violations by using prohibited personnel practices (5 USC § 2302(b)) by the Secretary
of Labor.

The Secretary of Labor and senior officials in the U.S. Department of Labor with
responsibility for receiving reports of Whistleblower Retaliation and providing EEO

protections for an employee making multiple protected disclosures are not protecting employee rights by allowing retaliation through prohibited personnel practices.

The Secretary of Labor intentionally commits prohibited personnel practices that are frequently repeated at the Department of Labor by senior officials against employees who make EEO complaints.

The U.S. Department of Labor Office of Equal Opportunity does not protect the rights of employees who report discrimination of African American Employees and permit active retaliation by turning a blind eye to prohibited personnel practices being performed by the Secretary of Labor and senior officials in the U.S. Department of Labor.

The U.S. Department of Labor, Civil Rights Center Office of Internal Enforcement does not protect the rights of employees who report discrimination of African American Employees and permit active retaliation by turning a blind eye to prohibited personnel practices being performed by the Secretary of Labor and senior officials in the U.S. Department of Labor.

The Secretary of Labor provides senior officials in the U.S. Department of Labor who commit discrimination of African American Employees unlimited access to federal legal resources at the Department of Labor that are funded by taxpayers for their own personal use to shield them from liability for their illegal actions, to protect them from disciplinary actions, and to assist them with carrying out a long standing tradition of discrimination against African Americans, and to retaliate against anyone who reports EEO violations, without any fear of being caught or held accountable under the law.

Other Actions You Are Taking On Your Disclosure: Inspector General of department / agency involved

Other Actions You Are Taking On Your Disclosure: Inspector General of department / agency involved Date

Other Actions You Are Taking On Your Disclosure: Other office of department / agency involved

Other Actions You Are Taking On Your Disclosure: Other office of department / agency involved Date

Other Actions You Are Taking On Your Disclosure: Other office of department / agency involved Text

Other Actions You Are Taking On Your Disclosure: Department of Justice

Other Actions You Are Taking On Your Disclosure: Department of Justice Date

Other Actions You Are Taking On Your Disclosure: Other Executive Branch / department / agency

Other Actions You Are Taking On Your Disclosure: Other Executive Branch / department / agency Date

Other Actions You Are Taking On Your Disclosure: Other Executive Branch / department / agency Text

Other Actions You Are Taking On Your Disclosure: General Accounting Office (GAO)

Other Actions You Are Taking On Your Disclosure: General Accounting Office (GAO)

Other Actions You Are Taking On Your Disclosure: Congress or congressional committee

Other Actions You Are Taking On Your Disclosure: Congress or congressional committee Date

Other Actions You Are Taking On Your Disclosure: Congress or congressional committee Text

Other Actions You Are Taking On Your Disclosure: Press / media (newspaper, television, other)

Other Actions You Are Taking On Your Disclosure: Press / media (newspaper, television, other) Date

Other Actions You Are Taking On Your Disclosure: Press / media (newspaper, television, other) Text

Other Actions You Are Taking On Your Disclosure: what is the current status of the matter?
No action has been taken by the Secretary of Labor

**Consent**
I consent to disclosure of my name

**Signature**
JohnStuartEdwards

**Status**
Current Federal Employee

**Outreach: How did you first become aware that you could file a complaint with OSC?**
Co-Worker

**I know about the information I am disclosing here based on (check all that apply)**
I have personal and/or direct knowledge of events or records involved

**I know about the information I am disclosing here based on (check all that apply)**
Other employees have told me about events or records involved

**U.S. Department of Labor**     Office of the Assistant Secretary
for Administration and Management
Washington, D.C. 20210



November 17, 2015

MEMORANDUM FOR JOHN S. EDWARDS
                Special Assistant
                Office of Information Systems and Technology
                Employment and Training Administration
                Washington, DC

FROM:          BETTY A. LOPEZ
                Equal Employment Opportunity
                Program Manager

SUBJECT:        Allegation of Harassing Conduct

This memo concerns your email message, dated and received in this office on October 13, 2015, in which you alleged systemic discrimination by management officials Aung Htein, Lisa Lahrman, and Byron Zuidema against African-American employees. Specifically, you alleged the following:

- Aung Htein, Lisa Lahrman, and Byron Zuidema have engaged in and condoned racial discrimination to deny opportunities for career advancement against many African-American employees in the Department of Labor, Employment and Training Administration, Office of Information Systems and Technology.

- An African-American employee applied for a promotion and was placed on the certificate of eligibles for the hiring official. Aung Htein, Lisa Lahrman, and Byron Zuidema placed an indefinite delay on hiring the employee. There is no indication that the employee will ever have the opportunity to fill the position.

- An African-American employee is actively being targeted by Aung Htein, who he believes is planning to not extend his employment beyond his probationary period, despite the fact that he is performing in a highly successful manner.

- Your duties were removed, allegedly in retaliation, after you complained to your upper-management chain of your notice of intent to leave ETA/OIST; and a follow-up e-mail you received from management responding to your notice, which addressed how they will handle your workload prior to your departure. You believe this contingency plan to be retaliatory.

The DOL Policy and Procedures for Preventing and Eliminating Harassing Conduct in the Workplace, DLMS-4, Chapter 700 ("The Policy") is intended to assure that DOL is taking all

Appx60

necessary steps to prevent sexual harassment and other forms of harassing conduct in the workplace, and to correct harassing conduct that does occur before it becomes severe or pervasive. The Policy defines harassing conduct as any unwelcome verbal or physical conduct based on an employee's race, sex, color, religion, national origin, age, disability, parental status, genetic information, or sexual orientation, when the conduct either 1) can reasonably be considered to adversely affect the work environment; or 2) results in an employment decision affecting the employee and is based upon the employee's acceptance or rejection of such conduct. Chapter 703 of the Policy states in pertinent part that, *"The Department has determined that the most effective way to limit harassing conduct is to treat it as misconduct, even if it does not rise to the level of harassment actionable under Title VII of the Civil Rights Act of 1964, as amended. A hostile environment claim under Title VII usually requires showing a pattern of offensive conduct. The Department will not wait for such a pattern to emerge. Rather, the Department will act before the harassing conduct is so pervasive and offensive as to constitute a hostile environment. In the usual case, a single utterance of an ethnic, sexual, or racial epithet that offends an employee would not be severe enough to constitute unlawful harassment in violation of Title VII; however, it is the Department's view that such conduct is inappropriate and must be stopped."*

We carefully reviewed your allegations and determined that they will not be accepted for investigation by this office under the Department's Harassing Conduct Policy for the following reasons:

1. **Protected Category** – You have failed to cite to your protected class (race, sex, color, religion, national origin, age, disability, parental status, genetic information, or sexual orientation) as the pretext for the alleged incidents of harassment. More importantly, you have not explained how the alleged incidents have adversely impacted you based on your protected status.

2. **Alleged Incidents** – You alleged a systemic pattern and practice of discrimination. For example, you alleged that ETA management officials are not hiring, promoting or retaining qualified African Americans. But, you have provided no evidence to support your claim or the names of employees adversely affected by this systemic pattern of discrimination or disparate treatment. Therefore, you failed to establish "any unwelcome verbal or physical conduct... [that] can reasonably be considered to adversely affect the work environment.

3. **Retaliation** – You alleged your duties were removed in retaliation after you complained to management about employees being treated unfairly and notified them of your intent to work someplace else. Under the HCI Policy, *"An employee may file a complaint alleging harassment on the basis of reprisal or retaliation when the acts of reprisal are directly related to an employee's participation in the Harassing Conduct Policy process. When an employee experiences reprisal or retaliation as a result of participation in Federal Equal Employment Opportunity (EEO) or a union grievance process, s/he may pursue his or her reprisal complaint under the respective complaint process already initiated."* According to an email, dated September 3, 2015 from you to management, you announced your decision to leave your position for another position in ETA or another federal agency, or possibly for retirement. You asked that management provide

2

Appx61

input which would dictate the timing of your departure. ETA responded with its contingency plan in preparation for your departure. This meeting preceded the filing of your harassing conduct complaint on October 13, 2015. In addition, ETA's actions in responding to your request to be moved to another position are not considered retaliatory under the harassment policy.

On October 13, 2015, Vanessa Hall of my staff sent you an e-mail which provided you with information regarding your right to file an EEO complaint, time limitations and contact information for the Civil Rights Center (CRC). I understand that you have since filed a complaint with CRC. I have also become aware that your request for reassignment was granted by ETA on October 29, 2015 and that you are no longer in the environment which you opposed.

If you are experiencing difficulty in managing the stress and tribulations of the workplace, you may consider the services offered by the Employee Assistance Program (EAP). The program allows employees to speak with a professional who can guide them and provide appropriate assistance to resolve issues which may be affecting performance in the workplace. EAP services are free and confidential, and the information will only be released with written permission of the employee, except as required by law. Supervisors are encouraged to adjust work schedules, if needed, to allow employees to attend these counseling sessions. You may visit the EAP website at www.FOH4you.com, or call them at 1-800-222-0364 for more information.

If you have any questions regarding this determination, please contact Vanessa Hall of my staff on (202) 693-4054.

2

Appx62

*Broida and Associate*

| | |
|---|---|
| Attorneys | 1840 Wilson Blvd., Suite 203 |
| | Arlington, VA  22201 |
| Peter Broida | Tel. (703) 841-1112 |
| Darshan Sheth (admitted MD & DC only) | Fax (703) 841-1006 |
| | peterbroida@broidalaw.com |
| | dsheth@broidalaw.com |

November 12, 2015

Mr. James Booker
Complaints Examiner
U.S. Office of Special Counsel
Complaints Examining Unit
1730 M St., N.W.
Suite 201
Washington, D.C. 20036

　　　*Re: John Edwards, MA-16-0528*

Dear Mr. Booker:

We represent John Edwards in his reprisal case against the U.S. Department of Labor (DOL). We understand that you are assigned to review this matter. We write now to request that the U.S. Office of Special Counsel (OSC) immediately seek a stay of Mr. Edwards' recent reassignment from Deputy Director, Office of Information Security and Technology (OIST), to non-supervisory Special Assistant, and of DOL's recruitment action to fill Mr. Edwards' former position. The stay may be obtained through an informal arrangement with DOL or through a formal stay petition filed with the U.S. Merit Systems Protection Board (MSPB).

There are strong factors compelling OSC action in this case. DOL reassigned Mr. Edwards shortly after he initiated an EEO complaint alleging systemic discrimination against African-Americans in his office (Mr. Edwards is Caucasian). Unlike most whistleblower retaliation cases, here we have a statement by a high-level executive directly linking Mr. Edwards' reassignment to his protected activities. Based on this statement alone, there are reasonable grounds to believe that a prohibited personnel practice occurred, which is the legal standard required by the MSPB to grant a stay petition.

Mr. Edwards joined DOL in 2014 following a successful career in the private sector. He has held high-level managerial and supervisory positions for over 30 years. Within months of arriving at DOL, Mr. Edwards sensed that his supervisors, Lisa Lahrman, Acting Administrator and Administrative Officer, and Aung Htein, Director, OIST, were prejudiced against African-American employees, particularly in the areas of

Appx63

assignments, opportunities, and promotions.

Although Mr. Edwards observed several instances of racial discrimination against African-Americans, there is one example that he found particularly troubling. Following an open competition for a GS-14 Supervisory IT Specialist position, Mr. Htein and Ms. Lahrman refused to allow the selection of Darryl McDaniel, an outstanding African-American employee, even though Mr. McDaniel was already performing several aspects of the job, it was a critically important position, he scored highly for the position and was the only person on the certificate of eligibles, and the recommending and selecting officials strongly supported his candidacy. Mr. Edwards found it incomprehensible that upper management would not promote such a dedicated and deserving employee as Mr. McDaniel.

Frustrated and convinced that Ms. Lahrman and Mr. Htein discriminated against Mr. McDaniel and other African-American employees, Mr. Edwards contacted an EEO counselor in mid-October 2015.

The retaliation against Mr. Edwards manifested in force at an October 27, 2015, meeting with Ms. Lahrman and Byron Zuidema, Deputy Assistant Secretary, Employment and Training Administration. Remarkably, Ms. Lahrman repeatedly stated at the meeting that she reassigned Mr. Edwards because of his EEO complaint. Although Mr. Edwards protested that her actions constitute retaliation, Ms. Lahrman was unmoved. Mr. Edwards noticed that Mr. Zuidema seemed very uncomfortable with what Ms. Lahrman was saying but he did not stop her. After the meeting, Mr. Zuidema asked Ms. Lahrman to stay, possibly to discuss her comments. He also tried to distance himself from Ms. Lahrman, later sending Mr. Edwards an email emphasizing that he was not previously aware of Mr. Edwards' EEO allegations and that he typically is not made aware of such activity until a formal complaint is filed. Notably, Mr. Zuidema copied a DOL attorney on his email to Mr. Edwards.

DOL recently posted Mr. Edwards' former OIST Deputy Director position on USA Jobs. He is concerned that it will be very difficult for him to resume that role once it is filled with someone else. He is also devastated by the loss of his staff, his budget, his supervisory and decision-making authority, and his stature within the organization.

The law grants OSC the authority to seek stays of personnel actions from the MSPB. OSC's internal stay policy provides guidance as to how that authority will be exercised. Based on Ms. Lahrman's statement alone, OSC has reasonable grounds to believe that a prohibited personnel practice occurred, which meets the legal standard required by the MSPB to grant a stay petition. And while non-geographic reassignments and the subsequent recruitment for the previous position are not listed as examples of immediate and substantial harm under OSC's stay policy, there is a very strong possibility that is exactly what will happen to Mr. Edwards without immediate intervention.

2

Appx64

Additionally, the provision that OSC generally cites to defer EEO allegations, 5 CFR 1810.1, does not preclude it from acting here. The regulation is premised on avoiding the duplication of processes. Yet there can be no duplication in this circumstance because OSC has exclusive authority to seek stays of personnel actions in retaliation cases. No such option is available under EEO processes. As a result, if OSC cites its general EEO deferral policy as a basis not to act in a case where there are clearly reasonable grounds to believe a prohibited personnel practice occurred, it effectively abdicates part of its statutory responsibilities.

We are confident that once you review the facts in this matter, you will concur that this is an urgent circumstance warranting OSC's intervention. To protect Mr. Edwards' reputation, career, earning potential, and health – and to send a strong message that OSC will not stand for what appears to be blatant retaliation – we implore OSC to immediately stay his reassignment, allowing him to resume as OIST Deputy Director, and to place a hold on DOL's recruitment for the position while his retaliation allegations are investigated.

We stand ready to provide any assistance OSC may need.

Sincerely,

Darshan A. Sheth

3

Appx65



U.S. OFFICE OF SPECIAL COUNSEL
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
(202) 254-3600

November 13, 2015

Mr. John S. Edwards
c/o Darshan Sheth, Esq.
Broida & Associate
1840 Wilson Blvd., Suite 203
Arlington, VA 22201

Re: OSC File No. MA-16-0528

Dear Mr. Edwards:

This letter is in response to the above referenced complaint you submitted to the U.S. Office of Special Counsel (OSC) against the Department of Labor (DOL). You allege that DOL officials have subjected African American employees to discrimination. You also allege that agency officials reassigned you to the position of Special Assistant, GS-2210-15, and subsequently posted your previous position on USAJobs in reprisal for disclosing such discrimination. You ask that we seek a stay of management's actions.

The U.S. Office of Special Counsel is authorized to investigate allegations of prohibited personnel practices and activities prohibited by civil service law, rule, or regulation. 5 U.S.C. §§ 1214(a)(1)(A), 1216(a) and 2302(b). The Special Counsel presents allegations of prohibited personnel practices to the Merit Systems Protection Board (the Board), which has the authority to hear and adjudicate such matters.

Based on our evaluation of the facts and law applicable to your circumstances, we have made a preliminary determination to close the file in this matter and not seek a stay of your reassignment and the posting of your previous position. Our factual and legal determinations are as follows:

First, you complain that management has subjected African American employees to discrimination. Discrimination based on race is a prohibited personnel practice. 5 U.S.C. § 2302(b)(1). As noted in OSC's regulation at 5 C.F.R. § 1810.1, however, it was not intended that this office duplicate or bypass the procedures established in the agencies

U.S. Office of Special Counsel                                                                    2
Edwards, John; MA-16-0528

and the Equal Employment Opportunity Commission for resolving such allegations. It is
the policy of the Special Counsel not to take action on such allegations, as they are more
appropriately resolved through the Equal Employment Opportunity process. Therefore,
we are unable to take further action on your allegation of discrimination.

Next, you allege reprisal for your whistleblowing activity. Specifically, you allege
that agency officials reassigned you to the position of Special Assistant, GS-2210-15, and
subsequently posted your previous position on USAJobs in reprisal for reporting
discrimination of African American employees.

Under 5 U.S.C. § 2302(b)(8), it is prohibited for an official with personnel action
authority to take, fail to take, or threaten to take a personnel action against an employee
for disclosing information which the employee reasonably believes evidences: (1) a
violation of law, rule, or regulation; (2) gross mismanagement; (3) a gross waste of funds;
(4) an abuse of authority; or (5) a substantial and specific danger to public health or
safety.

Your disclosures concerning racial discrimination can be viewed as reports of a
violation of law prohibited by Title VII. However, the Board has held that complaints of
discrimination is not activity that would be protected under 5 U.S.C. § 2302(b)(8).
Rather, it is more appropriately handled under 5 U.S.C. § 2302(b)(9).

Section 2302(b)(9)(A) prohibits taking or failing to take, or threatening to take or
fail to take, a personnel action against an employee for filing a discrimination complaint.
It is the policy of the OSC, however, to defer allegations of reprisal for engaging in this
type of protected activity to the dispute resolution procedures established by the agencies
and the Equal Employment Opportunity Commission to avoid duplication of those
procedures. 5 C.F.R. § 1810.1. Therefore, it is the general policy of the Special Counsel
not to take action on such allegations, as they are more appropriately resolved through the
EEO process. Thus, because your reports of racial discrimination do not constitute
protected disclosures within the meaning of section 2302(b)(8), and because of our
deferral policy described above, we have no basis for further inquiry into your complaint
as possible violations of 5 U.S.C. §§ 2302(b)(8) or b(9)(A), and have made a
determination not to seek a stay of your reassignment and the posting of your previous
position.

As indicated above, we have made a preliminary determination to close our inquiry
into your complaint based on the reasons we cited for each of the allegations you have
made. However, before we actually close the file, we will give you an opportunity to
submit any comments you may wish to make concerning our determination. Your
response must be in *writing* and should address each of the reasons we cited in reaching
our preliminary determination to close your complaint. You have *13 days* from the date
of this letter to submit your written response. If we do not receive any comments by the
end of the 13-day period, we anticipate closing this file and will send you a letter

U.S. Office of Special Counsel
Edwards, John; MA-16-0528

3

terminating the investigation along with an Individual Right of Action (IRA) letter that you may file with the Merit Systems Protection Board for corrective action.

Sincerely,

James S. Booker
Complaints Examiner
Complaints Examining Unit



**U.S. OFFICE OF SPECIAL COUNSEL**
1730 M Street, N.W., Suite 218
Washington, D.C. 20036-4505
202-254-3600

NOV 2 0 2015

Mr. John S. Edwards
c/o Darshan Sheth, Esq.
Broida & Associate
1840 Wilson Blvd., Suite 203
Arlington, VA 22201

Re: OSC File No. MA-16-0528

Dear Mr. Edwards:

The purpose of this letter is to notify you that you have a right to seek corrective action from the Merit Systems Protection Board (MSPB).[1] As we informed you in our closure letter of this date, we have terminated our inquiry into your allegations. Specifically, you alleged that Department of Labor officials reassigned you and posted your previous position on USAJobs in reprisal for making reports of racial discrimination. Because you alleged that you were the victim of the prohibited personnel practice described in 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D), commonly called reprisal, you may have the following rights.

You may seek corrective action from the MSPB under the provisions of 5 U.S.C. §§ 1214(a)(3) and 1221 (individual right of action) for any personnel action taken or proposed to be taken against you because of a protected disclosure that was the subject of your complaint to this office. You may file a request for corrective action with the MSPB within 65 days after the date of this letter.

The Merit Systems Protection Board regulations concerning rights to file an individual right of action with the Board can be found at 5 C.F.R. Part 1209. If you choose to file such an appeal you should submit this letter to the Board as part of your appeal. Therefore, *it is*

---

[1] Although an appellant bringing an individual right of action (IRA) appeal to the MSPB must show that he or she has exhausted OSC procedures, OSC's decision to close its investigation may not be considered in an IRA appeal. *See* 5 U.S.C. § 1221(f)(2); *Bloom v. Dep't of the Army*, 101 M.S.P.R. 79, ¶ 10 (2006). The MSPB may order an appellant to submit a copy of OSC's determination letter, but the order must contain an explanation of why the letter is necessary and give the appellant the opportunity to consent. *See* 5 U.S.C. § 1214(a)(2)(B); *Bloom*, 101 M.S.P.R. 79, at ¶ 10.

U.S. Office of Special Counsel
Edwards, John; MA-16-0528
Page 2

*Important that you retain a copy of this letter* if you intend to file a request for corrective action with the MSPB.

Sincerely,

James S. Booker
Complaints Examiner
Complaints Examining Unit



# MERIT SYSTEMS PROTECTION BOARD
## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

OMB No.  3124-0009

1. Name (last, first, middle initial)

   Edwards, John, S.

2. Present Address (number and street, city, state, and zip code)

   Address: ███████████

   City, State, Zip Code: ██████████████████████

3. Telephone numbers (include area code) and E-Mail Address

   You must notify the Board in writing of any change in your telephone number(s) or e-mail address while your appeal is pending.

   Home: ███████          Work:

   Fax:                            Cell:

   E-mail Address: ██████████          Other Phone Type:

4. Do you wish to designate an individual or organization to represent you in this proceeding before the Board? (You may designate a representative at any time. However, the processing of your appeal will not normally be delayed because of any difficulty you may have in obtaining a representative.)

   [✓] Yes                                                      [ ] No

5. Name, address, and telephone number of the agency that took the action or made the decisions you are appealing (include bureau or division, street address, city, State and Zip code)

   Agency Name:        Department of Labor
   Bureau:             Employment and Training Administration
   Address:            200 Constitution Ave., NW

   City, State, Zip code:  Washington, District of Columbia, 20210, United States of America
   Agency Phone:

6. Your Federal employment status at the time of the decision or action you are appealing:

   [ ] Temporary    [✓] Permanent    [ ] Applicant
   [ ] Term         [ ] Retired      [ ] Seasonal
   [ ] None

7. Type of appointment (if applicable)

   [✓] Competitive    [ ] SES      [ ] Excepted
   [ ] Postal Service [ ] Other

8. Your occupational series, position title, grade, and duty station at the time of the decision or action you are appealing (if applicable):

   Occupational Series or Cluster:  GS-2210
   Grade or Pay Band:  GS-15
   Position Title:  Deputy Director
   Duty Station:  DC

9. Are you entitled to veteran's preference? See 5 U.S.C. 2108.

   [ ] Yes    [✓] No

10. Length of Government Service (if applicable):

    2  Years          Months

11. Were you serving a probationary, trial, or initial service period at the time of the action or decision you are appealing?

    [ ] Yes    [✓] No

Appx71

Appeal Number:  201506946
Submission Date:  12/17/2015 11:51:01 AM

MSPB Form 185-1, Page 1 (i/13/201:)
5 CFR Parts 1201, 1208, and 1200



# MERIT SYSTEMS PROTECTION BOARD

## Appeal Form--Appellant and Agency Information

*Please type or print legibly.*

**HEARING:** You may have a right to a hearing before an administrative judge. If you elect not to have a hearing, the administrative judge will make a decision on the basis of the submissions of the parties. Do you want a hearing?

12. Do you want a hearing?    ☑ Yes    ☐ No

**E-Filing:** Registration as an E-Filer enables the appellant to file any or all of his/her pleadings with the Board in electronic form. Registration also means he/she consent to accept service of all pleadings filed by other registered E-Filers and all documents issued by the Board in electronic form. he/she will receive these as PDF documents at the e-mail address you provided the Board. If registered as an E-Filer, he/she may file any pleading, or portion of a pleading, by non-electronic means. The appellant can withdraw his/her registration as an e-filer at any time.

13. Do you wish to register the appellant as an E-Filer in this appeal?

☑ Elect to E-file for appellant    ☐ Decline to E-file for appellant

14. I certify that all of the statements made in this form and all attached forms are true, complete, and correct to ☐ the best of my knowledge and belief.

Peter  Broida, Appellant's Representative                          Date:

Appeal Number:  **201506946**

MSPB Form 185-1, Page 2 (i/13/201:)
Submission Date: **12/17/2015 11:51:01 AM**    5 CFR Parts 1201, 1208, and 1209



# MERIT SYSTEMS PROTECTION BOARD
## Designation of Representative Form

A representative helps and counsels a party in the preparation, presentation, or defense of the case. The representative appears with, or for, the party at hearings, settlement discussions, teleconferences, or other proceedings before the Board. The representative does not have to be an attorney. You may proceed without a representative and represent yourself. You may use this form to designate an organization or a person who has agreed to represent you in your case before the Board. **If you are representing yourself, you do not need to fill out this form.** (The Board's regulations on representatives are found at **5 CFR 1201.31.**) By designating a representative, you agree to allow the Board to give your representative all information concerning the appeal.

The address and telephone number of the representative must be correct so that all communications are received on time by the representative. **Any changes of this designation must be sent in writing to the MSPB office handling the case and to the other party.**

**If you file this designation WITH your appeal, the Board will send a copy of the designation, along with a copy of your appeal, to the other party. If you file this designation AFTER you have filed your appeal, you MUST send a copy to the other party and you MUST send proof to the Board that you have sent a copy to the other party.**

---

*Please type or print legibly.*                                                OMB No.   3124-0009

**DESIGNATION:** The individual or organization named below is hereby designated to represent:

NAME AND ADDRESS OF APPELLANT:

"I hereby designate  Broida, Peter  to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. **I understand that any limitation on this settlement authority must be filed in writing with the Board.**"

| Representative's address (number and street, city, State and Zip | Representative's telephone numbers (include area code) |
|---|---|
| Address:    Suite 203 | Office:    (703) 841-1112 <br> Fax:    (703) 841-1006 <br> Other: <br> Other Phone Type: |
| City, State, Zip code:    Arlington, Virginia, 22201, United States | |
| Representative's employer name: | E-mail Address:    peterbroida@gmail.com |
| Representative's Entity Type: Private Attorney | |

Service Method for Representative :

☑ Electronic Filing          ☐ US Postal Mail

John S. Edwards

| Appellant's Signature | Date |
|---|---|

Please send this form with your appeal if you are designating a representative. If you do so after you have filed your appeal, send this form to the Board office where your appeal is pending, and provide a copy to the other party. Board regulations require that all copies of your communications with the Board after an appeal has been filed be served on the other party.

Appx73

Appeal Number:  **201506946**

Submission Date:  **12/17/2015 11:51:01 AM**

Confirmation Number:  **191470**

MSPB Form 185-4 (3/13/2013)
5 CFR Parts 1201, 1208, and 1209

NATURE OF APPEAL

This is an Individual Right of Action appeal brought to correct a reassignment and significant change of duties resulting from whistleblowing reprisal. OSC administrative remedies were exhausted. The nature of the case, disclosures, reprisal, and corrective action sought are describing in an accompanying narrative.

John Edwards IRA Appeal
Narrative Statement

I.　　Summary

Appellant, a Labor Department competitive service manager, made two protected disclosures:

1.　　Through conversation with his supervisors, he told them that they were interfering with and discriminatorily blocking employees' promotion or advancement and,

2.　　Appellant initiated a third-party EEO complaint in which he informed an Agency EEO counselor of the information concerning that discrimination, in accordance with the federal sector EEO processes at 29 CFR Part 1614.

For his trouble, management swiftly retaliated against Appellant by significantly altering his duties through a reassignment.

The disclosures, both of abuse of authority and discrimination, were protected, they were known by the managers who acted to change Appellant's duties and reassign him, the reprisal was the basis of an IRA complaint to OSC with a resultant closeout and timely Board appeal. As a remedy, Appellant wants his original duties back, compensatory damages, counsel fees, referral of the Board decision to OSC for consideration of disciplinary action against the responsible management officials, and a public posting at the Agency of its commitment to refrain from whistleblower reprisal.

II.　　The Appellant

John Edwards, an employee of DOL, is the former GS-15 Deputy Director of the Office of Information Systems and Technology (OIST), Employment and Training Administration (ETA), Department of Labor (DOL), with direct supervisory responsibility for approximately 50 federal staff and 100 contractors. Mr. Edwards joined DOL in 2013 following a successful career in the private sector. He has held high-level managerial and supervisory positions for over 30 years.

III.    Protected Activities

Within months of arriving at DOL, Mr. Edwards came to the belief that his supervisors, Lisa Lahrman, Acting Administrator and Administrative Officer, and Aung Htein, Director, OIST, were prejudiced against African-American employees, particularly in the areas of assignments, opportunities, and promotions. Mr. Edwards disclosed and protested what he perceived as discriminatory practices to Mr. Htein and Ms. Lahrman beginning in September 2015 and continuing through October 2015, and he filed an EEO complaint alleging racial discrimination against OIST's African-American staff (Mr. Edwards is Caucasian) in mid-October 2015. Effective November 1, 2015, DOL reassigned Mr. Edwards to a non-supervisory Special Assistant position with very few duties.

Although Mr. Edwards complained generally about racial discrimination against African-Americans in OIST, there is one situation he found particularly troubling. In July 2015, following an open competition for a GS-14 Supervisory IT Specialist position (Job Announcement No. MS-15-ETA-OMAS-084), Mr. Edwards complained to Mr. Htein and Ms. Lahrman about their refusal to allow the selection of Darryl McDaniel, an outstanding African-American OIST employee, even though Mr. McDaniel was already performing several aspects of the job, it was a critically important position, he scored highly for the position and was the only person on the certificate of eligibles, and the recommending and selecting officials strongly supported his candidacy. Mr. Htein and Ms. Lahrman refused even to consider a temporary promotion for Mr. McDaniel despite Mr. Edwards' representation that Mr. McDaniel was already performing work at a higher grade level. Mr. Edwards found it irrational that Ms. Lahrman would not agree to advance the career of so dedicated and deserving employee as Mr. McDaniel.

Mr. Htein and Ms. Lahrman were aware of Mr. Edwards' belief that Ms. Lahrman was improperly and discriminatorily blocking the advancement of Mr. McDaniel. On September 1, 2015, Mr. Htein came to Mr. Edwards' office and said Mr. Edwards needed to "stop making noise" that Ms. Lahrman did not want to select Mr. McDaniel for the GS-14 Supervisory IT Specialist position because he is black. Mr. Edwards refused, said he felt it was due to Ms. Lahrman's racism, and that Mr. Htein should stand up for Mr. McDaniel. At one point during the conversation, Mr. Htein asked Mr. Edwards to lie and to say

that the Supervisory IT position did not need to be filled. Mr. Edwards strongly disagreed with this notion and he refused to go along with Mr. Htein's suggestion. When Mr. Edwards reiterated his belief that Ms. Lahrman's desire not to hire Mr. McDaniel was motivated by race, Mr. Htein said he did not care. Mr. Htein then told Mr. Edwards that if he kept quiet and waited for a few months, there might be organizational changes that would result in some of them becoming members of the Senior Executive Service.

On September 17, 2015, Mr. Edwards met with Ms. Lahrman for more than an hour to discuss his discrimination concerns, stating that he saw a pattern of discrimination against African-American employees. Mr. Edwards also then told her that he felt he was being retaliated against by Mr. Htein by diminishing Edwards' responsibilities. Mr. Edwards repeated to Ms. Lahrman many of the same things he told Mr. Htein on September 1, 2015, and he continued to make the case to promote Mr. McDaniel.

Frustrated with the lack of response by anyone to his discrimination allegations, Mr. Edwards contacted an EEO counselor in mid-October 2015.

IV.    Retaliation

Management's retaliation against Mr. Edwards began in mid-September 2015 when Mr. Htein significantly changed Mr. Edwards' duties, removing key managerial functions such as decision-making authority. But the retaliation against Mr. Edwards manifested in force during an October 27, 2015, meeting with Ms. Lahrman and Byron Zuidema, Deputy Assistant Secretary, Employment and Training Administration. During the meeting, Ms. Lahrman told Mr. Edwards that he was being reassigned, and she repeatedly told Mr. Edwards it was because of his EEO complaint.

Ms. Lahrman followed through, informing Mr. Edwards on October 29, 2015, that he would be reassigned to a non-supervisory Special Assistant position, effective November 1, 2015. Mr. Edwards has few duties in his new role, because it is not a real position, and none that are remotely commensurate with his experience and skills. DOL posted Mr. Edwards' former OIST Deputy Director position on USA Jobs on November 5, 2015.

3

## V.    Jurisdiction

Mr. Edwards disclosed an abuse of authority to Mr. Htein on September 1, 2015, and to Ms. Lahrman on September 17, 2015. Specifically, he disclosed that Mr. Htein and Ms. Lahrman failed to fill a critical position with Mr. McDaniel, while filling other, less-important positions, due to her racial bias against African-Americans. He also disclosed that these same officials generally failed to provide opportunities and assignments to OIST's African-American employees.

The complaints to management by Mr. Edwards constituted disclosures of abuse of authority protected under 5 USC 2302(b)(8). *Kinan v. Dept. of Defense*, 87 MSPR 561 n.2 (2001); *see McDonnell v. Dept. of Agric.*, 108 MSPR 443, 445-46, 449 (2008) (protected disclosure included the appellant's complaint to her supervisor that he hired only Hispanics with whom he was friendly and created a hostile environment for the others); *Armstrong v. Dept. of Justice*, 107 MSPR 375, 383–84 ¶ 17, 2007 MSPB 280 (2007) (a disclosure during an agency internal investigation that none of the African-American employees of the office were given the opportunity to serve as a coordinator for certain audits was a protected disclosure of a violation of law, rule, or regulation or of an abuse of authority); *see also Pasley v. Dept. of Treasury*, 109 MSPR 105, 113–15 ¶¶ 16–20, 2008 MSPB 122 (2008) (report that a supervisor abused his authority by favorable work assignments for the appellant's female peer, an employee with whom the supervisor appeared to have a close personal or romantic relationship); *cf. Ormond v. Dept. of Justice*, 118 MSPR 337, 342 ¶ 10, 2012 MSPB 88 (2012) (report of illegal hiring preference); *Schaeffer v. Dept. of Navy*, 86 M.S.P.R. 606, 614 ¶¶ 9-10 (2000) (finding that the appellant made a nonfrivolous allegation that he disclosed a violation of law and an abuse of authority regarding personnel selections during a restructuring being made without regard to merit); *Thomas v. Dept. of Treasury*, 77 MSPR 224, 234–35 (1998) (abuse of authority included an allegation within the agency that the agency improperly discriminated against a classification of employees by refusing to consider them for appointments to a job series).

The reports by Mr. Edwards to management and to the EEO office were also protected under the "lawful assistance" and other provisions of 5 USC

4

2302(b)(9).

Under 5 USC 1221:

> (a) Subject to the provisions of subsection (b) of this section and subsection 1214(a)(3), an employee, former employee, or applicant for employment may, with respect to any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited personnel practice described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D), seek corrective action from the Merit Systems Protection Board.

Pursuant to 5 USC 2302(b), it is unlawful for agency personnel to:

> (9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—

>> (A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—

>>> (i) with regard to remedying a violation of paragraph (8); or

>>> (ii) other than with regard to remedying a violation of paragraph (8);

>> (B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii);

By filing a complaint (EEO) under EEOC government-wide regulations and testifying for or lawfully assisting an individual or individuals in remedying discrimination, Mr. Edwards's disclosure to the EEO office was a covered disclosure and protected through an IRA appeal.

Management – particularly Mr. Htein and Ms. Lahrman – were aware of Mr. Edwards' protected disclosures when Ms. Lahrman reassigned Mr. Edwards to a Special Assistant position. Both were also aware of Mr. Edwards' EEO activities. At an October 27, 2015, meeting, also attended by the Deputy

5

Assistant Secretary for ETA, Ms. Lahrman repeatedly cited Mr. Edwards' EEO complaint as the reason for his reassignment.

DOL's decision to reassign Mr. Edwards to a Special Assistant position, effective on November 1, 2015, is a covered personnel action under 5 U.S.C. 2302(a)(2)(A)(iv).

Mr. Edwards' protected disclosures and activities were a contributing factor in the reassignment decision based on management's knowledge of Mr. Edwards' disclosures and EEO complaint and the reassignment decision, and the short temporal proximity between the events—no more than two months.

## VI.   Exhaustion of Remedies at the Office of Special Counsel

Mr. Edwards filed a Complaint of Prohibited Personnel Practice with the Office of Special Counsel, alleging that his reassignment to Special Assistant and DOL's decision to post his former OIST Deputy Director position, is retaliation for whistleblowing and for engaging in protected activities, 5 U.S.C. 2302(b)(8) and (b)(9). OSC closed Mr. Edwards' retaliation complaint on November 20, 2015, declining to seek corrective action on his behalf. It sent Mr. Edwards an IRA right-to-file letter that day.

## VII.   Relief Requested

Mr. Edwards is requesting reassignment back to his Deputy Director position, consequential and compensatory damages, counsel fees, referral to OSC for disciplinary action against responsible management officials, and a nationwide DOL email violation posting.

6

Appx80

JOHN S. EDWARDS IRA APPEAL
NARRATIVE SWORN STATEMENT

I.    SUMMARY

During 2015:

A.    As a Caucasian employee and DOL manager, I initiated an EEO complaint with the DOL EEO Office seeking to aid African American employees and to prevent and remedy systemic discrimination by my supervisors, Lisa Lahrman and Aung Htein, against African-American employees who were within their chain of command, including but not limited to a particular employee, Darryl McDaniel, who was discriminatorily denied promotion and other opportunities by my supervisors [Attachments 1, 2]

B.    I initiated a parallel complaint to the EEO Office under the DOL Anti-Harassment Policy asserting the same discrimination against African American Employees. That complaint was rejected by DOL because I did not allege harassment against me by the supervisors. [Attachment 3]

C.    Additionally, I complained directly to my supervisors, Lisa Lahrman and Aung Htein, of the same discrimination;

D.    The complaint to the EEO Office and to my supervisors contained specifics as to the discrimination against McDaniel and others. Contemporaneously, I met with an EEO Counselor, Vanessa Hall and provided many specifics, described below, of the discriminatory treatment by my supervisors of lower-level African American employees.

E.    When Ms. Lahrman and Mr. Htein became aware through the DOL EEO Office of my complaints and statements to that Office and, knowing of my complaints to them about the racial discrimination, they reassigned me because of those complaints to a nonmanagement and nonsupervisory position with significantly different and less responsible duties than I had as a manager and supervisor.

F.    I then filed a complaint with the Office of Special Counsel complaining that I had been retaliatorily reassigned by Lahrman and Htein because of my foregoing complaints to the EEO Office and to them to aid African American employees, including but not limited to, Mr. McDaniel [Attached to the IRA appeal on file with MSPB, supplemented by my attorney's statement to OSC, Attachment 4] In conjunction with my complaint.

G.    The OSC complaint related the specifics of the disclosures to the EEO Office and

Appx81

to my supervisors concerning the discriminatory treatment of African-American employees, including but not limited to Mr. McDaniel.

H.    OSC closed out my complaint of whistleblowing with a notice of my right to seek redress from MSPB;

I.    Within 65 days of the OSC closeout letter, I filed the current IRA appeal.

## II.    THE APPELLANT

I am John S. Edwards, an employee of DOL, formerly GS-15 Deputy Director of the Office of Information Systems and Technology (OIST), Employment and Training Administration (ETA), Department of Labor (DOL), with direct supervisory responsibility for approximately 50 federal staff and 100 contractors. I joined DOL in 2013 following a successful career in the private sector. I've held many high-level managerial and supervisory positions for over 30 years.

## III.    PROTECTED DISCLOSURES

Until my reassignment, as deputy director OIST, all operational staff reported through me to Htein and Lahrman, and I reviewed all personnel actions in the office and all actions required my approval.

Within months of arriving at DOL in 2013, I came to the belief that my supervisors, Lisa Lahrman, Acting Administrator and Administrative Officer, and Aung Htein, Director, OIST, were prejudiced against African-American employees, particularly in the areas of assignments, opportunities, and promotions. I considered how higher-level management treated subordinate African American employees Howze and Flagg, and how performance reviews were conducted for African American employees Palmer and Davidson.

Over time, my concerns increased and I disclosed and protested what I perceived as discriminatory practices to my first and second level supervisors, Mr. Htein and Ms. Lahrman, beginning on September 1, 2015 and continuing through October 2015.

In early October 2015, I contacted the EEO office through the counselor, Ms. Hall, and I filed an EEO complaint alleging racial discrimination against OIST's African-American staff in mid-October 2015. [Attachment 1 is the complaint submitted to the EEO counselor, styled "informal" of October 13, 2015, supplemented by my email pdf responses of October 13 to Ms. Hall in response to questions from the EEO Office, Attachment 2]

Appx82

I also submitted the email, Attachment 2, to the EEO Office as a separate complaint of harassment under the Agency's Anti-Harassment Policy, which was rejected under that policy because my complaints of discriminatory treatment of African-American employees did not constitute harassment of me. [Attachment 3]

Effective November 1, 2015, Ms. Lahrman reassigned me to a non-supervisory Special Assistant position with very few duties and when she did so, she referenced my EEO activities, as did Mr. Htein.

In greater detail, I was the second-level supervisor, and for a time the third-level supervisor of Darry McDaniel, an excellent African-American employee well deserving of advancement. I often worked with him on a daily basis and knew well his work, his qualifications, and his contribution to our mission.

In July 2015, following an open competition for a GS-14 Supervisory IT Specialist position (Job Announcement No. MS-15-ETA-OMAS-084), I complained to Mr. Htein and Ms. Lahrman about their refusal to allow the selection of Darryl McDaniel, an outstanding African-American OIST employee, even though Mr. McDaniel was already performing several aspects of the job, it was a critically important position, he scored highly for the position and was the only person on the certificate of eligibles, and the recommending and selecting officials strongly supported his candidacy. Other vacancies were being filled with the approval of Ms. Lahrman and Mr. Htein, but not for McDaniel. Mr. Htein and Ms. Lahrman refused even to consider a temporary promotion for Mr. McDaniel despite my representation that Mr. McDaniel was already performing work at a higher grade level. It was irrational that Ms. Lahrman would not agree to advance the career of so dedicated and deserving employee as Mr. McDaniel. During my discussion with them I made plain that I believed the reason Ms. Lahrman was not advancing McDaniel was because of his race.

Mr. Htein and Ms. Lahrman were aware of my belief, statements, and complaints that Ms. Lahrman was improperly and discriminatorily blocking the advancement of Mr. McDaniel. On September 1, 2015, Mr. Htein came to my (Mr. Edwards') office and said I needed to "stop making noise" that Ms. Lahrman did not want to select Mr. McDaniel for the GS-14 Supervisory IT Specialist position because he is black. I told Mr. Htein that I refused because I believed it was due to Ms. Lahrman's racism, and that Mr. Htein should stand up for Mr. McDaniel. At one point during the conversation, Mr. Htein asked me to lie and to tell McDaniel that the Supervisory IT position did not need to be filled. I strongly disagreed with this notion and I refused to go along with Mr. Htein's suggestion. When I reiterated my belief that Ms. Lahrman's desire not to hire Mr. McDaniel was motivated by race, Mr. Htein said he did not care. Mr. Htein then told me that if I kept quiet and waited for a few months, there might be organizational changes that would result in some of them becoming members of the

Appx83

Senior Executive Service.

On September 17, 2015, I met with Ms. Lahrman for more than an hour to discuss my discrimination concerns, stating that I saw a pattern of discrimination against African-American employees. I also then told her that I felt I was being retaliated against by Mr. Htein by diminishing my responsibilities. I repeated to Ms. Lahrman many of the same things I told Mr. Htein on September 1, 2015, and I continued to make the case to promote Mr. McDaniel, who managed software for IT systems essential to management of $11 billion yearly in grants to states and local governments.

Frustrated with the lack of response by anyone to my discrimination allegations, I contacted an EEO counselor and on approximately October 13, 2015, met to initiate the EEO complaint process, filing with the agency an informal EEO complaint asserting that Ms. Lahrman and Mr. Htein were discriminating against agency African American employees, including Mr. McDaniel, based on race. The informal complaint [Attachment 1] asserted that McDaniel was being discriminated against, it asserted systemic discrimination against African American agency employees, and it also asserted that my supervisory job duties were being removed by Mr. Htein because I complained to him and Ms. Lahrman about the discrimination against black employees and, more specifically, against Mr. McDaniel. The informal complaint [Attachment 1] cross-referenced a response filed by me with Vanessa Hall on October 13, 2015, and also submitted under the Agency Anti-Harassment Policy. [Attachment 2] The relief demanded included promotion of Mr. McDaniel, prevention of discrimination against other African American employees. Htein, Lahrman, and other executives would have quickly been alerted to the EEO complaint by the DOL EEO Office, since it involved their organization and their employee.

I had met with Vanessa Hall, a DOL EEO counselor, on October 13, 2015, who told me that I had a duty to report systemic discrimination. After I described my employment, past and current to her, I described the discrimination I observed. More specifically:

> In the meeting on October 13, 2015 I explained alleged incidents to Vanessa Hall that from May 2014 onwards, Aung Htein and Lisa Lahrman did not provide the same quality of assignments and opportunities to the following African-American employees as those that were given to employees of other races: Dwayne Palmer, Florence Davidson, Thomas Flagg, Nat Brown, Kevin Jackson, and that in October or November 2014, Aung Htein and Lisa Lahrman asked me to place Marlene Howze, an African-American employee, on a performance improvement plan as soon as possible even though I, as her supervisor, strongly disagreed. I described in detail to Vanessa Hall how Aung Htein and Lisa Lahrman repeatedly asked me to come up with schemes to

Appx84

evaluate Ms. Howze on factors other than her actual performance in order to facilitate their obsessive desire to remove her from DOL and end her federal employment. I also described how Aung Htein and Lisa Lahrman concocted a trumped up investigation into Marlene Howze's conduct and performance in the months preceding my appointment as Deputy Director in May 2014 through the summer of 2014, and how that investigation failed to create the outcome—to fire Ms. Howze—that they sought. During that time, Marlene Howze had been reporting directly to Aung Htein and they changed the reporting chain to me to shield Aung Htein and Lisa Lahrman's motives.

In our meeting on October 13, 2015, I also explained to Vanessa Hall how in July 2015, Aung Htein and Lisa Lahrman refused to allow the temporary promotion of Darryl McDaniel, a highly-regarded African-American GS-13 OIST employee, to GS-14 Supervisory IT Specialist position in the Employment and Training Administration (Job Announcement No. MS-15-ETA-OMAS-084) even though Mr. McDaniel was performing many of the duties of the higher-graded position. I told her I had documentation to prove this, and I also described in our meeting how these actions came even though Mr. McDaniel was already performing all aspects of the job, and had been doing so for most of the previous year, and that it was a critically important position for grants systems modernization. Mr. McDaniel scored highly for the position from HR, and he was the only person on the certificate of eligibles that Htein and Lahrman denied.

Also in our meeting on October 13,2015, I described to Vanessa Hall in detail how between July 2015 and the present, Ms. Lahrman has maintained DOL could not fill OIST vacancies, including the advertised Supervisory IT Specialist position for Mr. McDaniel (Job Announcement No. MS-15-ETA-OMAS-084), without having an agile reorganization plan in place and prior to bargaining with the union. I also described how Lisa Lahrman and Aung Htein nonetheless have filled several other OIST vacancies during this time period without either of those conditions being met.

Finally, I described to Vanessa Hall how in September 2015, Aung Htein told Freddie Sconce, Director of IT Governance, to rate a subordinate employee, Antonian Liddell, an African-American employee, at a very low level, far below what Mr. Sconce felt he deserved, so that OIST could terminate Mr. Liddell before the end of his probationary period and that Mr. Sconce had told me that he felt Mr. Liddell was performing his job satisfactorily.

I also used the internal DOL Anti-Harassment Policy to complain of what I perceived as the discrimination against African American employees. The complaint through that policy was by email of October 13, 2015 [Attachment 2], which also became part of my informal EEO complaint [Attachment 1]. The complaint under the Policy was

rejected because I was not complaining of harassment of me. [Attachment 3] My EEO complaint [Attachment 1] is pending in the DOL EEO complaint process.

## IV.     RETALIATION

Management's retaliation against me began in mid-September 2015 when Mr. Htein significantly changed my duties, removing key managerial functions such as decision-making authority. But the retaliation against me manifested in force during an October 27, 2015, meeting with Ms. Lahrman and Byron Zuidema, Deputy Assistant Secretary, Employment and Training Administration. During the meeting, Ms. Lahrman told me that I was being reassigned, and she repeatedly told me it was because of my EEO complaint.

Ms. Lahrman followed through, informing me on October 29, 2015, that I would be reassigned to a non-supervisory Special Assistant position, effective November 1, 2015. I have few duties in this new role, because it is not a real position, and none that are remotely commensurate with my senior management and supervisory experience and skills.   DOL posted my former OIST Deputy Director position immediately following my reassignment on USA Jobs on November 5, 2015.

## V.     COMPLAINT TO OSC

I filed a Complaint of Prohibited Personnel Practices (whistleblowing reprisal) with the Office of Special Counsel, alleging that my reassignment to Special Assistant and DOL's decision to post my former OIST Deputy Director position, are retaliation for whistleblowing and for engaging in protected activities, 5 U.S.C. 2302(b)(8) and (b)(9). OSC closed my whistleblowing retaliation complaint on November 20, 2015, declining to seek corrective action on my behalf. OSC sent me an IRA right-to-file letter that day.

Pursuant to the Federal False Statements Act and under penalty of perjury pursuant to 28 USC 1746, I declare the foregoing to be true to the best of my knowledge, information, and belief.

Dated: ___1/3/2016___                            _____
                                                   John S. Edwards

# JOHN S. EDWARDS
## JURISDICTIONAL DISCUSSION

Mr. Edwards disclosed to managers Htein and Lahrman, and through the government-wide EEO complaint system and through the DOL-specific Anti-Harassment Policy (attached), systemic discrimination by Htein and Lahrman against African American employees as well as against specific employees, with assertions in considerable and specific detail. Edwards suffered reprisal by Htein and Lahrman, through reassignment, as a result of the disclosures. Edwards reported the specifics of the disclosures and reprisal to OSC and filed his MSPB appeal timely following the OSC closeout.

The complaints to management by Mr. Edwards constituted disclosures of abuse of authority protected under 5 USC 2302(b)(8).  *Kinan v. Dept. of Defense*, 87 MSPR 561 n.2 (2001);  *see McDonnell v. Dept. of Agric.*, 108 MSPR 443, 445-46, 449 (2008) (protected disclosure included the appellant's complaint to her supervisor that he hired only Hispanics with whom he was friendly and created a hostile environment for the others); *Armstrong v. Dept. of Justice*, 107 MSPR 375, 383–84 ¶ 17, 2007 MSPB 280 (2007) (a disclosure during an agency internal investigation that none of the African-American employees of the office were given the opportunity to serve as a coordinator for certain audits was a protected disclosure of a violation of law, rule, or regulation or of an abuse of authority); *see also Pasley v. Dept. of Treasury*, 109 MSPR 105, 113–15 ¶¶ 16–20, 2008 MSPB 122 (2008) (report that a supervisor abused his authority by favorable work assignments for the appellant's female peer, an employee with whom the supervisor appeared to have a close personal or romantic relationship); *cf. Ormond v. Dept. of Justice*, 118 MSPR 337, 342 ¶ 10, 2012 MSPB 88 (2012) (report of illegal hiring preference); *Schaeffer v. Dept. of Navy*, 86 M.S.P.R. 606, 614 ¶¶ 9-10 (2000) (finding that the appellant made a nonfrivolous allegation that he disclosed a violation of law and an abuse of authority regarding personnel selections during a restructuring being made without regard to merit); *Thomas v. Dept. of Treasury*, 77 MSPR 224, 234–35 (1998) (abuse of authority included an allegation within the agency that the agency improperly discriminated against a classification of employees by refusing to consider them for appointments to a job series).

The reports by Mr. Edwards to management and to the EEO office were also

Appx87

protected under the "lawful assistance" and other provisions of 5 USC 2302(b)(9).

Under 5 USC 1221:

> (a) Subject to the provisions of subsection (b) of this section and subsection 1214(a)(3), an employee, former employee, or applicant for employment may, with respect to any personnel action taken, or proposed to be taken, against such employee, former employee, or applicant for employment, as a result of a prohibited personnel practice described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D), seek corrective action from the Merit Systems Protection Board.

Pursuant to 5 USC 2302(b), it is unlawful for agency personnel to:

> (9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of—
>
> > (A)   the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation—
> >
> > > (i)   with regard to remedying a violation of paragraph (8); or
> > >
> > > (ii)   other than with regard to remedying a violation of paragraph (8);
> >
> > (B)   testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii);

By filing a complaint (EEO) under EEOC government-wide regulations and testifying for or lawfully assisting an individual or individuals in remedying discrimination, Mr. Edwards's disclosure to the EEO office was a covered disclosure and protected through an IRA appeal.

The "lawful assistance" provision of the 1989 WPA has received little commentary from the Board. However, it broadly mirrors the Title VII participation clause, 42 U. S. C. §2000e–3(a), which makes it unlawful

> "for an employer to discriminate against any . . . employe[e]" who (1)

Appx88

"has opposed any practice made an unlawful employment practice by this subchapter"(opposition clause), or (2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (participation clause).

In the federal sector, protection of the participation clause does not depend on the validity of the EEO complaint. According to the EEOC Compliance Manual, 8–II(C)

## C.    PROTECTED ACTIVITY:  PARTICIPATION

### 1.    Definition

The anti-retaliation provisions make it unlawful to discriminate against any individual because s/he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, hearing, or litigation under Title VII, the ADEA, the EPA, or the ADA. This protection applies to individuals challenging employment discrimination under the statutes enforced by EEOC in EEOC proceedings, in state administrative or court proceedings, as well as in federal court proceedings, and to individuals who testify or otherwise participate in such proceedings. Protection under the participation clause extends to those who file untimely charges.  In the federal sector, once a federal employee initiates contact with an EEO counselor, (s)he is engaging in "participation."

### 2.    Participation Is Protected Regardless of Whether the Allegations in the Original Charge Were Valid or Reasonable

The anti-discrimination statutes do not limit or condition in any way the protection against retaliation for participating in the charge process. While the opposition clause applies only to those who protest practices that they reasonably and in good faith believe are unlawful, the participation clause applies to all individuals who participate in the statutory complaint process.  Thus, courts have consistently held that a respondent is liable for retaliating against an individual for filing an EEOC charge regardless of the validity or reasonableness of the charge. To permit an employer to retaliate against a charging party based on its unilateral determination that the charge was unreasonable or otherwise unjustified would chill the rights of all individuals protected by the

Appx89

anti-discrimination statutes.

[footnotes omitted]

Mr. Edwards initiated an EEO complaint based on systemic discrimination, discrimination against one or more of his subordinates, and reprisal against himself. Whether the EEO complaint was valid or not on the merits, it was protected under EEO law and therefore constituted his act in "lawfully assisting" any individual under 5 USC 2302(b)(9). *See Carney v. VA*, 121 MSPR 446, 450-51 (2014) (lawful assistance includes (but is not limited to) grievance representation); *Matter of Frazier*, 1 MSPR 163, 192-93 (1979) (adopting broad Title VII protections; guarantee against reprisal extended to persons who invoke the aid of a remedial administrative process); *cf. Alarid v. Dept. of Army*, 2015 MSPB 50 (2015) (n.5: "Differing from section 2302(b)(9)(A)(i), which bars reprisal for an appellant's personal exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation concerning an alleged violation of section 2302(b)(8), section 2302(b)(9)(B) bars reprisal for assisting another individual in the exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation, and such a proceeding need not concern remedying a violation of whistleblower reprisal under section 2302(b)(8). *See Carney*, 121 M.S.P.R. 446, ¶ 6 n.3.").

Management—particularly Mr. Htein and Ms. Lahrman—were aware of Mr. Edwards' protected disclosures when Ms. Lahrman reassigned Mr. Edwards to a Special Assistant position. Both were also aware of Mr. Edwards' EEO activities. At an October 27, 2015, meeting, also attended by the Deputy Assistant Secretary for ETA, Ms. Lahrman repeatedly cited Mr. Edwards' EEO complaint as the reason for his reassignment.

So too, Edwards complained to Larhman and Htein directly, and through the Agency's regulatory anti-harassment policy, DLMS-4, attached, concerning their discriminatory practices, with specific and detailed reference to one or more subordinate employees. Those protests constituted a "grievance" under 5 USC 7103(a)(9), defining grievance as any complaint by any employee concerning any claimed violation "of any law" "affecting conditions of employment," of which one comprises the right to be free of a discriminatory workplace. Whether the grievances or complaints were meritorious is immaterial for a reprisal analysis since 2302(b)(9) (unlike 2302(b)(8))) does not impose a "reasonably believes" standard.

Appx90

DOL's decision to reassign Mr. Edwards to a Special Assistant position, effective on November 1, 2015, is a covered personnel action under 5 U.S.C. 2302(a)(2)(A)(iv), involving any "complaint" or "grievance right" granted by any law rule or regulation.

Mr. Edwards' protected disclosures and activities were a contributing factor in the reassignment decision based on management's knowledge of Mr. Edwards' disclosures and EEO complaint and the reassignment decision, and the short temporal proximity between the events—no more than two months.

## VI.    EXHAUSTION OF REMEDIES AT THE OFFICE OF SPECIAL COUNSEL

Mr. Edwards filed a Complaint of Prohibited Personnel Practice with the Office of Special Counsel, alleging that his reassignment to Special Assistant and DOL's decision to post his former OIST Deputy Director position, is retaliation for whistleblowing and for engaging in protected activities, 5 U.S.C. 2302(b)(8) and (b)(9). OSC closed Mr. Edwards' retaliation complaint on November 20, 2015, declining to seek corrective action on his behalf. It sent Mr. Edwards an IRA right-to-file letter that day.

## VII.    RELIEF REQUESTED '

Mr. Edwards is requesting reassignment back to his Deputy Director position, consequential and compensatory damages, counsel fees, referral to OSC for disciplinary action against responsible management officials, and a nationwide DOL email violation posting.

## VIII.    REPLY TO AGENCY SUBMISSION

Appellant requests the right to reply to the Agency's jurisdictional submission as a matter of administrative due process, and Appellant requests the opportunity to supplement this jurisdictional submission upon completion of discovery and review of the Agency file.

# United States Department of Labor
# Civil Rights Center

## U. S. DEPARTMENT OF LABOR MANUAL SERIES

## DLMS 4 – PERSONNEL MANAGEMENT     DATE: October 27, 2003

| DEPARTMENTAL ___ | OASAM _X_ | MANUAL TRANSMITTAL ___ |
|---|---|---|

**Chapter Reference:** Chapter 700 — Policy & Procedures for Preventing & Eliminating Harassing Conduct in the Workplace

**Nature of Revisions:** The directive is a new Departmental policy. It was previously approved and signed by the Secretary on April 10, 2003. This policy has been reformatted and renamed DLMS 4 – Chapter 700 to comply with all other Departmental Directives.

**Approval for Issuance and Distribution:**

PATRICK PIZZELLA
Assistant Secretary for Administration and Management

| Paragraph | Contents |
|---|---|
| **700** | **Policy & Procedures for Preventing & Eliminating Harassing Conduct in the Workplace** |
| 701 | Purpose |
| 702 | The Definition of Harassing Conduct |
| 703 | Policy Against Harassing Conduct |
| 704 | Procedures and Responsibilities |
| 705 | Reporting Harassment |
| 706 | Inquiries into Allegations of Harassing Conduct |
| 707 | Action to be Taken upon Completion of the Inquiry |

# 700 Policy & Procedures for Preventing & Eliminating Harassing Conduct in the Workplace     Appx92

**701 Purpose.** This Policy is intended assure that the Department of Labor taking all necessary steps to prevent sexual harassment and other forms of harassing conduct in the workplace, and to correct harassing conduct that does occur before it becomes severe or pervasive. It updates the Department of Labor's long-standing policy on harassment in light of the Supreme Court's decisions in Faragher v. Boca Raton, 524 U.S. 775 (1998), and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

**702 The Definition of Harassing Conduct.** For the purposes of this Policy, harassing conduct is defined as any unwelcome verbal or physical conduct based on any characteristic protected by law when:

    A. The behavior can reasonably be considered to adversely affect the work environment; or

    B. An employment decision affecting the employee is based upon the employee's acceptance or rejection of such conduct.

**703 Policy Against Harassing Conduct.**

The Department of Labor does not permit harassing conduct by anyone in the workplace. It is the policy of the Department to maintain a work environment free from the harassing conduct described above.

The Department has determined that the most effective way to limit harassing conduct is to treat it as misconduct, even if it does not rise to the level of harassment actionable under Title VII of the Civil Rights Act of 1964, as amended. A hostile environment claim under Title VII usually requires showing a pattern of offensive conduct. The Department will not wait for such a pattern to emerge. Rather, the Department will act before the harassing conduct is so pervasive and offensive as to constitute a hostile environment. In the usual case, a single utterance of an ethnic, sexual, or racial epithet that offends an employee would not be severe enough to constitute unlawful harassment in violation of Title VII; however, it is the Department's view that such conduct is inappropriate and must be stopped.

The Department will not tolerate retaliation against any employee for making a good-faith report of harassing conduct under this or any other policy or procedure, or for assisting in any inquiry about such a report. Complaints of such retaliation shall be handled pursuant to the procedures in this Policy.

This Policy supercedes any and all other previous policies on harassment at the Department of Labor. This Policy isseparate and apartfrom any collective bargaining agreement or statutory complaint process covering harassment.

**704 Procedures and Responsibilities.**

    A. **Procedures Applicable to All Department of Labor Employees**

        1. Each Department of Labor employee shall be responsible for:

            a. Acting professionally and refraining from harassing conduct;

            b. Becoming familiar with the provisions of this Policy, complying with all requirements of the Policy, and cooperating with any inquiry under this Policy; and

            c. Promptly reporting, pursuant to procedures set forth in section 705, any incident of harassing conduct that he or she experiences before it becomes a pattern of misconduct so pervasive and offensive as to constitute a hostile environment. The Department cannot correct harassing conduct if the conduct is not known. When an employee unreasonably fails to take advantage of this procedure and does not promptly report an incident of harassing conduct as set forth herein, the Department reserves the right to raise this failure to report as a defense against a suit for harassment, in accordance with Faragher and Ellerth.

Appx93

B. **Responsibilities of Supervisors and Managers**

   1. All supervisors and managers shall be responsible for:

     a. Acting promptly and appropriately to prevent harassment in the workplace, and retaliation against those who complain of harassment;

     b. Reporting, pursuant to procedures set forth in section 705, any incident of harassing conduct that they witness or is otherwise brought to their attention;

     c. Receiving and handling allegations of harassing conduct promptly and appropriately, utilizing the procedures set forth in section 706 below;

     d. In consultation with the EEO Manager, providing interim relief to alleged victims of harassment pending the outcome of the investigation to ensure that further misconduct does not occur; and

     e. Using the procedures set forth below, in consultation with the EEO Manager, taking prompt and appropriate corrective and disciplinary action, up to and including removal, against personnel who have engaged in harassing conduct or who have not carried out their responsibilities under this Policy.

C. **Responsibilities of the Office of the Assistant Secretary for Administration and Management (OASAM)**

   1. The Director, Civil Rights Center, shall be responsible for:

     a. Disseminating the policy statement annually to all employees. Distributing this procedures document to all Departmental offices and posting it on the DOL website;

     b. Ensuring that employees are informed of this Policy and the procedures to follow in connection with reporting harassing conduct;

     c. Providing technical assistance and support, to assure compliance with this Policy and providing other assistance as requested by EEO Managers and Regional Administrators of the Office of the Assistant Secretary for Administration and Management (OASAM);

     d. Training CRC investigators on inquiring into complex allegations of harassing conduct;

     e. Ensuring that the identities of the agency EEO Managers and the OASAM Regional Administrators will be prominently displayed in the Department and listed on the LaborNet; and

     f. Advising regional employees, by and through the Regional Civil Rights Officers, on this Policy.

   2. The Regional Administrators shall be responsible for:

     a. Receiving allegations of harassment under this Policy and promptly notifying the EEO Manager of the agency in which the alleged harasser is employed of the allegation; and

     b. Providing further assistance as requested by an agency EEO Manager.

   3. The Human Resources Center shall be responsible for:

     a. Providing advice to managers and supervisors on taking disciplinary actions for conduct that violates this Policy, as consulted.

D. **Responsibilities of Agency EEO Managers** Appx94

   1. The EEO Manager in each Department of Labor agency shall be responsible for:

    a. Advising natioi   office employees in his or her agency   this Policy;

    b. Receiving allegations of harassing conduct;

    c. Conducting or overseeing fair and impartial inquiries into allegations of harassing conduct. The EEO Manager will have the authority to decide who will conduct an inquiry into an allegation of harassment, provided that the person conducting the inquiry has had appropriate training in investigating allegations of workplace misconduct. In complex or difficult cases, the EEO Manager will draw upon the expertise of the Civil Rights Center as he or she deems appropriate;

    d. Advising supervisors and managers on the provision of interim relief to the alleged victims of harassing conduct pending the outcome of the investigation to ensure further misconduct does not occur; and

    e. Advising the Agency Head or other persons who need to know of allegations of harassment and the resolution of those allegations under this Policy.

E. **Responsibilities of the Office of the Solicitor and Counsel to the Inspector General.** The Office of the Solicitor shall be responsible for providing legal advice to management concerning the implementation and interpretation of this Policy. If an Office of the Inspector General (OIG) employee is involved in the allegation, legal counsel to the OIG will, after consultation with SOL, provide legal advice to OIG management.

F. **Responsibilities of Agency Heads**
    1. Each Department of Labor Agency Head shall be responsible for:
        a. Taking appropriate action to enforce this Policy; and

        b. Working closely with the EEO Manager to ensure that this Policy is properly implemented.

**705 Reporting Harassment.** The procedures for reporting incidents of harassing conduct are as follows:

A. Any person who believes that he or she has been the subject of an incident of harassing conduct in violation of this Policy should report this matter: to anyone in the complainant's supervisory chain; or to his or her Agency EEO Manager in the National Office; or for regional employees, to the Regional Administrator, OASAM.

B. All information will be maintained on a confidential basis to the greatest extent possible. The maintenance of records and any disclosures of information from these records shall be in complete compliance with the Privacy Act, 5 U.S.C. 552a. Such information, however, may have to be disclosed to defend the Department in any litigation to which the information may be relevant and necessary. Further, information may need to be disclosed to those officials and employees within the Department with a need to know in order to carry out the purpose and intent of this Policy.

**706 Inquiries into Allegations of Harassing Conduct.**

A. A supervisor or manager who receives an allegation or witnesses harassing conduct shall immediately:
    1. Inform the EEO Manager and seek guidance as to further actions;

    2. In consultation with the EEO Manager, take action to stop any harassing conduct and prevent further harassment while the allegations are being investigated, including granting of appropriate interim relief to the alleged victim of harassing conduct; and

Appx95

    3. In consultation with the EEO Manager, document the allegation received and his or her efforts to

address it.

B. If the OASAM Regional Administrator receives an allegation of harassing conduct, he or she shall promptly notify the EEO Manager of the agency of the person accused of misconduct and provide further assistance as requested by the EEO Manager.

C. When the EEO Manager receives an allegation of harassing conduct, either directly by the complainant or through a supervisor, manager or other sources, he or she shall: Ensure that a prompt, thorough, impartial and appropriate inquiry is conducted; and
   1. Recommend appropriate action to stop any harassing conduct and prevent further harassment, including granting appropriate interim relief to the alleged victim of harassing conduct while the allegations are being investigated.

D. Where an investigation is necessary, a written summary of the investigation shall be prepared by the individual conducting the inquiry, in consultation with the EEO Manager for the agency of the person accused of misconduct. (The summary may be brief, depending on the complexity and seriousness of the case.) The summary shall be prepared promptly after completion of the inquiry and shall be submitted to the EEO Manager (if the EEO Manager did not conduct the inquiry) and the supervisor who would be responsible for taking disciplinary action against the alleged harasser, if the allegations are true.

E. The summary of the investigation or other documentation prepared under this procedure shall be kept confidential, to the extent possible. The maintenance of records and any disclosures of information from these records shall be in complete compliance with the Privacy Act, 5 U.S.C. 552a. Such information, however, may have to be disclosed to defend the Department in any litigation to which the information may be relevant and necessary. Further, information may need to be disclosed to those officials and employees within the Department with a need to know in order to carry out the purpose and intent of this Policy.

## 707 Action To Be Taken upon Completion of the Inquiry.

A. Upon completion of the inquiry, and in consultation with the EEO Manager, agency management shall promptly evaluate the evidence and determine the appropriate action to take. This responsibility normally shall rest with the first line supervisor of the employee alleged to have engaged in the harassing conduct unless such supervisor is involved in the allegation. The EEO Manager shall be informed of this decision, including a decision not to act. In cases of complex or egregious alleged harassing conduct, the supervisor and EEO Manager should seek the counsel of the Office of the Solicitor. If an Office of the Inspector General (OIG) employee is involved in the allegation, legal counsel to the OIG will, after consultation with SOL, provide legal advice to OIG management.

B. Where the inquiry establishes that an employee did engage in harassing conduct under this Policy, he or she shall be subject to appropriate corrective action, disciplinary or otherwise, in accordance with Chapter 75 of the Civil Service Reform Act, up to and including removal.

C. Where the inquiry establishes that a manager or supervisor did not properly carry out the responsibilities provided for under this Policy, he or she shall be subject to appropriate corrective action, disciplinary or otherwise, in accordance with Chapter 75 of the Civil Service Reform Act, up to and including removal.

Appx96