NO. 2022-1967

BRIEF FOR RESPONDENT MERIT SYSTEMS PROTECTION BOARD

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

_____

JOHN S. EDWARDS,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

PETITION FOR REVIEW OF A DECISION OF THE
MERIT SYSTEMS PROTECTION BOARD IN NO. DC-1221-16-0227-W-1

Respectfully submitted,

ALLISON J. BOYLE
General Counsel

KATHERINE M. SMITH
Deputy General Counsel

JEFFREY A. GAUGER
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 653-6772

DATE:  November 17, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................. iiii

STATEMENT OF RELATED CASES.............................. ix

JURISDICTIONAL STATEMENT................................... ix

STATEMENT OF THE ISSUE........................................ 1

STATEMENT OF THE CASE..........................................2

   I.  Nature of the Case.......................................................2

   II.  Statement of Facts and Disposition Below..............................2

SUMMARY OF ARGUMENT ...........................................7

ARGUMENT ................................................................8

   I.   STANDARD OF REVIEW.......................................8

   II.  MR. EDWARDS'S ALLEGATION OF EEO REPRISAL
   DOES NOT FALL WITHIN THE MSPB'S IRA
   JURISDICTION..............................................................9

      A. The Statutory Text Makes Clear That Congress
         Did Not Intend For The WPA To Provide Remedies
         For Claims of Discrimination Or EEO Retaliation.............. 9

B. The Statutory History Demonstrates That Congress
Did Not Intend For The WPA To Duplicate Existing
EEO Remedies.................................................................. 13

    1. EEO Act.................................................................... 13

    2. CSRA....................................................................... 14

    3. WPA......................................................................... 16

    4. WPEA....................................................................... 18

C. This Court's Precedent Supports The View That The
WPA Was Not Intended To Duplicate The EEO Process... 19

    1. The Board's Decision Follows The Principles
Enunciated in <u>Spruill</u>....................................................20

    2. <u>Ellison</u> Does Not Apply To This Case........................ 22

    3. <u>Smolinski</u> Does Not Apply To This Case.................. 22

D. The Board's Formal Adjudication Is Entitled To
Deference.......................................................................... 26

E. Mr. Edwards's Policy Arguments Do Not Override the
Congressional Intent That Discrimination Claims
Should Be Raised In The EEO Process............................. 30

CONCLUSION ................................................................32

# <u>TABLE OF AUTHORITIES</u>

CASES

<u>Ali v. Fed. Bureau of Prisons</u>,
    552 U.S. 214 (2010)........................................................................ 30

<u>Applewhite v. Equal Empl't Opportunity Comm'n</u>,
    94 M.S.P.R. 300 (2003)............................................................. 28-29

<u>Armstrong v. Dep't of Justice</u>,
    107 M.S.P.R. 375 (2007)................................................................ 29

<u>Artuz v. Bennett</u>,
    531 U.S. 4 (2000)............................................................................ 30

<u>Badaracco v. Comm'r of Internal Revenue</u>,
    464 U.S. 386 (1984)....................................................................... 30

<u>Bankamerica Corp. v. United States</u>,
    462 U.S. 122 (1983)................................................................. 30-31

<u>Brown v. Gen. Servs. Admin.</u>,
    425 U.S. 820 (1976)……..…………....................................……….. 13-14

<u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>,
    467 U.S. 837 (1984)................................................................. 26-27

<u>City of Arlington, Texas v. Fed. Commc'ns Comm'n</u>,
    569 U.S. 290 (2013)………………….........……….....…..……….. 8, 27

<u>Cornelius v. Nutt</u>,
    472 U.S. 648 (1985)....................................................................... 27

<u>Ellison v. Merit Sys. Prot. Bd.</u>,
    7 F.3d 1031 (Fed. Cir. 1993)......................................................... 22

<u>Forest v. Merit Sys. Prot. Bd.,</u>
    47 F.3d 409 (Fed. Cir. 1995)…………………..……..…..………. 8

<u>Frazier v. Merit Sys. Prot. Bd.,</u>
    672 F.2d 150 (D.C. Cir. 1982)………………......……...………. 15

<u>Garcia v. Dep't of Homeland Sec.,</u>
    437 F.3d 1322 (Fed. Cir. 2006) (en banc)……....……………..…… 8

<u>Gomez-Perez v. Potter,</u>
    553 U.S. 474 (2008)................................................... 13-14

<u>Gonzales v. Dep't of Hous. and Urban Dev.,</u>
    64 M.S.P.R. 314 (1994).............................................. 25

<u>Holloway v. United States,</u>
    526 U.S. 1 (1999)...............................................…… 10

<u>James v. Von Zemenszky,</u>
    301 F.3d 1364 (Fed. Cir. 2002)..................................... 27

<u>Kerr v. Merit Sys. Prot. Bd.,</u>
    908 F.3d 1307 (Fed. Cir. 2018)..................................... 18

<u>Kinan v. Dep't of Defense,</u>
    87 M.S.P.R. 561 (2001)............................................. 29

<u>Lovshin v. Dep't of the Navy,</u>
    767 F.2d 826, 835 (Fed. Cir. 1985) (en banc)...................... 27

<u>McDonnell v. Dep't of Agric.,</u>
    108 M.S.P.R. 443 (2008)............................................ 29

<u>Mudd v. Dep't of Veterans Affairs,</u>
    120 M.S.P.R. 365 (2013)......................................... 18-19

<u>Nogales v. Dep't of the Treas.,</u>
    63 M.S.P.R. 460 (1994)............................................. 28

Parikh v. Dep't of Veterans Affairs,
    110 M.S.P.R. 295 (2008)................................................... 29

Pasley v. Dep't of the Treas.,
    109 M.S.P.R. 105 (2008)............................................... 25-26

Redschlag v. Dep't of the Army,
    89 M.S.P.R. 589 (2001)................................................... 28

Savage v. Dep't of the Army,
    122 M.S.P.R. 612 (2015)................................................. 13

Serrao v. Merit Sys. Prot Bd.,
    95 F.3d 1569 (Fed. Cir. 1996)..................................... 19-20

Sirgo v. Dep't of Justice,
    66 M.S.P.R. 261 (1995)............................................... 25-26

Smolinski v. Merit Sys. Prot. Bd.,
    23 F.4th 1345 (Fed. Cir. 2022)................................... 22-25

Spruill v. Merit Sys. Prot. Bd.,
    978 F.2d 679 (Fed. Cir. 1992)................................. passim

Stern v. Dep't of the Army,
    699 F.2d 1312 (Fed. Cir. 1983)....................................... 8

Tunik v. Merit Sys. Prot. Bd.,
    407 F.3d 1326 (Fed. Cir. 2005)..................................... 27

Von Kelsch v. Dep't of Labor,
    59 M.S.P.R. 503 (1993)................................................. 28

Williams v. Dep't of Defense,
    46 M.S.P.R. 549 (1991)................................................. 16

Young v. Merit Sys. Prot. Bd.,
    961 F.3d 1323, 1327-28 (Fed. Cir. 2020)........................ ix, 13, 17-19

## STATUTES

5 U.S.C. § 1221 ................................................................... passim

5 U.S.C. § 1221(a) ............................................................. passim

5 U.S.C. § 2302(b) ............................................................. passim

5 U.S.C. § 2302(b)(1) ........................................................ passim

5 U.S.C. § 2302(b)(8) ........................................................ passim

5 U.S.C. § 2302(b)(9) ........................................................ passim

5 U.S.C. § 2302(b)(9)(A) ................................................... passim

5 U.S.C. § 2302(b)(9)(A)(i) ............................................... passim

5 U.S.C. § 2302(b)(9)(A)(ii) .............................................. passim

5 U.S.C. § 2302(f) .................................................................. 18

5 U.S.C. § 7703(b)(1)(B) ........................................................ ix

5 U.S.C. § 7703(c) ................................................................... 8

10 U.S.C. § 1561(e)(3) .......................................................... 24

28 U.S.C. § 1295(a)(9) ........................................................... ix

29 U.S.C. § 206(d) ................................................................. 10

29 U.S.C. § 631 ...................................................................... 10

29 U.S.C. § 633a .................................................................... 10

29 U.S.C. § 791 ...................................................................... 10

42 U.S.C.A. § 2000e-4, Note 1 ............................................. 14

42 U.S.C. § 2000e-16.............................................................. 9, 12-14

Civil Service Reform Act,
    Pub. L. No. 95-454, 92 Stat. 1111 (1978)........................... 14-15, 27

Equal Employment Opportunity Act,
    Pub. L. No. 92-261, § 717, 86 Stat. 103 (1972)............................. 13

Title VII of the Civil Rights Act,
    42 U.S.C. § 2000e-16, et seq (1964)........................................ passim

Whistleblower Protection Act,
    Pub. L. No. 101-12, 103 Stat. 16 (1989)................................. passim

Whistleblower Protection Enhancement Act,
    Pub. L. No. 112-199, 126 Stat. 1465 (2012)............................. 18-19

## REGULATIONS

5 C.F.R. § 1201.57(a)(1)............................................................... 8

5 C.F.R. § 1201.57(b)................................................................... 8

5 C.F.R. § 1810.1..................................................................... 21

29 C.F.R., Part 1614............................................................. 20, 23-24

29 C.F.R. § 1614.103............................................................. 15, 20

29 C.F.R. § 1614.407................................................................. 15

## OTHER AUTHORITIES

Army Reg. 600-20,
    Personnel-General: Army Command Policy, ¶ 4-19a(2) (2020)....... 24

Exec. Order No. 12106,
    44 Fed. Reg. 1053 (1978)................................................... 14

Reorganization Plan No. 1,
  43 Fed. Reg. 19807 (1978)........................................................ 14-15

Whistleblower Protection Act of 1987,
  Hearings on S. 508, Subcomm. on Fed. Servs., Post Office, and
  Civil Serv. of the Senate Comm. on Gov't Affairs,
  100th Cong. 1st Sess. 138–39 (1987)......................................... 15-16

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5, counsel for the respondent Merit

Systems Protection Board ("MSPB" or "Board") states that he is unaware of

any other appeals stemming from this action that were previously before this

Court or any other appellate court under the same or similar title.

Two cases with related issues are currently pending before the Court

and potentially could be affected by the outcome in this case: McLaughlin v.

Merit Sys. Prot. Bd., Fed. Cir. No. 2022-1589, and McLaughlin v. Merit

Sys. Prot. Bd., Fed. Cir. No. 2023-1074.

Counsel is unaware of any other cases pending before this or any other

court that will directly affect or be directly affected by this Court's decision.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over this appeal pursuant to 5 U.S.C. §

7703(b)(1)(B) and 28 U.S.C. § 1295(a)(9).  See Young v. Merit Sys. Prot.

Bd., 961 F.3d 1323, 1327-28 (Fed. Cir. 2020) (holding that a petition for

judicial review of whistleblower individual right of action ("IRA") appeal

can never be a "mixed case" depriving the Court of jurisdiction; rather, such

petitions are governed by 5 U.S.C. § 7703(b)(1)(B) and are within the

Court's jurisdiction).

NO. 2022-1967

BRIEF FOR RESPONDENT MERIT SYSTEMS PROTECTION BOARD

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

_____

JOHN S. EDWARDS,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

PETITION FOR REVIEW OF A DECISION OF THE
MERIT SYSTEMS PROTECTION BOARD IN NO. DC-1221-16-0227-W-1

## STATEMENT OF THE ISSUE

Whether an employee who alleges reprisal for opposition to practices made unlawful by Title VII of the Civil Rights Act may, in addition to or instead of exercising his complaint rights under Title VII, file a duplicative IRA appeal under the Whistleblower Protection Act ("WPA").

## STATEMENT OF THE CASE

I.    Nature of the Case

The petitioner, John S. Edwards, seeks review of a final Board decision dismissing his IRA appeal for lack of jurisdiction.  Edwards v. Dep't of Labor, 2022 MSPB 9 (2022); Appx1-18.[1]

II.    Statement of Facts and Disposition Below

Mr. Edwards was employed as the Deputy Director of the Office of Information Systems and Technology ("OIST"), Employment and Training Administration, at the Department of Labor ("DOL" or "agency").  Appx75. He joined DOL in 2013 after working in the private sector.  Id.   Within months of arriving at DOL, Mr. Edwards "came to the belief that his supervisors . . . were prejudiced against African-American employees, particularly in the areas of assignments, opportunities, and promotions." Appx76.

A. EEO Complaint

In October 2015, Mr. Edwards filed an informal complaint with the agency's Equal Employment Opportunity ("EEO") office in which he

_____

[1] "Appx__" refers to pages of the appendix attached to the petitioner's brief. ECF No. 14.

alleged that his supervisors retaliated against him after he complained about "systemic discrimination of some African American employees" in OIST. Appx34. He alleged that his supervisors retaliated against him by removing his supervisory duties and diminishing his reputation. Id.

In a memorandum dated November 17, 2015, Betty Lopez, the agency's EEO program manager, informed Mr. Edwards that, after reviewing his allegations, the EEO office had determined that his complaint would not be accepted for investigation. Appx61. Ms. Lopez stated that Mr. Edwards previously had been notified of his right to file a formal EEO complaint with the agency's Civil Rights Center and that it was her understanding that he had done so. Appx62.

B. OSC Complaint

On November 1, 2015, Mr. Edwards filed a complaint with the Office of Special Counsel ("OSC") alleging that he suffered retaliation after reporting systemic discrimination against African-American employees in OIST. Appx38-59. He asserted that the agency's EEO office and Civil Rights Center failed to protect "the rights of employees who report discrimination of African American Employees and permit active retaliation by turning a blind eye to prohibited personnel practices being performed by the Secretary of Labor and senior officials" at DOL. Appx43. He also

asked OSC to immediately stay his reassignment and the agency's efforts to fill his OIST Deputy Director position.  Appx63-65.

On November 13, 2015, OSC informed Mr. Edwards that it had made a preliminary determination to close its inquiry into his complaint and not to seek a stay of his reassignment and the posting of his OIST Deputy Director position.  Appx66-68.  OSC stated that "it was not intended that this office duplicate or bypass the procedures established in the agencies and the Equal Employment Opportunity Commission for resolving such allegations," which are "more appropriately resolved" through the EEO process. Appx66-67.  OSC closed its investigation on November 20, 2015, and – despite its conclusion that Mr. Edwards's complaint would be "more appropriately resolved" through the EEO process – notified Mr. Edwards that he had the right to file an IRA appeal with the Board to seek corrective action.  Appx69-70.

C. <u>MSPB Proceedings</u>

Mr. Edwards filed an IRA appeal with the Board on December 17, 2015, and he requested a hearing.  Appx71-80.  Among other things, he alleged that he was reassigned because of his EEO complaint.  Appx77.

1.  Jurisdictional Order

After reviewing Mr. Edwards's allegations, the MSPB administrative judge ("AJ") issued an Order to Show Cause setting forth the applicable law and affording Mr. Edwards an opportunity to submit evidence and argument to show cause why the appeal should not be dismissed.  Appx20.  Mr. Edwards responded by providing details about the complaint he submitted to OSC regarding his prior EEO complaints and retaliation for making those complaints.  He argued that, by filing an EEO complaint and assisting individuals in remedying discrimination, his disclosures to the EEO office and his "lawful assistance" were protected under the WPA.  Appx87-91.  In its response, DOL argued that Mr. Edwards did not have a reasonable belief that his allegations constituted protected disclosures in the WPA context and that his activities could not be considered "lawful assistance" under the WPA because the affected employees had not exercised their complaint rights or requested Mr. Edwards's assistance in exercising their rights and thus he did not "assist" them.  Appx21.

2.  Initial Decision

In an initial decision dated April 20, 2017, the AJ dismissed the IRA appeal for lack of jurisdiction.  Appx19-30.  The AJ concluded that Mr. Edwards's allegations were "purely of an EEO nature protected by Title

VII" and more appropriately within the jurisdiction of the EEOC. Appx26-27. With respect to Mr. Edwards's "lawful assistance" claim, the AJ found that he had not alleged that his co-workers were engaged in protected activities under the WPA and "[t]o find otherwise would controvert Congress' clear intention to exclude from Board jurisdiction claims of retaliation for an employee's own EEO-related activity." Appx29. The AJ observed that Mr. Edwards had an avenue of recourse for his claims, which he had taken by filing EEO complaints. Id.

### 3. Board Opinion and Order

On May 5, 2022, the Board denied Mr. Edwards's petition for review and dismissed his IRA appeal for lack of jurisdiction. Appx1-18. After examining the relevant statutory provisions and case law, the Board concluded that "it is clear that separate remedies exist for redress of claims of discrimination and claims of reprisal for whistleblowing, and that claims must be brought under the appropriate statutory scheme." Appx11. The Board held that Mr. Edwards's allegations of discrimination could not be brought under the WPA, but that he could seek redress under Title VII, which is enforced by the EEOC. Appx13, Appx18. This appeal followed.

## SUMMARY OF ARGUMENT

Mr. Edwards made allegations that he suffered retaliation for his opposition to practices made unlawful by Title VII.  He filed an EEO complaint based on those allegations.  He is not entitled to file a duplicative IRA appeal with the MSPB.  The WPA specifically excludes from the Board's IRA jurisdiction allegations of discrimination or reprisal for engaging in activities protected by Title VII.

The statutory language of the WPA and its legislative history make clear that Congress did not intend for the WPA to be duplicative of EEO rights.  If such duplicative claims were permitted, it would blur the deliberate and substantive line drawn by Congress between whistleblower protection and the exercise of EEO rights.  The Board's decision is consistent with the case law of this Court.  To the extent that the WPA is silent or ambiguous on this point, the Board's formal adjudication is entitled to deference as an interpretation of its statutory jurisdiction.  Finally, the petitioner's policy arguments do not provide valid reasons to deviate from the statute and case law.

# **ARGUMENT**

## I. STANDARD OF REVIEW

The burden rests on the petitioner to establish that the Board has jurisdiction over his IRA appeal.  5 C.F.R. § 1201.57(a)(1), (b); <u>Stern v. Dep't of the Army</u>, 699 F.2d 1312, 1314 (Fed. Cir. 1983).  Under the statutory standard of review, the Court should set aside a decision of the Board only if it finds the Board's decision to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence.  5 U.S.C. § 7703(c); <u>Forest v. Merit Sys. Prot. Bd.</u>, 47 F.3d 409, 410 (Fed. Cir. 1995).  Whether the MSPB has jurisdiction to adjudicate an appeal is a question of law, which this Court reviews <u>de novo</u>.  <u>Id.</u>

Where a statutory provision involving the MSPB's jurisdiction is found to be ambiguous, however, the Board's determination of its own jurisdiction is entitled to deference if it is based on a permissible interpretation of the statute.  <u>See</u> <u>City of Arlington, Texas v. Fed. Commc'ns Comm'n</u>, 569 U.S. 290, 301-02 (2013); <u>Garcia v. Dep't of Homeland Sec.</u>, 437 F.3d 1322, 1338 (Fed. Cir. 2006) (en banc).  As discussed below, the Board's interpretation of its jurisdictional statute at

issue here, 5 U.S.C. § 1221 ("individual right of action in certain reprisal cases"), and including the subsections of 5 U.S.C. § 2302(b) that § 1221 incorporates, is a reasonable one that deserves the Court's deference.

## II. MR. EDWARDS'S ALLEGATION OF EEO REPRISAL DOES NOT FALL WITHIN THE MSPB'S IRA JURISDICTION

In his opening brief, Mr. Edwards maintains that his "protests within management circles of EEO policy violations" are protected under the WPA. PB14-15.[2] As discussed below, however, the text, structure, and history of the relevant statutes demonstrate a congressional intent to separate the federal employment complaint processes for EEO and whistleblower claims and to prevent overlap and duplication.  In general, if an employee has a remedy through the EEO process, then the employee must seek redress through that process rather than through an IRA appeal.  As the Board correctly held, this was the case for Mr. Edwards.

### A. The Statutory Text Makes Clear That Congress Did Not Intend For The WPA To Provide Remedies For Claims of Discrimination Or EEO Retaliation

---

[2] "PB__" refers to pages of the corrected opening brief filed by the petitioner on September 14, 2022.  ECF No. 14.

It is axiomatic that the language of the statutes that Congress enacts provides the most reliable evidence of its intent.  Holloway v. United States, 526 U.S. 1, 6 (1999).  As pertinent here, the WPA provides that:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority-

(1) discriminate for or against any employee or applicant for employment-

(A) on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16);

(B) on the basis of age, as prohibited under sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);

(C) on the basis of sex, as prohibited under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d));

(D) on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or

(E) on the basis of marital status or political affiliation, as prohibited under any law, rule, or regulation;

. . .

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of-

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences-

(i) any violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs;

. . .

(9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of-

(A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation-

(i) with regard to remedying a violation of paragraph (8); or

(ii) other than with regard to remedying a violation of paragraph (8) . . . .

5 U.S.C. §§ 2302(b)(1), (8) & (9)(A).

Congress has provided that employees may file an IRA appeal with the Board and seek corrective action for the prohibited personnel practices described in (b)(8) and (b)(9),[3] with the notable exception of (b)(9)(A)(ii)

---

[3] For the sake of brevity and ease of reference, we refer to the subsections of 5 U.S.C. § 2302(b) by paragraph and number rather than the full United States Code citation.

involving the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation other than with regard to remedying a violation of (b)(8). Congress also did not provide an IRA appeal right based on (b)(1), which is based on the antidiscrimination statutes including Title VII, or the other prohibited personnel practices listed in § 2302, i.e. (b)(2)-(b)(7) and (b)(10)-(14). <u>See</u> 5 U.S.C. § 1221 (Individual Right of Action in Certain Reprisal Cases). As this Court has explained, in crafting the IRA provision of the WPA, "Congress clearly intended for it to be available to only <u>some</u> victims of reprisal, not all victims." <u>Spruill v. Merit Sys. Prot. Bd.</u>, 978 F.2d 679, 690 (Fed. Cir. 1992) (emphasis in original). The Court stated that its conclusion was based on the text of § 1221, which, at the time, limited its reach to allegations falling within (b)(8), and "from the title of § 1221 itself -- "Individual right of action in <u>certain</u> reprisal cases." <u>Id</u>. (emphasis added by the Court).

Mr. Edwards's allegations involve discrimination on the basis of race, which is prohibited under section 717 of the Civil Rights Act of 1964, 42 U.S.C. 2000e-16, and is a prohibited personnel practice under (b)(1)(A). Mr. Edwards further alleges reprisal for the exercise of his EEO complaint rights, which is prohibited by Title VII and Equal Employment Opportunity Commission ("EEOC") regulations and is a prohibited personnel practice

under (b)(9)(A)(ii).  See Appx43 (Mr. Edwards's OSC complaint alleging that he was subjected to retaliation after reporting systemic discrimination against African-American employees in OIST).  As this Court has long recognized, Congress did not provide the MSPB with IRA jurisdiction over allegations falling under (b)(1) or (b)(9)(A)(ii).  See Young, 961 F.3d at 1329 (allegations of retaliation for exercising a Title VII right do not fall within the scope of (b)(8) "and are therefore not proper subjects for inclusion in an IRA appeal on that ground"); Spruill, 978 F.2d at 690-92 (same).

### B. The Statutory History Demonstrates That Congress Did Not Intend For The WPA To Duplicate Existing EEO Remedies

#### 1. EEO Act

Congress extended Title VII of the Civil Rights Act to federal employees when it enacted the Equal Employment Opportunity Act of 1972 ("EEO Act"), Pub. L. No. 92-261, § 717, 86 Stat. 103, 111-13 (codified as amended at 42 U.S.C. § 2000e-16).  The EEO Act "proscribes federal employment discrimination and establishes an administrative and judicial enforcement system." Brown v. Gen. Servs. Admin., 425 U.S. 820, 829 (1976).  In addition, a federal employee is protected against retaliation for complaining of discrimination.  See Savage v. Dep't of the Army, 122

M.S.P.R. 612, 633 (2015) (citing <u>Gomez-Perez v. Potter</u>, 553 U.S. 474, 491 (2008)).  Initially, Congress gave the Civil Service Commission the authority to enforce Title VII in the federal sector.  <u>Brown</u>, 425 U.S. at 831.

### 2.  CSRA

When Congress enacted the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), it replaced the Civil Service Commission with three new independent agencies: the Office of Personnel Management ("OPM"), which manages the federal workforce; the Federal Labor Relations Authority, which oversees federal labor-management relations; and the MSPB.  The MSPB assumed the employee appeals function of the Civil Service Commission and was given the new responsibilities of performing merit systems studies and reviewing the significant actions of OPM.

At the same time, the EEOC became the expert agency with respect to the enforcement of laws prohibiting discrimination in federal employment. Exec. Order No. 12106, 44 Fed. Reg. 1053 (1978) (reprinted in 42 U.S.C.A. § 2000e-4, Note 1).  The EEOC was charged with giving "coherence and direction to the government's efforts by developing strong uniform enforcement standards to apply throughout the government. . . ."  <u>Spruill</u>,

978 F.2d at 691-92 (quoting the Reorganization Plan No. 1 of 1978, 43 Fed. Reg. 19807 (message of the President)) (internal quotation marks omitted).

Under EEOC regulations, federal employees who file EEO complaints are protected from reprisal.  See 29 C.F.R. § 1614.103 (providing that complaints alleging retaliation prohibited by antidiscrimination statutes are considered to be complaints of discrimination for purposes of EEOC regulations).  See also Spruill, 978 F.2d at 692, n.17 (noting that the EEOC framework specifically provides protection for federal employees who suffer reprisal for filing an EEO complaint).  Federal employees who receive an unfavorable disposition through the administrative EEO process or the EEOC have the right to file a civil action in district court.  See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407.

In establishing whistleblower protection in the CSRA, Congress could have utilized the existing EEO complaint process, but it chose not to do so. Instead, the CSRA established a separate, "new type of proceeding" with respect to complaints of whistleblower retaliation that evoked a prosecutor-judge relationship between OSC and the Board.  Frazier v. Merit Sys. Prot. Bd., 672 F.2d 150, 162-64 (D.C. Cir. 1982).  Since the enactment of the CSRA, Congress has expanded whistleblower rights while continuing to keep those remedies separate from the EEO process.

3. WPA

Subsequently, Congress enacted the WPA, Pub. L. No. 101-12, 103 Stat 16 (1989), and established the right to file an IRA appeal with respect to complaints of whistleblower retaliation.  5 U.S.C. § 1221.  An earlier version of the legislation, the WPA of 1987, would have authorized MSPB appeals of all prohibited personnel practices, including (b)(1) and (b)(9). See Spruill, 978 F.2d at 690; Williams v. Dep't of Defense, 46 M.S.P.R. 549, 553-54 (1991).  In her congressional testimony, the then-Special Counsel expressed concern about granting an IRA appeal right to employees who had at their disposal the EEOC as an avenue to seek redress for alleged discrimination.  Williams, 46 M.S.P.R. at 554 (citing the WPA of 1987, Hearings on S. 508 before the Subcomm. on Federal Services, Post Office, and Civil Service of the Senate Comm. on Governmental Affairs, 100th Cong. 1st Sess. 138–39 (1987)).  She suggested limiting IRA appeals to cases of reprisal based on whistleblowing.  Id.  That is, in fact, what Congress did.

As enacted in 1989, the IRA appeal right applies only to claims of reprisal that were based on whistleblowing in violation of (b)(8), consistent with the Special Counsel's view.  See Spruill, 978 F.2d at 681-82, 690 (noting that, in passing the WPA, Congress did not intend to duplicate or

bypass the procedures established in the agencies and the EEOC for resolving discrimination complaints).  Thus, Congress gave the MSPB jurisdiction over claims of reprisal for making whistleblower disclosures under (b)(8), but not for claims of prohibited discrimination under (b)(1) or for reprisal based on filing an EEO complaint under (b)(9)(A).  Young, 961 F.3d at 1328 (allegations of EEO retaliation do not fall within the list of prohibited personnel practices for which the Board can grant corrective action in an IRA appeal); Spruill, 978 F.2d at 690 (although EEO complaints facially come under (b)(8), "this superficial reading does not withstand closer analysis").  The initial inclusion of EEO claims in the proposed IRA appeal right and the subsequent exclusion in the final enactment of the WPA is evidence of congressional intent to keep EEO claims separate from whistleblower protection claims.  See Spruill, 978 F.2d at 690 (concluding that "[t]his selectivity was intended" given that initial versions of the WPA extended the IRA right to all prohibited personnel practices while the enacted version limited the right to (b)(8)).  Given the congressional intent, and consistent with its own precedent and the precedent of this Court, the Board correctly held in this case that "the proper forum for filing an EEO complaint is with the [EEOC]" and not an IRA appeal.  Appx5.

Mr. Edwards points to the absence of an election of remedies provision in the WPA as an indication that Congress intended the WPA to cover discrimination allegations.  PB35-36.  An election of remedies, however, would mean that an employee would have a choice between filing an EEO complaint or an IRA appeal and could elect which procedure to follow.  The fact that Congress did not provide employees with such a choice is further evidence that it did not intend for IRA appeals to duplicate the EEO process.  See Kerr v. Merit Sys. Prot. Bd., 908 F.3d 1307, 1315 (Fed. Cir. 2018) (holding that the election of remedies doctrine has no application when the elected remedy is not available from the selected forum).

### 4. WPEA

In 2012, Congress passed the Whistleblower Protection Enhancement Act ("WPEA"), Pub. L. No. 112-199, 126 Stat. 1465, in response to judicial and Board interpretations under (b)(8) that Congress had criticized as contrary to its intent that "any" disclosure means "any."  The WPEA provided clarifications to the scope of whistleblower protections that are now codified at 5 U.S.C. § 2302(f).  The WPEA also broadened the IRA appeal right by adding to the Board's jurisdiction certain activities protected by (b)(9) but continued to explicitly exclude from the Board's jurisdiction

"claims of retaliation for exercising other types of appeal, complaint, or grievance rights that do not involve whistleblowing." See Mudd v. Dep't of Veterans Affairs, 120 M.S.P.R. 365, 369 (2013) (explaining that the WPEA extended the Board's IRA jurisdiction to claims arising under the newly enacted (b)(9)(A)(i), which covers whistleblower activity, but not to those arising under (b)(9)(A)(ii), which, similar to the prior version of (b)(9)(A), covers non-whistleblowing activity). As the Board correctly held, Congress essentially codified Spruill's holding that because the statutory provisions distinguish whistleblowing from non-whistleblowing activity, Congress did not intend for the WPA to be duplicative of the EEO complaint process. See Appx13 (noting that nothing in the language or legislative history of the WPEA overrules Spruill or its progeny). Thus, EEO reprisal claims are "remediable through different mechanisms, and not by an IRA appeal to the Board." Young, 961 F.3d at 1329.

### C.   This Court's Precedent Supports The View That The WPA Was Not Intended To Duplicate The EEO Process

This Court has made clear that allegations of retaliation for exercising a Title VII right do not fall within the scope of (b)(8) "and are therefore not proper subjects for inclusion in an IRA appeal on that ground." Young, 961 F.3d at 1329 (citing Serrao v. Merit Sys. Prot Bd., 95 F.3d 1569, 1575-76 (Fed. Cir. 1996) and Spruill, 978 F.2d at 689). Instead, retaliation for

exercising EEO complaint rights falls under (b)(9)(A)(ii), which is not included in the list of prohibited personnel practices for which the Board can issue corrective action under the WPA.  Id.  Despite the clarity of Young, Spruill, and Serrao, Mr. Edwards argues that Federal Circuit and Board case law permit him to assert his EEO reprisal claim under the WPA.

### 1.  The Board's Decision Follows The Principles Enunciated in Spruill

According to Mr. Edwards, the Court in Spruill "made clear that IRA coverage does not extend to a complaint filed under EEOC administrative procedures outlined at 29 CFR Part 1614.103-110," but did not address what he describes as "protests within management circles of EEO policy violations – systemic or individual – and resultant reprisal."  PB14.  The petitioner in Spruill argued that Congress was aware of the overlap between the WPA and other statutes and therefore the allegations he made in his EEO complaint were also protected under (b)(8).  See Spruill, 978 F.2d at 690.  The Court stated that "this superficial reading does not withstand closer analysis."  Id.  The Court, as discussed above, analyzed the text and legislative history of the WPA and found dispositive Congress's decision to provide an IRA appeal right for (b)(8) but not for other prohibited personnel practices identified by 5 U.S.C. § 2302(b), such as forms of prohibited discrimination set forth in (b)(1).  "Congress clearly intended for [the WPA]

to be available to only <u>some</u> victims of reprisal, not all victims." <u>Id</u>.

(emphasis in original).  Here, Mr. Edwards's allegations of employment

discrimination and reprisal for filing an EEO complaint are covered by

(b)(1) and (b)(9)(A)(ii).  Thus, the analysis in <u>Spruill</u> makes clear that the

WPA does not provide Mr. Edwards with a remedy.

     The Court in <u>Spruill</u> explained that Congress did not intend for IRA

appeal rights to duplicate existing EEO rights.  The Court stated:

> There is good reason for Congress to have structured the act in
> the manner it did. As the OSC noted in its response to Spruill,
> investigative and remedial measures are available to Spruill
> through the EEOC.  The OSC policy of avoiding duplication of
> effort by referring discrimination matters to the EEOC conserves
> governmental resources and avoids potentially conflicting
> procedures or outcomes.  It acknowledges the EEOC role as an
> expert agency in discrimination matters, facilitates EEOC
> consolidation of important statistical data, and provides an
> efficient division of decisionmaking labor. In short, it promotes
> efficiency and economy. Our conclusion today reinforces
> Congress' efforts to provide the MSPB with a workload that is
> within its resources and to provide the EEOC with a continuing
> leadership role in the ongoing battle to eradicate discrimination.

<u>Id</u>. at 692.  <u>See also</u> 5 C.F.R. § 1810.1 (OSC regulation stating that since

procedures for investigating discrimination complaints have already been

established in the agencies and EEOC, OSC "will normally avoid

duplicating those procedures and will defer to those procedures rather than

initiating an independent investigation").  The same rationale applies here.

Mr. Edwards, similar to Mr. Spruill, filed an EEO complaint, Appx34, and

later complained of reprisal for exercising his EEO rights, Appx43.  His

redress for such EEO retaliation is through the EEO process, not through a

duplicative IRA appeal.

### 2. <u>Ellison</u> Does Not Apply To This Case

As the Court observed in <u>Ellison v. Merit Sys. Prot. Bd.</u>, 7 F.3d 1031

(Fed. Cir. 1993), it is possible to allege that a personnel action was taken in

reprisal for whistleblower disclosures as well as for reasons not related to

whistleblowing.  <u>Id</u>. at 1035.  An employee has "a right to pursue all courses

of action at his disposal, and the law provides remedies for violations of that

right."  <u>Id</u>.  For example, an employee could have EEO claims under (b)(1)

and/or (b)(9)(ii), as well as whistleblower claims permitted under (b)(8) and

other provisions of (b)(9), but only the latter can be remedied under the

WPA.  The Court's holding in <u>Ellison</u> does not apply to Mr. Edwards

because his allegations relate solely to Title VII and reprisal for his EEO

activity and therefore fall under (b)(1) and (b)(9)(A)(ii) rather than (b)(8).

### 3. <u>Smolinski</u> Does Not Apply To This Case

While <u>Ellison</u> discussed circumstances giving rise to both

whistleblower and non-whistleblower claims based on the same set of

operative facts, the Court's decision in <u>Smolinski v. Merit Sys. Prot. Bd.</u>, 23

F.4th 1345 (Fed. Cir. 2022) involved only whistleblower claims.  Mr.

Edwards nevertheless maintains that the Court in <u>Smolinski</u> "appeared to favor IRA protection of internal protests to management executives of EEO-related violations." PB14. The problem with Mr. Edwards's argument is that the petitioner in <u>Smolinski</u>, unlike Mr. Edwards, did not make allegations of discrimination or EEO reprisal that could have been heard through the EEO process.

Dr. Smolinski, a physician employed by the Department of the Army at the Landstuhl Regional Medical Center ("LRMC") in Landstuhl, Germany, alleged that his wife, who was not a federal employee, was treated at the LRMC emergency room. <u>Id</u>. at 1348. She submitted a complaint alleging her care had been "substandard" that ultimately reached the LRMC commander, Col. Timothy Hudson. <u>Id</u>. Three days later, the Smolinskis encountered Col. Hudson at the Wiesbaden Health Clinic Holiday Ball. <u>Id</u>. According to Dr. Smolinski, Col. Hudson was visibly intoxicated, attempted to intimidate Dr. Smolinski as a lower-ranking officer, and made Ms. Smolinski "extremely uncomfortable by whispering in her ear and touching her to the point where she remarked that if she had been alone . . . she thought he would have assaulted her." <u>Id</u>. Significantly, Dr. Smolinski did not allege that Col. Hudson's behavior was motivated by employment discrimination prohibited by Title VII or other antidiscrimination statutes,

and he did not allege that his wife was an employee protected under those statutes or the EEOC regulations applicable to federal employees, i.e., 29 C.F.R., Part 1614.

Dr. Smolinski and his wife participated in an AR 15-6 investigation into Col. Hudson's behavior, but they did not file EEO complaints or claim reprisal for EEO activity, nor could they have based on Dr. Smolinski's allegations.  Consequently, in considering the government wrongdoing at issue, the Court did not mention Title VII or any other antidiscrimination statute identified as a prohibited personnel practice in (b)(1).  Instead, the Court pointed to Army regulations prohibiting "[i]ntimidating, teasing, name calling, mockery, threats of violence, harassment, [or] taunting," Army Reg. 600–20, Personnel-General: Army Command Policy, para. 4–19a(2) (24 July 2020), and a statute prohibiting "[a]ny deliberate or repeated unwelcome verbal comment or gesture of a sexual nature by any member of the armed forces or civilian employee of the Department of Defense," 10 U.S.C. 1561(e)(3).  Id. at 1352.  Because Dr. Smolinski, unlike Mr. Edwards or the petitioner in Spruill, did not assert claims that could have been heard through the EEO process, Smolinski is inapposite to this case.

Several other cases that Mr. Edwards references in his brief have a similar posture to Smolinski in that the employee could not have alleged an

EEO claim and therefore did not have the availability of the EEO process in which to seek redress. For example, Mr. Edwards relies on <u>Gonzales v. Dep't of Hous. and Urban Dev.</u>, 64 M.S.P.R. 314 (1994) for the proposition that "[s]ome post-<u>Spruill</u> MSPB decisions suggest IRA coverage of internal management disclosures of EEO problems." PB25. But <u>Gonzales</u> did not involve "disclosures of EEO problems." One of Mr. Gonzales's disclosures included concerns that "people who spoke Spanish were being denied an equal opportunity to file housing discrimination complaints, in part because the agency did not have Spanish-speaking investigators," and the agency's lack of enforcement of the Rehabilitation Act as it pertains to fair housing. <u>Gonzales</u>, 64 M.S.P.R. at 317. The Board pointed out that these were not EEO claims that could be brought through the EEO process. <u>Id</u>. at 318 (noting that Mr. Gonzales's disclosure "involved equal housing opportunities, and not equal employment opportunity").

Mr. Edwards also relies on <u>Sirgo v. Dep't of Justice</u>, 66 M.S.P.R. 261 (1995) and <u>Pasley v. Dep't of the Treas.</u>, 109 M.S.P.R. 105 (2008). <u>See</u> PB25-26, 28-29. Neither case involved allegations that could be brought through the EEO process. In both cases, the employees alleged that their supervisors were involved in intimate or romantic relationships with subordinates. <u>Sirgo</u>, 66 M.S.P.R. at 264; <u>Pasley</u>, 109 M.S.P.R. at 113. In

Sirgo, the employee disclosed that the supervisor gave preferential treatment to the subordinate with whom he was having an intimate relationship.  The Board held that the allegation of preferential treatment, based not on the subordinate's merit but rather on the supervisor's purported relationship with her, appeared to fall within the WPA's definition of "abuse of authority."  Id. at 267.  In Pasley, the employee alleged that "the supervisor removed certain desirable assignments from Mr. Pasley and gave that work to the female subordinate."  109 M.S.P.R. at 113.  The Board concluded that these allegations were sufficient to constitute an abuse of authority.  In short, the employees in Smolinski, Gonzales, Sirgo and Pasley, unlike Mr. Edwards, were not alleging claims that could be remedied through the EEO process.

> D.    The Board's Formal Adjudication Is Entitled To Deference

To the extent that the Court finds the language of the WPA unclear or ambiguous, the Court should defer to the Board's construction of its jurisdictional statute at issue here, 5 U.S.C. § 1221, and the subsections of 5 U.S.C. § 2302(b) that § 1221 incorporates.  See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 (1984) (holding that when a statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a

permissible construction of the statute).  Specifically, when a statute affecting MSPB jurisdiction is ambiguous, the Board is entitled to deference in its interpretation of its own jurisdiction.  See, e.g., City of Arlington, 569 U.S. at 301 (observing that the Court has consistently held that Chevron applies to cases in which an agency adopts a construction of a jurisdictional provision of a statute that it administers); Cornelius v. Nutt, 472 U.S. 648, 659 (1985) (holding that the Board's interpretation of the harmful error rule, insofar as it applies to proceedings before the Board, is entitled to substantial deference); Tunik v. Merit Sys. Prot. Bd., 407 F.3d 1326, 1336 (Fed. Cir. 2005) (holding that when the Board has been charged with administering a statute through both rulemaking and adjudication, it is entitled to Chevron deference in these activities); Lovshin v. Dep't of Navy, 767 F.2d 826, 840 (1985) (holding that deference is appropriately given to the MSPB's interpretation of the CSRA).  Here, the Board resolved any statutory ambiguity in its formal adjudication, which is entitled to deference.  See James v. Von Zemenszky, 301 F.3d 1364, 1365 (Fed. Cir. 2002) (agency interpretations of statutes that are the products of notice and comment rulemaking or formal adjudication are more likely to receive Chevron deference than less formal interpretations).

As Mr. Edwards appears to acknowledge in his opening brief, see PB 30-33, the Board has repeatedly held that allegations of discrimination and reprisal that fall within (b)(1) and (b)(9) are not covered under (b)(8) and therefore are not within the Board's IRA jurisdiction under 5 U.S.C. § 1221. See, e.g., Redschlag v. Dep't of the Army, 89 M.S.P.R. 589, 634 (2001) (holding that the appellant's purported disclosures that involve alleged discrimination or reprisal for engaging in activities protected by Title VII, even if made outside of the grievance or EEO processes, do not constitute protected whistleblower activity under (b)(8) because they pertain to matters of discrimination covered by (b)(1)), dismissed, 32 F. App'x 543 (Fed. Cir. 2002); Nogales v. Dep't of the Treas., 63 M.S.P.R. 460, 464 (1994) (holding that, regardless of the channels through which an employee has made disclosures about discrimination, such disclosures do not constitute protected whistleblowing activity under (b)(8) because they pertain to matters of discrimination covered by (b)(1)); Von Kelsch v. Dep't of Labor, 59 M.S.P.R. 503, 509 (1993) (holding that the history and structure of the WPA indicates Congress's intent not to extend IRA appeal protection under (b)(8) to employees who allege reprisal for opposition to practices made unlawful by Title VII); Applewhite v. Equal Empl't Opportunity Comm'n, 94 M.S.P.R. 300, 307 (2003) (observing that "the law is settled" that

disclosures that are limited to EEO matters covered under (b)(1) and (b)(9) are excluded from coverage under (b)(8)); Parikh v. Dep't of Veterans Affairs, 110 M.S.P.R. 295, 304 (2008) (holding that disclosures that an agency engaged in discrimination and violated discrimination law are covered under (b)(1) and (b)(9), and are excluded from coverage under (b)(8)); McDonnell v. Dep't of Agric., 108 M.S.P.R. 443, 451 (2008) (holding that alleged disclosures that an agency engaged in discrimination and created a hostile work environment in violation of Title VII are covered under (b)(1) and (b)(9), and are excluded from coverage under (b)(8)).

Consistent with this case law, the Board in this case sought to clarify that, while Congress intended for the coverage of the WPA to be broad, "it is clear that separate remedies exist for redress of claims of discrimination and claims of reprisal for whistleblowing, and that claims must be brought under the appropriate statutory scheme." Appx11. The Board held that Mr. Edwards's allegations of discrimination could not be brought under the WPA, but that he could seek redress under Title VII, which is enforced by the EEOC. Appx13, Appx18. The Board overruled its inconsistent case law. See Appx11-12 (overruling Armstrong v. Dep't of Justice, 107 M.S.P.R. 375 (2007) and Kinan v. Dep't of Defense, 87 M.S.P.R. 561 (2001)). Because the Board's interpretation of the WPA in Edwards is a

reasonable and permissible construction of the statute, it is entitled to deference.

>    E.   Mr. Edwards's Policy Arguments Do Not Override the Congressional Intent That Discrimination Claims Should Be Raised In The EEO Process

Mr. Edwards argues that federal employees should be entitled to choose between "EEO and IRA routes" because, under various circumstances, he believes an IRA appeal is the more attractive option.  See PB36-40.  If Mr. Edwards believes that, as a matter of policy, the Board should have the authority to adjudicate IRA appeals that duplicate remedies available through the EEO process, that argument must be made to Congress, rather than to this Court or to the Board.  See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2010) (Courts are not at liberty to rewrite a statute to reflect a meaning deemed more desirable; rather, they must give effect to the text that Congress enacted.); Artuz v. Bennett, 531 U.S. 4, 10 (2000) ("Whatever merits these and other policy arguments may have, it is not the province of this Court to rewrite the statute to accommodate them"); Badaracco v. Comm'r of Internal Revenue, 464 U.S. 386, 398 (1984) ("Courts are not authorized to rewrite a statute because they might deem its effects susceptible of improvement"); Bankamerica Corp. v. United States, 462 U.S. 122, 140 (1983) ("[W]e are not to rewrite the statute based on our

notions of appropriate policy"). Based on the applicable law, the Board correctly determined that Mr. Edwards's right to redress is in the EEO process and that an IRA appeal is duplicative of those rights.

## **CONCLUSION**

For the reasons set forth above, the Court should affirm the decision of the Merit Systems Protection Board dismissing Mr. Edwards's IRA appeal for lack of jurisdiction.

Respectfully submitted,

ALLISON J. BOYLE
General Counsel

KATHERINE M. SMITH
Deputy General Counsel

/s/ Jeffrey A. Gauger

JEFFREY A. GAUGER
Attorney
Office of the General Counsel
Merit Systems Protection Board
1615 M Street, NW
Washington, DC 20419-0002
(202) 653-6772

DATE:  November 17, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this date, service of the BRIEF FOR RESPONDENT MERIT SYSTEMS PROTECTION BOARD was made through the ECF/CM system.

DATE: November 17, 2022          */s/ Talethia E. Owens-Wand*
                                 Talethia E. Owens-Wand
                                 Paralegal

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that the text of the electronic version of the foregoing brief is identical to the paper copies, has been scanned by Symantec Endpoint Version 12.1 and found to be virus-free, and that the textual portion of the brief, exclusive of the tables of contents and authorities, certificates of service and compliance, and statement of related cases, but including headings, footnotes, and quotations, contains 6,454 words as determined by the word counting feature of Microsoft Word 2010, and therefore complies with Rule 32(a)(7)(B).

/s/ Jeffrey A. Gauger
_____
JEFFREY A. GAUGER