2022-1967

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

JOHN S. EDWARDS,
Petitioner

v.

MERIT SYSTEMS PROTECTION BOARD,
Respondent

---

PETITION FOR REVIEW OF THE
MERIT SYSTEMS PROTECTION BOARD IN
NO. DC-1221-16-0227-W-1

---

APPELLANT'S REPLY BRIEF

---

Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201
703-841-1112
peterbroida@gmail.com
Attorney for John Edwards

December 2, 2022

# TABLE OF CONTENTS

I. SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    *Spruill* Was Limited to a Reprisal Claim under 5 USC 2302(b)((9) Based on a Formal EEO Complaint; *Spruill* Did Not Address Reprisal Based on Internal Protests to Management about Discriminatory Practices Constituting an Abuse of Authority under 5 USC 2302(b)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    The WPA Legislative History Demonstrates a Congressional Determination to Maintain and Expand Board Remedial Authority . 3

    C.    The Board Does Not Refute Appellant's References to Board Decisions Providing IRA Jurisdiction to Appellants Whose Internal Management Disclosures Led to Reprisals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    D.    This Court's *Smolinski* Decision Demonstrates the Basis for IRA Coverage of Reprisals for Internal Reports of Discrimination Constituting Abuse of Authority, and the Board Fails to Refute the Import of that Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    E.    The Board Improperly Discounts Appellant's Reference to this Court's *Ellison* Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    F.    No Deference Is Due the Board's Determination of the Scope of the WPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

III. CONCLUSION AND RELIEF SOUGHT

# TABLE OF AUTHORITIES

CASES

*Abernathy v. Dept. of Army*, 2022 MSPB 37 (Nov. 15, 2022) . . . . . . . . . . . . . . 18

*Am. Hosp. Ass'n v. Becerra*, 142 S.Ct. 1896 (2022) . . . . . . . . . . . . . . . . . . . . . . 24

*Becerra v. Empire Health Found.*, 142 S.Ct. 2354 (2022) . . . . . . . . . . . . . . . . . 24

*Bledsoe v. Dept. of Army*, EEOC docket 0120071298 (2007) . . . . . . . . . . . . . . 11

*Bump v. Dept. of Interior*, 64 MSPR 326 (1994) . . . . . . . . . . . . . . . . . . . . . . 13-14

*Butler v. SSA*, 331 F.3d 1368, 1372 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 21

*Carley v. Dept. of Army*, 413 F.3d 1354 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . 21

*Cathedral Candle Co. v. ITC*, 400 F.3d 1352 (Fed. Cir. 2005) . . . . . . . . . . . . . 22

*Causus v. Secretary of Air Force*, EEOC docket 01920888 (April 15, 1992) . . . 18

*Chacon v. United States*, 48 F.3d 508 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . 25

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

*City of Arlington, Texas v. FCC*, 569 U.S. 290 (2013) . . . . . . . . . . . . . . . . . . . . 22

*Cornelius v. Nutt*, 472 U.S. 648 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Cutler-Hammer, Inc. v. United States*, 416 F.2d 1306 (Ct. Cl. 1969) . . . . . . . . . 23

*Czarkowsi v. MSPB*, 390 F.3d 1347 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 21

*Diefenderfer v. MSPB*, 194 F.3d 1275 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . 21, 25

-ii-

*Ellison v. MSPB*, 7 F.3d 1031 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fields v. Dept. of Justice*, 452 F.3d 1297 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . 21

*Gonzales v. DHUD*, 64 MSPR 314 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hessami v. MSPB*, 979 F.3d 1362 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . 21

*Holderfield v. MSPB*, 326 F.3d 1207 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . 12, 21

*Huffman v. OPM*, 263 F.3d 1341 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 8

*James v. Von Zemenszky*, 301 F.3d 1364 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . 24

*Kahn v. Dept. of Justice*, 528 F.3d 1336 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . 21

*Kirkendall v. Dept. of Army*, 479 F.3d 830 (Fed. Cir. 2007) . . . . . . . . . . . . 22, 25

*Kisor v. Wilkie*, 139 S.Ct. 2400, 2424 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Lovshin v. Dept. of Navy*, 767 F.2d 826 (Fed. Cir. 1985) (en banc) . . . . . . . . . . . 25

*Pasley v. Dept. of Treasury*, 109 MSPR 105 (2008) . . . . . . . . . . . . . . . . . . . . . . . 11

*Serrao v. MSPB*, 95 F.3d 1569 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Sirgo v. Dept. of Justice*, 66 MSPR 261 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sawstop Holding LLC v. Vidal*, ___F.4th___ (Fed. Cir. 2022) . . . . . . . . . . . . . . 24

*Smolinski v. MSPB*, 23 F.4th 1345 (Fed. Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . 14

*Spruill v. MSPB*, 978 F.2d 679 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . passim

*Tunik v. MSPB*, 407 F.3d 1326 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Mead Corp.*, 533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . 22

*Wilder v. MSPB*, 675 F.3d 1319 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 22

STATUTES

5 USC 1222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5 USC 2302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

# I. SUMMARY OF ARGUMENT

The Board's statement of the issues questions whether an employee may challenge reprisal for protests to agency management about discriminatory practices through duplicative complaints under the Title VII and Individual Right of Action appeals. That does not correctly state Appellant's objections to the Board's decision, which essentially are: although this Court's *Spruill* decision precludes an IRA appeal based on reprisal for a formal EEO complaint, it does not preclude, and the WPA does not exclude, an IRA complaint when reprisal results from an employee's internal protests to agency management about discriminatory practices; second, the protections under the IRA and EEO processes are not duplicative—the IRA process offers protections not available through the EEO process, of which the most significant are OSC's ability to obtain stays of personnel actions (actual or threatened) and an employee's ability to obtain a stay from MSPB; and the ability of OSC to assume responsibility for litigation of an IRA case through a corrective action request filed by OSC with MSPB. Employees cannot twice collect for the same wrong; doctrines of collateral estoppel or *res judicata* apply.

In its brief, the Board seeks to expand of this Court's 1992 *Spruill* decision; advance legislative history in support of its position, though that history is indirect and ambiguous; distinguish or avoid authority relied on by Edwards (although as

pointed out in our principal brief, the precedent is mixed); and obtain deference to its decision in *Edwards* to overrule its precedent.

## II. ARGUMENT

A.  *SPRUILL* WAS LIMITED TO A REPRISAL CLAIM UNDER 5 USC 2302(b)((9) BASED ON A FORMAL EEO COMPLAINT; *SPRUILL* DID NOT ADDRESS REPRISAL BASED ON INTERNAL PROTESTS TO MANAGEMENT ABOUT DISCRIMINATORY PRACTICES CONSTITUTING AN ABUSE OF AUTHORITY UNDER 5 USC 2302(b)(8)

*Spruill* identified the issue in the IRA appeal then before this Court: "The question is whether the filing of an EEOC complaint which alleged discriminatory treatment by the employer in violation of Title VII constitutes 'whistleblowing' within the scope of § 2302(b)(8)" *Id.*, 978 F.2d 679, 689.

The Court decided that IRA coverage for a complaint was under 5 USC 2302(b)(9), which did not support an IRA appeal under the WPA. IRA coverage lacking in that section for an EEO complaint could not be indirectly established through 5 USC 2302(b)(8) based on a disclosure of violation of a law (e.g., Title VII), rule, or regulation. The opposite result would ""render § 2302(b)(9)(A) largely irrelevant, if not completely superfluous." *Id*. at 691.

Per *Spruill*, the result under the 1989 WPA is that if an employee files an EEO complaint and suffers reprisal, her recourse is through the EEO complaint process.

-2-

*Spruill* did not address IRA coverage for disclosures within management.

The Board argues that the WPEA amendments ratified *Spruill* (and the extension the Board argues for in *Edwards*), but there's no legislative history cited to show that is the case. The best that can be said is that the WPEA legislative history through committee reports did not directly criticize this Court's decision in *Spruill*. And the opposite may be inferred: by qualifying Section 2302(b)(9) to permit IRA coverage for EEO complaints that reference otherwise protected disclosures, the legislative intent of WPEA may have been to partially overrule *Spruill*, depending on the content of an EEO complaint filed under EEOC processes.

B.    THE WPA LEGISLATIVE HISTORY DEMONSTRATES A CONGRESSIONAL DETERMINATION TO MAINTAIN AND EXPAND BOARD REMEDIAL AUTHORITY

First, the WPA did not restrict preexisting remedies The IRA route, created by the WPA, amending the CSRA, was to operate in tandem with other processes.

Under 5 USC 1222:

*Availability of other remedies*

Except as provided in section 1221(I) [referencing adverse action appeals under 5 USC 7513] , nothing in this chapter or chapter 23 shall be construed to limit any right or remedy available under a provision of statute which is outside of both this chapter and chapter 23.

The provision's intent was stated by the drafters of what became the WPA in a Joint

Explanatory Report, 135 Cong. Rec. 5035 (March 21, 1989):

15. Availability of other remedies

The bill contains a new section 1222 of title 5, United States Code, which
provides that the network of rights and remedies created under chapter 12 and
chapter 23 of title 5 is not meant to limit any right or remedy which might be
available under any other statute. Other statutes which might provide relief for
whistleblowers include the Privacy Act, a large number of environmental and
labor statutes which provide specific protections to employees who cooperate
with federal agencies, and civil rights statutes under title 42, United States
Code. Section 1222 is not intended to create a cause of action where none
otherwise exists or to reverse any court decision. Rather, section 1222 says it
is not the intent of Congress that the procedures under chapters 12 and 23 of
title 5, United States Code, are meant to be exclusive.

*See* 5 USC 2302(d) (Section 2302 not to be construed to extinguish or lessen EEO

remedies available under Title VII and related statutes) (from 1978 CSRA).

WPA IRA and other remedies (e.g., EEO rights under Title 42 [including the

federal sector complaint program established under 42 USC 2000e-16(c) and

Reorganization Plan No. 1 of 1978, i.e., 29 CFR Part 1614]) were meant to co-exist;

Before and after the WPA, OSC was to address reprisals based on disclosures of

discrimination.

A sponsor of the WPA, Senator Levin, remarked during consideration of the

legislation, Cong. Rec. Feb. 5, 1987, S. 1931-32:

Under the current law, the procedures governing the OSC are as follows:

-4-

Federal employees or applicants for Federal employment who allege they are the victims of a prohibited personnel practice can come to the OSC for assistance. The OSC is required to investigate the employee's claim to the extent necessary to determine whether there are reasonable grounds to believe a prohibited personnel practice has indeed occurred. Prohibited personnel practices include: taking reprisal against an individual who discloses waste, fraud, or abuse or who exercises an appeal right; illegal discrimination; engaging in nepotism; willfully obstructing any person's right to compete for employment; and others. In addition, the OSC can investigate prohibited personnel practices on its own initiative, without an allegation by an individual Federal employee.

. . .

The OSC has authority to seek a stay from the MSPB of any personnel action taken against the employee, when the OSC determines that there are reasonable grounds to believe a prohibited personnel practice has occurred or is to be taken. . . .

If the OSC determines corrective action is necessary for an employee who has been adversely affected by a prohibited personnel practice, the OSC may request the MSPB to consider the matter. After hearing the case, the MSPB may order whatever corrective action it considers appropriate. The OSC has no litigating authority, and thus cannot appeal a MSPB decision.

Senator Levin also remarked, *id.*, at S.1923:

The bill also gives individuals an alternative to going to the OSC, a necessary provision given the widespread dissatisfaction with the OSC. . . .

In the legislative history there is a cautionary note concerning resources expressed by

Mary Wieseman, Special Counsel when the WPA was enacted, that the WPA and the

IRA it created could increase the workload of the OSC—and doubtless the WPA had

that result. But the WPA was not an OSC relief measure; many involved in drafting

-5-

the WPA believed to be ineffective, unresponsive, not fully engaged in protection of

employees suffering reprisals for disclosures of wrongdoing.

One of Ms. Wieseman's statements, in one congressional committee hearing,

was, in part (noting the benefits and burdens of the legislation):

> The impact of this bill would be seen most dramatically in connection with discrimination complaints under 5 U.S.C. 2302(a)(1). The Equal Employment Opportunity Commission (EEOC), currently has no stay authority, no means by which to enforce its corrective action recommendations, and no authority to seek disciplinary action against those found to have engaged in discrimination. Discrimination complaints historically have been the highest percentage of complaints received by the OSC. The OSC's policy over the years has been generally to defer discrimination complaints to the EEOC process (except in egregious or precedential cases, or where there are indications that the process is not proceeding regularly).  S. 508 will give rise to an individual right of action, regardless of whether a deferral policy continued to be followed, such that employees would have every reason to file discrimination complaints with the OSC in addition to, or in lieu of, the EEO channel. In either case, the costs and other implications of a substantial increase on OSC, MSPB in federal court caseloads, and the mechanics of processing the case in with both channels are used, need to be considered—keeping in mind that in Fiscal Year 1985, the last year for which published figures are available, a total of 19,386 discrimination complaints were filed by federal employees using the EEO process. . . .

Hearings on S. 508, Senate Subcommittee on Federal Services, Post Office, and Civil

Service (July 30, 31, 1987), at p. 379.

Ms. Wieseman's comment was in the context of one WPA bill that would have

permitted IRA appeals to remedy reprisal for all of the prohibited personnel practices

identified in the Reform Act, but the comments had a broad enough application that

they would have applied to the later bill that became the WPA and narrowed the scope of IRA appeals to prohibited personnel practices identified at 5 USC 2302(b)(8). There's no conference report or statement that has been found in the legislative history showing how or why that bill eventually resulted in a statute that more narrowly described the prohibited personnel practices supporting an IRA case. It may have been that the drafters felt that Section 2302(b)8) was sufficiently broad.

There were and are plenty of federal sector EEO complaints, but few of them were or are pursued through OSC. Placing this in perspective, before the WPA, employees sought assistance from OSC—which had the authority to obtain stays of personnel actions and which itself could seek corrective actions—for those who suffered reprisal for EEO activities. A chart provided by OSC during congressional hearings leading to the WPA showed that of 1,476 matters reaching OSC from February 1986 to January 1987, 245 of them involved EEO issues. Whether Ms. Wieseman reasonably thought that the number of EEO complainants seeking OSC assistance would jump by magnitudes upon passage of the WPA is speculation. From the OSC annual report for 1997, activity in OSC EEO filings did increase (in a much smaller proportion of the total intake of cases compared to the figures offered in the O S C   c h a r t   a b o u t   a   d e c a d e   e a r l i e r )   t o   5 5 1 . https://web.archive.org/web/20100528053712/http://www.osc.gov/documents/rep

orts/ar-1997.pdf. What is clear is that people were coming to OSC with EEO-related reprisal concerns before the WPA, were doing so afterward, and there's nothing in the legislative history showing that the legislative drafters sought to preclude preexisting access to protections for people suffering from those reprisals.

What may be lost in examining segments of legislative history from the several bills that resulted in the WPA is the plain classification from the 1978 CSRA, P.L. 95-454, codified to 5 USC 2302(b)(8)(A)(I), of "a violation of any law, rule, or regulation," and (A)(ii), "mismanagement, a gross waste of funds, an abuse of authority . . . if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs . . ."

That protective language is about as broadly stated as can be. And, when adjudicators' decisions did not apply what seemed the intent of the WPA and CSRA, in 2012 Congress enacted the Whistleblower Protection Enhancement Act, P.L. 112-199, Section 101(a)(1) of which changed "a violation of any law" to "any violation of any law."

The statute it unambiguous. "Any" means "any." *Huffman v. OPM*, 263 F.3d 1341, 1348 (Fed. Cir. 2001), explained:

Congress later amended section 2302 and other sections of the WPA in

1994…. [W]e note that the committees in 1994 criticized the Board for continuing to take a narrow view of what constitutes a protected disclosure. For example, the House report for the 1994 amendment stated:

> Perhaps the most troubling precedents involve the Board's inability to understand that "any" means "any." The WPA protects "any" disclosure evidencing a reasonable belief of specified misconduct, a cornerstone to which the MSPB remains blind. The only restrictions are for classified information or material the release of which is specifically prohibited by statute. Employees must disclose that type of information through confidential channels to maintain protection; otherwise there are no exceptions.

H.R. Rep. 103-769, at 18 (1994). So too the Senate report stated:

> As indicated above, the plain language of the Whistleblower Protection Act extends to retaliation for "any disclosure," regardless of the setting of the disclosure, the form of the disclosure, or the person to whom the disclosure is made.

S. Rep. No. 103-358, at 11 (1994), reprinted in 1994 USCCAN 3549, 3559.

## C.  THE BOARD DOES NOT REFUTE APPELLANT'S REFERENCES TO BOARD DECISIONS PROVIDING IRA JURISDICTION TO APPELLANTS WHOSE INTERNAL MANAGEMENT DISCLOSURES LED TO REPRISALS

Edwards  points out in his principal brief that, post-*Spruill*, decisions go both ways in IRA coverage of appeals based on allegations of reprisal for disclosures to management of discriminatory practices.

The Board counters that some of its decisions allowing IRA appeals for reprisals based on internal reports of discriminatory conduct characterized as an abuse

of authority under 5 USC 2302(b)(8) (as Edwards characterized those disclosures to OSC and MSPB) are incorrectly relied on by Edwards.

Cited in the Board's brief is *Gonzales v. DHUD*, 64 MSPR 314 (1994). Gonzales made disclosures concerning fair housing issues affecting Spanish-speaking complainants. Although the Board argues that though it found that the disclosures of Gonzales were covered by Section 2302(b)(8), and not excluded under 5 USC 2302(b)(9) as a type of complaint covered by EEO laws, what the Board did not consider was that the Fair Housing Act has its own statutory and regulatory complaint system dealing with many housing issues, including issues of disability discrimination, 24 CFR 100.202, allows for a complaint by any person, 24 USC 103.9(5), and prohibits reprisal for involvement, formal or informal, in matters involving protests concerning discriminatory housing practices. 42 USC 3617. That the concerns of Gonzales were not covered by the federal EEO complaint system did not mean they were excluded under another complaint system.

The Board's brief argues that *Sirgo v. Dept. of Justice*, 66 MSPR 261 (1995), is distinguishable because the appellant's complaint could not have been made through the EEO complaint process. Mr. Sirgo alleged job-related reprisals because he reported that his superior showed preferential treatment to another employee because of an intimate relationship between them. Remanding the appeal to the

administrative judge who dismissed it, the Board determined that Sirgo's allegations were covered by 5 USC 2302(b)(8) as an abuse of authority. Similarly, the Board references *Pasley v. Dept. of Treasury*, 109 MSPR 105 (2008). Mr. Pasley also complained of reprisal after he informed management that his boss was providing favorable assignments to Pasley's colleague (with consequential adverse job impact on Pasley) because of what appeared to be a close personal or romantic relationship between the supervisor and Pasley's female peer. *Id*. at 112-13. The Board sent the case back to its administrative judge. Pasley had alleged reprisal for disclosures of conduct constituting an abuse of authority under 5 USC 2302(b)(8). Could Sirgo and Pasley have used EEO complaints to address their concerns (as the Board determined that Edwards could have done about his disclosures to management of discrimination)? The Board argues no (without case citation), but that is not so.

EEOC recognizes a basis for a sex discrimination complaint when an employee asserts that a co-worker received favor in conditions of employment by reason of the co-worker's romantic relationship with the boss, *e.g.*, *Bledsoe v. Dept. of Army*, EEOC docket 0120071298 (2007):

> As to whether complainant's sex discrimination claim states a claim, in *Gresham v. Department of Army*, EEOC Request No. 05A00806 (January 26, 2001), the Commission stated:
>
>> The agency, in its request to reconsider, submitted that complainant's

-11-

sexual harassment claim should be dismissed for failure to state a claim since it centers totally around an alleged consensual relationship and the favoritism shown to the alleged paramour. The agency failed to consider the definition of sexual harassment contained in the Commission's Guidelines on Discrimination Because of Sex, 29 C.F.R. § 1604.11 (2000). Most significantly, 29 C.F.R. § 1604.11(g) provides that 'where employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit. *See also Broderick v. Ruder*, 685 F.Supp. 1269 (D.D.C. 1988) (applying inter alia 29 C.F.R. § 1604.11(g)). Significantly, complainant has alleged that she was denied promotions and awards because of the alleged favoritism shown the alleged paramour. In addition, it is the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. . . .

*Cf. Holderfield v. MSPB*, 326 F.3d 1207, 1208 (Fed. Cir. 2003) (IRA: remanding for consideration of jurisdiction over various personnel actions, allegedly retaliatory, at least in part, because appellant had been subjected "to retaliation for her disclosure of favoritism between Chambers and her IRS subordinate and live-in companion").

There are variances in decisions involving sex discrimination charges arising out of favoritism to a romantic partner. Our purpose here is to show that the allegations in *Sirgo*, *Pasley*, and likely *Holderfield*, seem within the province of the EEO complaint system, and were not excluded by the Board from IRA consideration under *Spruill*. If internal complaints of discriminatory practices warranted IRA

treatment for them, so too should they for Edwards, and the Board offers no persuasive basis for contrary treatment of Edwards, who alleged that the retaliatory actions against him constituted an abuse of authority by agency management, as had Sirgo and Pasley.

*Serrao v. MSPB*, 95 F.3d 1569, 1576 (Fed. Cir. 1996), relied on by the Board, involved an individual who attempted to base his IRA appeal on allegations that he was retaliated against for filing two or three grievances with his agency concerning personnel issues that included harassment. This Court determined that the rule in *Spruill* placed Serrao's case within 5 USC 2302(b)(9). *Serrao* cited *Fisher v. DOD*, 52 MSPR 470, 474 (1992), in which the Board held that only disclosures made outside grievance procedures or discrimination complaint procedures could serve as the basis for Board jurisdiction over an IRA appeal. Edwards does not dispute that analysis: *Spruill* is the precedent; but his significant disclosures were outside the discrimination complaint procedure.

Dissenting in *Serrao*, Judge Newman explained, "The Board held that if whistleblowing disclosures were made in a grievance, the Whistleblower Protection Act did not apply. The Board ignored all of Mr. Serrao's asserted whistleblowing disclosures outside of the grievances, and did not comment on their existence." *Id.* at 1578. At 95 F.3d, 1582, Judge Newman referenced *Bump v. Dept. of Interior*, 64

MSPR 326 (1994):

> In *Bump* the Board explained that information included in a grievance letter may also be a whistleblowing disclosure under § 2302(b)(8), and that an employee's recourse to the agency's grievance procedure does not remove the protection of the WPA from whistleblowing disclosures. *See* 64 M.S.P.R. at 332 ("The fact that the appellant filed a grievance action ... does not in and of itself disqualify him from seeking corrective action under the WPA.")

Noting inconsistency in Board decisions, Judge Newman commented, 95 F.3d at 1582:

> It is essential that the Board maintain consistency in application of its own and Federal Circuit rulings, in serving the federal employees who depend on the Board for just resolution of the employment matters assigned to it.

D.     THIS COURT'S *SMOLINSKI* DECISION DEMONSTRATES THE BASIS FOR IRA COVERAGE OF REPRISALS FOR INTERNAL REPORTS OF DISCRIMINATION CONSTITUTING ABUSE OF AUTHORITY; THE BOARD FAILS TO REFUTE THE IMPORT OF THAT DECISION

The Board asserts that *Smolinski v. MSPB*, 23 F.4th 1345 (Fed. Cir. 2022), is irrelevant because *Smolinski* "involved only whistleblowing claims." MSPB Br. at 22. The Board posits that Smolinski, unlike Mr. Edwards, did not make allegations of discrimination or EEO reprisal that could have been heard through the EEO process." MSPB Br. at 23.

The facts of significance were that Dr. Smolinski, a commissioned medical officer at an Army hospital, attended with his wife a 2017 holiday party at an Army facility, and at that gathering Smolinski's superior (the hospital commander), Hudson,

-14-

inappropriately touched Mrs. Smolinksi and made inappropriate comments to her, leading to an internal Army complaint against Hudson of sexual harassment (prohibited by various Army issuances and 10 USC 1561(e)(3)) that included testimony about the holiday fiasco by Dr. And Mrs. Smolinski. The inquiry concluded in June of 2018. A month later LTC Smolinski applied for a civilian position as a supervisory physician at the hospital. Filling of the job was several times delayed or rerun. When he eventually obtained the position after the departure of Col. Hudson, Dr. Smolinksi initiated through OSC and pursued to MSPB an IRA appeal in which he asserted, among other matters, that the delay in his selection for the civilian position was in reprisal, "for . . . the Smolinskis' April 2018 testimony against Col. Hudson in the AR 15-6 investigation." *Id*. at 1349.

Before the Court, on appeal from the Board, the issue was whether Smolinski's testimony was a protected disclosure; more particularly, whether the substance of that testimony, i.e., the conduct of Col. Hudson at the party, was a disclosure within the scope of 5 USC 2302(b)(8).

This Court assessed the information conveyed by Dr. Smolinski as covered by 5 USC 2302(b)(8), *id*. at 1351-52:

> In pertinent part, § 2302(b)(8) protects an employee for "any disclosure of information [he] reasonably believes evidences (I) any violation of any law, rule, or regulation, or (ii) ... an abuse of authority." Id. § 2302(b)(8)(A). As

mentioned, a belief is reasonable if a disinterested observer with knowledge of the essential facts could reach the same conclusion. *Lachance*, 174 F.3d at 1381. The Board defines abuse of authority as, for example, "an arbitrary or capricious exercise of power by a federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons." *Wheeler v. Dep't of Veterans Affs.*, 88 M.S.P.R. 236, 241 (2001) (internal quotation marks omitted) (citing *Ramos v. Dep't of Treasury*, 72 M.S.P.R. 235, 241 (1996)).

Dr. Smolinski alleged sufficient factual matter to state a plausible claim under § 2302(b)(8). He averred that his April 2018 testimony disclosed how Col. Hudson's alleged conduct at the Military Ball was an abuse of authority and violated laws, rules, or regulations. Indeed, Dr. Smolinski . . . testified that Col. Hudson walked up behind Mrs. Smolinski, whispered in her ear, made her feel "very uncomfortable," and led her to "believe[ ] that if she and COL Hudson had been alone he would have crossed a line.". . . Accepting those allegations as true, a disinterested observer could believe that Col. Hudson bullied Dr. Smolinski and sexually harassed Mrs. Smolinski. This amounts to a nonfrivolous allegation that Dr. Smolinski made a protected disclosure. Both sexual harassment and bullying by a superior officer under the circumstances alleged would be abuses of authority. It was therefore error for the Board to dismiss this claim.
. . .
Although § 2302 does not define abuse of authority, related whistleblower-protection statutes do. The statute that extends whistleblower protections to employees of defense contractors defines it, in pertinent part, as "[a]n arbitrary and capricious exercise of authority that is inconsistent with the mission of the Department of Defense." 10 U.S.C. § 2409(g)(6)(1). Likewise, the statute that extends whistleblower protections to employees of other federal contractors defines it as "an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned." 41 U.S.C. § 4712(g)(1). Applying those broader definitions to 5 U.S.C. § 2302, Dr. Smolinski's allegations evidence an abuse of authority. For whatever the Army's mission is, Col. Hudson's alleged bullying and sexual harassment were inconsistent with it.

That alleged conduct was, moreover, a violation of laws, rules, or regulations.

Army regulations prohibit "[i]ntimidating, teasing, name calling, mockery, threats of violence, harassment, [or] taunting." Army Reg. 600–20, Personnel-General: Army Command Policy, para. 4–19a (2) (24 July 2020). And statute prohibits "[a]ny deliberate or repeated unwelcome verbal comment or gesture of a sexual nature by any member of the armed forces or civilian employee of the Department of Defense." 10 U.S.C. 1561(e)(3). A disinterested observer could believe Col. Hudson's alleged conduct violated both these provisions.

Returning to Mr. Edwards, he disclosed and protested to top management racial discrimination in the workplace generally, and more specifically as to a particular African-American employee. In his complaint to OSC, and in his Board appeal, he "labeled" the disclosures as abuse of authority as well as violations of civil rights laws. Appx56, Appx75, Appx78, Appx87.  Though MSPB commended him, the Board decided Edwards lacked IRA protection because 5 USC 2302(b)(8) did not encompass internal disclosures of racial discrimination (and resulting reprisal) that could be addressed under EEOC procedures, expanding on this Court's analysis in *Spruill*, which was limited to exclusion from IRA protection of allegations of reprisal for filing a formal EEO complaint.

Returning to Smolinski, could he, an applicant for a federal civilian job (Smolinski had been a commissioned Army officer), have filed an EEO complaint based on failure to hire or delay in hiring by reason of his testimony in an Army inquiry of sexual harassment of a woman at an Army festivity? Though that question

was not explored in *Smolinski*, he could have initiated an EEO complaint as an applicant for a civilian job. EEOC explains in its Management Directive 110 (August 2015), involving the federal sector EEO program, p. 5-18: "An agency shall accept a complaint from any aggrieved employee or applicant for employment who believes that s/he was discriminated against . . . ." The Board recently determined that an appellant's disclosure "before he was an applicant for employment may be protected whistleblowing if it otherwise meets the requirements of 5 U.S.C. § 2302(b)(8)." *Abernathy v. Dept. of Army*, 2022 MSPB 37 (Nov. 15, 2022).

As to whether Smolinski's potential EEO complaint as an applicant would have stated a facially valid claim to EEOC, the Board asserts at pp. 24-25 of its Brief that "the employee [Smolinski] could not have alleged an EEO claim. . . ." But that's not correct. In *Causus v. Secretary of Air Force*, EEOC docket 01920888 (April 15, 1992), the Commission determined:

Section 704(a) of Title VII provides in part:

> "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."

This section has been read to provide employees two avenues for protection from discriminatory retaliation by an employer—the "opposition clause" and

the "participation clause." The opposition clause refers to an employee having opposed any discriminatory practice that violates the prohibitions of Title VII. The participation clause refers to employee participation of some kind in a proceeding "under this subchapter"—thus excluding from the section an employee's right to invoke this section pursuant to some other statute or regulation. (footnote omitted). "Under this Subchapter" does not necessarily refer to participation in an ongoing proceeding before the EEOC. *See Hicks v. ABT Assoc. Inc.*, 16 F.E.P. Cases 802 at 809 (3d Cir. 1979). EEOC Regulation 29 CFR 1613.261, which implements 704(a) for federal employees, similarly provides in part that it is unlawful to restrain, interfere, coerce, or discriminate against an individual because he has "filed a charge of discrimination, testified, assisted or participated in any manner with an investigation, proceeding or hearing" under this part. (footnote omitted).

In deciding whether appellant's conduct was protected under the "participation clause," the issue on appeal is whether Section 704(a) was intended to protect civilian employees, such as appellant, who come forward as witnesses in discrimination proceedings under the armed force's internal discrimination complaint procedures. We hold appellant was protected under the "participation clause" of Section 704(a). Section 704(a) was enacted to encourage employee assistance in furthering the primary purpose of Title VII—eradication of racial, ethnic, religious and gender based discrimination in the workplace. . . .

Although the legal system, including the legal avenues for combating discrimination, is distinct for members of the armed forces, civilian and non-civilians work side by side in various areas of the military. It is easy to envision many situations, such as here, when civilians feel compelled to take part in a discrimination proceeding within the military court system. Title VII should be liberally construed to protect its policies, and there is nothing in Section 704(a), or in the Commission's Regulations implementing the section, which compels a statutory interpretation that would paralyze such participation by civilian employees in the military. (footnote omitted).

Consequently, we find that the "participation clause" of EEOC Regulation 29 CFR 1613.261 protects employees who choose to serve as witnesses in discrimination proceedings within the military's internal complaint system. .

. .

*Smolinski's* relevance is clear once MSPB's notion that Smolinski had no right to file an EEO complaint is evaluated.

E.    THE BOARD IMPROPERLY DISCOUNTS APPELLANT'S REFERENCE TO THIS COURT'S *ELLISON* DECISION

MSPB declares that *Ellison v. MSPB*, 7 F.3d 1031 (Fed. Cir. 1993), is inapplicable to this appeal. We disagree. *Ellison* considered whether a matter covered by 5 USC 2302(b)(9)—a grievance—was also covered by 5 USC 2302(b)(8). The Court explained, *id*. at 1035:

> [T]he fact that Ellison filed a grievance action through agency procedures in response to the contested personnel action did not in and of itself disqualify him from pursuing corrective action under the WPA as well. Ellison had a right to pursue all courses of action at his disposal, and the law provides remedies for violations of that right. The WPA was enacted for the purpose of protecting federal employees who disclose government illegality, waste, and corruption, 5 U.S.C. § 1201 note (Supp. III 1991); it was not intended to discourage employees who are subject to prohibited personnel practices from also seeking redress through other authorized means, such as a grievance process.

*Ellison* is inapplicable, the Board says in its Brief, at p. 22:

> The Court's holding in *Ellison* does not apply to Mr. Edwards because his allegations relate solely to Title VII and reprisal for his EEO activity and therefore fall under (b)(1) and (b)(9)(A)(ii) rather than (b)(8).

The argument assumes the opposite of the point that Edwards is making: there's a distinction under *Spruill* between a formal EEO complaint that does not rise to the

-20-

level of an IRA appeal under 2302(b)(9) and internal agency disclosures to managers of EEO violations—apart from the EEOC's complaint system—that embarrass and annoy managers to the extent that they take reprisal against the messenger.

## F.    NO DEFERENCE IS DUE THE BOARD'S DETERMINATION OF THE SCOPE OF THE WPA

MSPB urges the Court to defer to its jurisdictional ruling that the WPA precludes an IRA claim based on disclosures of civil rights violations outside the EEOC complaint process—the distinction between 5 USC 2302(b)(8) ("whistleblowing") and 5 USC 2302(b)(9) ("right to complain").

Although the Board routinely receives deference to its procedural rulings (timeliness of an appeal; resolution of discovery disputes), jurisdiction (including the scope of the WPA) is a legal question that this Court reviews *de novo,* without deference. *E.g.*, *Hessami v. MSPB*, 979 F.3d 1362, 1367 (Fed. Cir. 2020); *Kahn v. Dept. of Justice*, 528 F.3d 1336, 1341 (Fed. Cir. 2008); *Fields v. Dept. of Justice*, 452 F.3d 1297, 1301 (Fed. Cir. 2006)); *Carley v. Dept. of Army*, 413 F.3d 1354, 1356 (Fed. Cir. 2005); *Czarkowsi v. MSPB*, 390 F.3d 1347, 1349 (Fed. Cir. 2004); *Butler v. SSA*, 331 F.3d 1368, 1371-72 (Fed. Cir. 2003); *Holderfield v. MSPB*, 326 F.3d 1207, 1208 (Fed. Cir. 2003) (IRA); *Diefenderfer v. MSPB*, 194 F.3d 1275, 1277 (Fed. Cir. 1999) (IRA).

But the Board urges *Chevron* deference.

*Chevron* seems principally applied to rules of agencies, and that decision was applied to affirm the MSPB's harmful error regulation in *Cornelius v. Nutt*, 472 U.S. 648 (1985), and when this Court affirmed MSPB rulemaking authority (and adjudication based on that authority) in actions against ALJs in *Tunik v. MSPB*, 407 F.3d 1326 (Fed. Cir. 2005) (involving 5 CFR 1201.142), and *Kirkendall v. Dept. of Army*, 479 F.3d 830 (Fed. Cir. 2007) (deferring to MSPB regulation on hearing rights of USERRA appellant), and *Wilder v. MSPB*, 675 F.3d 1319 (Fed. Cir. 2012) (OPM regulations defining "current continuous service"). *See United States v. Mead Corp.*, 533 U.S. 218 (2001) (applying *Skidmore* deference to Customs Service tariff classification ruling); *cf. Cathedral Candle Co. v. ITC*, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005) ("Deference to an agency's interpretation of its own regulations is broader than deference to the agency's construction of a statute, because in the latter case the agency is addressing Congress's intentions, while in the former it is addressing its own.").

*City of Arlington, Texas v. FCC*, 569 U.S. 290, 293 (2013), speaks to jurisdiction and *Chevron* in the sense of regulatory authority. Assuming, though, that *Chevron* applies to jurisdiction of an quasi-judicial adjudicator, MSPB, deference is inapplicable to an unambiguous statute:

"When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

*Chevron U.S.A.*, *Inc. v. Natural Resources Defense Council*, *Inc.*, 467 U.S. 837, 842-43 (1984).

As to the meaning of 5 USC 2302(b)(8), and its relative 5 USC 2302(b)(9), *Spruill* determined that Section 2302(b)(9) did not embrace IRA coverage for reprisal against those who file EEOC complaints. Not addressed by *Spruill* were reprisals for protests about EEO issues within management circles. Those matters are addressed by 5 USC 2302(b)(8), allowing IRA appeals for those suffering reprisal by reason of an employee's disclosure of (A)(I) any violation of any law, rule, or regulation, or (A)(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. Although the English language is not an instrument of mathematical precision, *Cutler-Hammer*, *Inc. v. United States*, 416 F.2d 1306, 1311 (Ct. Cl. 1969), the statute is clear enough, encompassing as it is, with reference to any dictionary, as necessary.

Encompassing exploration deference is beyond the scope (or length) of this reply. A few references offer guidance—though the guidance is ambiguous.

-23-

Where the statute is without ambiguity, deference is not appropriate. "To begin, both parties offer a dog's breakfast of arguments about broad statutory purposes, real-world effects, surplusage, structure, consistent usage, inconsistent usage, agency deference, and the like. But this case is resolved by the most fundamental principle of statutory interpretation: Read the statute." *Becerra v. Empire Health Found.*, 142 S.Ct. 2354, 2368-69 (2022); *see Am. Hosp. Ass'n v. Becerra*, 142 S.Ct. 1896, 1905-06 (2022) ("We must hesitate to adopt an interpretation that would eviscerate such significant aspects of the statutory text." . . . "In sum, after employing the traditional tools of statutory interpretation, we do not agree with HHS's interpretation..."); *Kisor v. Wilkie*, 139 S.Ct. 2400, 2424 (2019) (make conscientious effort to determine, based on text, structure, history, and purpose whether regulation really has more than one reasonable reading); *Sawstop Holding LLC v. Vidal*, ___F.4th___ (Fed. Cir. 2022) ("no deference is necessary under either *Chevron* or *Skidmore* as the plain language of § 154(b)(1)(C)(iii) compels affirmance"); *James v. Von Zemenszky*, 301 F.3d 1364, 1366 (Fed. Cir. 2002) (as to statutory interpretation: "The meaning —or ambiguity— of certain words or phrases may only become evident when placed in context.' *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)."); *Diefenderfer v. MSPB*, 194 F.3d 1275, 1278 (Fed. Cir. 1999) (IRA) ("In construing a statute or regulation, we commence by inspecting its

language to ascertain its plain meaning. *See Bazalo v. West*, 150 F.3d 1380, 1382 (Fed. Cir. 1998). If the terms of the statute or regulation are unambiguous, no further inquiry is usually required. . . .”); *Chacon v. United States*, 48 F.3d 508, 511-12 (Fed. Cir. 1995) (*Chevron* two-step analysis applied to statutory interpretation by DOJ entity of Public Safety Officers’ Benefits program); *cf. Click-to-Call Technologies LP v. Igenio*, Inc., 899 F.3d 1321, 1330 (Fed. Cir. 2018) (“we may not conclude that a statutory provision is ambiguous until we conclude that resort to all standard forms of statutory interpretation are incapable of resolving any apparent ambiguity which might appear on the face of the statute. . . .”); *Kirkendall v. Dept. of Army*, 479 F.3d 830, 845-46 (Fed. Cir. 2007) (“Ambiguity is a creature not of definitional possibilities but of statutory context”; “And this statutory regime emphatically does not admit of deference to the board à la *Chevron* because "[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

*Lovshin v. Dept. of Navy*, 767 F.2d 826, 829 (Fed. Cir. 1985) (en banc), relied on by the Board, involved the Board as an intervenor in an appeal calling for a decision on whether a Chapter 75 (“misconduct”) action could be taken against a substandard performer whose removal could be initiated under Chapter 43. Eschewing deference to MSPB’s positions on the disputed issue, this Court explained

that "the usual deference which a court must give the interpretation of a statute by the agency charged with its administration is not appropriate in this instance because the MSPB itself has not taken a consistent position. . . . " The Board's positions on the issue in its *Edwards* decision have been inconsistent.

What's at issue here is the Board's extension of this Court's *Spruill* decision. (MSPB did not issue a decision in *Spruill* through its petition for review process; the decision reviewed by this Court was that of the administrative judge, whose decision became final and judicially reviewable through the passage of time. *Spruill*, 978 F.2d 679, 681.) The departure point for MSPB was its construction of *Spruill.* There seems no reason to defer to an administrative tribunal's interpretation of a judicial decision when the issuing court can provide that interpretation.


## III. CONCLUSION AND RELIEF SOUGHT

This Court should remand the case to MSPB for adjudication as an IRA appeal.


Respectfully submitted,

/s/ Peter Broida

_____

Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201

703-841-1112
peterbroida@gmail.com

Attorney for John Edwards

CERTIFICATE OF COMPLIANCE

I certify that through use of the WordPerfect word-counting feature, that there are 6,641 words in this brief. This complies with the word limits of this Court's rules.

/s/ Peter Broida
Peter Broida
Suite 203
1840 Wilson Blvd.
Arlington VA 22201
703-841-1112
peterbroida@gmail.com

Attorney for John Edwards

December 2, 2022